FILED
2022 May-17  PM 08:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DANIELLE THREADFORD and WILLIAM HOLMES, on behalf of the McKinney Communications Corporation Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**HORIZON TRUST AND INVESTMENT MANAGEMENT, N.A., RODDY McKINNEY, and JANICE McKINNEY,**<br><br>**Defendants.** | **Case No. 2:20-cv-00750-RDP** |

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED
MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

1

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 2

    A.     Background and Motion Practice ............................................................................. 2

    B.     Discovery ................................................................................................................. 3

    C.     The Parties' Settlement Efforts ............................................................................... 4

III.   SUMMARY OF THE PROPOSED SETTLEMENT TERMS ........................................... 4

    A.     The Proposed Settlement Class ............................................................................... 4

    B.     Benefits to the Class ................................................................................................ 5

    C.     Notice and Administration ....................................................................................... 6

    D.     Service Awards to the Class Representatives and Attorneys' Fees and Costs ....... 7

    E.     Release of Claims .................................................................................................... 7

    F.     Notice and Proposed Schedule of Events ............................................................... 8

IV.    ARGUMENT ..................................................................................................................... 10

    A.     The Court Should Certify the Settlement Class ..................................................... 10

        1.     The Class Satisfies the Requirements of Rule 23(a) ................................. 10

            a)     The Class is sufficiently numerous ............................................... 10

            b)     There are common questions of law and fact ............................... 10

            c)     The typicality requirement of Rule 23(a) is met ........................... 12

            d)     The proposed Class Representatives and their counsel will fairly and adequately protect the interests of the Class. ................................. 13

        2.     The claims meet the requirements of certification under Rule 23(b)(1) ... 14

            a)     Class certification under Rule 23(b)(1)(A) is appropriate ............ 14

            b)     Class certification under Rule 23(b)(1)(B) is appropriate ............ 15

i

B.    The Court Should Grant Preliminary Approval of the Settlement Because It Is Fair, Reasonable and Adequate ................................................................................. 17

    1.    The Standards for Preliminary Approval .................................................... 17

    2.    The Class Representatives and Class Counsel Adequately Represented the Class ............................................................................................................ 19

    3.    There Was No Fraud or Collusion and the Settlement Was Negotiated at Arm's Length .......................................................................................... 20

    4.    The Relief Obtained Considering the Complexity, Expense and Likely Duration of the Litigation. ....................................................................... 21

    5.    The Stage of Proceedings and Development of the Factual Record ......... 22

    6.    The Benefits Provided by the Settlement are Fair, Adequate and Reasonable When Compared to the Range of Possible Recovery ............................... 23

    7.    The Effectiveness of the Proposed Method of Distributing Relief........... 24

    8.    The terms of the proposed award of attorneys' fees ................................. 25
    9.    The proposal treats class members equitably relative to each other ......... 25

C.    The Court Should Approve the Notice Plan and Schedule a Fairness Hearing.... 26

V.    CONCLUSION ............................................................................................................. 26

## <u>TABLE OF CONTENTS</u>

**Cases**                                                                                                                           **Page(s)**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................................................4

*Ault v. Walt Disney World Co.*,
   692 F.3d 1212 (11th Cir. 2012) ........................................................................................8

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984): (1).......................................................................... *passim*

*In re Blue Cross Blue Shield Antitrust Litig.*,
   No. 2:13-CV-20000-RDP, 2020 WL 8256366 (N.D. Ala. Nov. 30, 2020).................... *passim*

*Camp v. City of Pelham*,
   2014 WL 1764919 (N.D. Ala. May 1, 2014)......................................................................23

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) ........................................................................................11

*In re Checking Account Overdraft*,
   275 F.R.D. 666 (S.D. Fla. 2011) ....................................................................................12

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...........................................................................24

*Cifuentes v. Regions Bank*,
   No. 11-cv-23455, 2014 WL 1153772 (S.D. Fla. Mar. 20, 2014) ...........................................25

*DiFelice v. U.S. Airways, Inc.*,
   235 F.R.D. 70 (E.D. Va. 2006) ......................................................................................16

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   2020 WL 256132 (N.D. Ga. Mar. 17, 2020)......................................................................22

*Eslava v. Gulf Tel. Co.*,
   No. CIVA 04-00297 KDB, 2007 WL 2298222 (S.D. Ala. Aug. 7, 2007) .............................16

*Exum v. Nat'l Tire & Battery*,
   2020 WL 1670997 (S.D. Fla. Apr. 6, 2020) .....................................................................18

*Feret v. Corestates Fin. Corp.*,
   C.A. No. 97–6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998)...........................................14

*Gamache v. Hogue*,
   338 F.R.D. 275 (N.D. Ga. 2021)............................................................................. *passim*

*Johnson v. NPAS Solutions, LLC*,
  975 F.3d 1244 (11th Cir. 2020) ................................................................7

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008) .............................................................14

*Kindle v. Dejana*,
  315 F.R.D. 7 (E.D.N.Y. 2016) ..................................................................11

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.
  1984), *cert. denied*, 470 U.S. 1004 (1985) .............................................12

*Leverso v. SouthTrust Bank of AL., Nat. Assoc.*,
  18 F.3d 1527 (11th Cir. 1994) ..................................................................20

*Lipuma v. American Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) .....................................................23

*Lively v. Dynegy, Inc.*,
  No. 05-00063, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007) ........................12

*Loc. 1522 of Council 4 v. Bridgeport Health Care Ctr., Inc.*,
  No. 15-CV-1019 (JCH), 2018 WL 1419792 (D. Conn. Mar. 21, 2018)................15

*McWhorter v. Ocwen Loan Servicing, LLC*,
  No. 2:15-CV-01831-MHH, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ...........19, 20, 22, 25

*Neil v. Zell*,
  275 F.R.D. 256, 261 (N.D. Ill. 2011)...............................................13, 15, 16

*Nistra v. Reliance Trust Co.*,
  No. 16 C 4773, 2018 WL 835341 (N.D. Ill. Feb. 13, 2018)......................13

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999).....................................................................................16

*Parsons v. Brighthouse Networks, LLC*,
  2015 WL 13629647 (N.D. Ala. Feb. 5, 2015) ............................................9

*Pfeifer v. Wawa, Inc.*,
  No. 16-497, 2018 WL 2057466 (E.D. Pa. May 1, 2018).............................13

*Shaw v. Set Enters., Inc.*,
  No. 15-62152-CIV, 2017 WL 2954675 (S.D. Fla. June 30, 2017).........................17

*Sosna v. Iowa*,
  419 U.S. 393, 403 (1975) ...........................................................................13

*Stanford v. Foamex L.P.,*
    263 F.R.D. 156 (E.D. Pa. 2009) ........................................................................14

*Swaney v. Regions Bank,*
    2020 WL 3064945 ...........................................................................17, 18, 21

*Vega v. T-Mobile USA, Inc.,*
    564 F.3d 1256 (11th Cir. 2009) ...............................................................10, 11

*Walmart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .....................................................................................11

*Williams v. Mohawk Indus., Inc.,*
    568 F.3d 1350 (11th Cir. 2009) ......................................................................11

**Statutes**

29 U.S.C. §§ 1109, 1132(a)(2) ...............................................................12, 15, 16

Class Action Fairness Act, 28 U.S.C. § 1715 .............................................................9

Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ............................... *passim*

Internal Revenue Code Section 468B ......................................................................5

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................ *passim*

Plaintiffs Danielle Threadford and William Holmes, individually and as Class Representatives, hereby move for an order certifying a class for settlement purposes only, preliminarily approving a class action settlement agreement among Plaintiffs and Defendants Horizon Bank, d/b/a Horizon Trust & Investment Management ("Horizon"), Roddy McKinney and Janice McKinney (the "McKinney Defendants"[1] and together with Horizon, the "Defendants"), and McKinney Communications Corporation ("MCC" or the "Company," and together with Defendants, the "Settling Parties"), approving notice of the Settlement to the Class, and setting a date for a Fairness Hearing.[2]

## I.    INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, ("ERISA") class action (the "Action") for a payment of $2,100,000 in cash (an average recovery of approximately $6,796 per Class member before any fees and expenses), a $2,000,000 reduction of the current balance of the debt incurred by the McKinney Communications Corporation Employee Stock Ownership Plan (the "Plan" or "MCC ESOP") in the transaction at issue in this action, and a commensurate $2,000,000 reduction of the current balance of the debt incurred by MCC to the selling shareholders in the transaction. Should the Court grant final approval, every eligible Class Member will receive their portion of the Net Proceeds according to a Plan of Allocation.

The proposed Settlement Class meets all the criteria for conditional certification and the Settlement Agreement ("Settlement Agreement") satisfies all of the criteria for preliminary

---

[1] The term "McKinney Defendants" also includes, R. Lee McKinney, II, Daniel L. McKinney, the Roddy Lee McKinney, II Trust, dated December 26, 2012, and the Daniel Lee McKinney Trust dated December 26, 2012.
[2] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

approval, providing an excellent result for the Class. For these reasons, discussed in more detail below, Plaintiffs request that the Court grant this unopposed motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Background and Motion Practice

This class action is brought on behalf of participants and beneficiaries of the MCC ESOP. The Complaint alleges that Horizon, in its capacity as Trustee, and the McKinney Defendants violated ERISA in connection with the purchase of shares of Company common stock by the Plan on October 31, 2016 (the "ESOP Transaction"). Complaint, Dkt. 1 ¶ 5. In Counts I and II of the Complaint, Plaintiffs asserted that Horizon violated ERISA in connection with the ESOP Transaction by, *inter alia*, causing the ESOP to pay more than fair market value for MCC stock. *Id*. at ¶¶ 71-91. In Count III, Plaintiffs alleged that agreements by the Company to indemnify Horizon violated ERISA. *Id*. at ¶¶ 92-99. In Count IV, Plaintiffs asserted, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3),  that the McKinney Defendants engaged in prohibited transactions. *Id*. at ¶¶ 100-108. Defendants deny these allegations, deny any wrongdoing or liability, and have defended themselves in this Action. Defendants do not admit wrongdoing of any kind regarding the ESOP Transaction or this Action.

Plaintiffs filed the Complaint in the Northern District of Indiana on February 28, 2020. (Dkt. 1). On May 13, 2020, the McKinney Defendants filed a motion to transfer the case to the Northern District of Alabama. (Dkt. 22). The Court granted that motion on May 28, 2020, and the case was transferred to this court. (Dkt. 28). Defendants then filed motions to dismiss the Complaint on July 24, 2020, to which Plaintiffs responded on August 24, 2020. (Dkt. 56, 57, 64, 65). The Court heard oral arguments on Defendants' motions to dismiss and issued an order on October 7, 2020, administratively staying the case until Plaintiffs exhausted their administrative

remedies with the McKinney Communications Corporation ESOP Committee (the "Committee"). (Dkt. 68, 70).

On October 20, 2020, Plaintiffs submitted their claims to the Committee and requested documents from the Committee. The Committee denied Plaintiffs' claim on January 18, 2021, and produced documents it considered in making that determination. Plaintiffs appealed the Committee's decision, and the Committee upheld its denial on July 16, 2021. (Dkt. 76).

On August 13, 2021, Defendants filed renewed motions to dismiss and to set a schedule for filing the administrative record considered during the claims exhaustion process and summary judgment. (Dkt. 79-82). Plaintiffs responded to those motions on August 27, 2021, and Defendants filed their replies on September 3, 2021. (Dkt. 83-88). The Court denied Defendants' motions on October 29, 2021. (Dkt. 91, 92). Defendants answered the Complaint on December 10, 2021. (Dkt. 104, 105). Shortly thereafter, the Parties agreed to mediation and the Court stayed all pending deadlines on January 25, 2022. (Dkt. 113).

## B.    Discovery

The Parties completed substantial document discovery through the claims exhaustion process. Among other documents, Plaintiffs received Plan and Trust documents; typed notes from an onsite due diligence meeting attended by Horizon; financial statements; iterations of the transaction term sheet that was negotiated between the parties to the ESOP Transaction; a memorandum prepared by Horizon's legal advisor; a draft valuation report from Horizon's financial advisor; Horizon's draft committee minutes approving the ESOP Transaction; final transaction documents; and position papers and reports prepared by Defendants' counsel and experts retained by Defendants, as well as reports prepared by an expert retained by the Committee. *See* Declaration of Gregory Porter, attached hereto as Exhibit 1, ("Porter Decl."),

¶ 17. Plaintiffs' Counsel is experienced in litigating ESOP cases and therefore understands the key information needed to evaluate Plaintiffs' claims, which was included in the documents produce during administrative exhaustion. *Id.* ¶ 19. Plaintiffs' Counsel also retained and consulted valuation and due diligence experts who prepared preliminary analyses regarding the ESOP Transaction and the process engaged in by Horizon before the parties engaged in settlement discussions. *Id.* ¶ 16.

### C.     The Parties' Settlement Efforts

On March 21, 2022, the Parties and MCC, through their counsel, participated in arm's length and good faith mediation with Robert A. Meyer, Esq. of JAMS, a mediator with substantial experience with ERISA cases. Porter Decl., ¶ 18. The Parties drafted and submitted comprehensive mediation statements to Mr. Meyer that focused all sides on the key issues. *Id.* The Parties vigorously engaged in the mediation process, during which all counsel made presentations to Mr. Meyer. *Id.* After a full day of mediation, the Parties agreed to the terms contained in the Settlement Agreement currently before the Court for preliminary approval. *Id.*

## III.   SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement are summarized below.

### A.     The Proposed Settlement Class

The proposed Settlement Class consists of all persons who, at any time, were vested participants in the ESOP prior to January 1, 2022 and the beneficiaries of such participants. Settlement Agmt, ¶ 1.16. Excluded from the Settlement Class are the McKinney Defendants and their immediate families, the directors of McKinney, and legal representatives, successors, and assigns of any such excluded persons. *Id.* According to McKinney's counsel, there are

approximately 309 participants who vested at some point between the formation of the plan and December 31, 2020.[3] Porter Decl., ¶ 20.

### B.    Benefits to the Class

The debt the Plan incurred to the Company to finance the ESOP Transaction will be reduced by $2,000,000, with an accompanying $2,000,000 reduction in the debt owed by the Company to Janice McKinney and Roddy Lee McKinney, Sr. Settlement Agmt., ¶¶ 1.12, 2.5, 7.5.  The Settling Parties will also cause $2,100,000 ("Settlement Amount") to be deposited into a Settlement Fund Account established by Plaintiffs' Counsel or the Settlement Administrator at a federally chartered financial institution (the "Financial Institution"), which shall be considered a common fund created as a result of the Action. *Id.*, ¶¶ 7.1-7.3.

The Settlement Amount covers any and all claims for expenses and attorneys' fees by Plaintiffs individually or on behalf of the Class and any Service Award to the Named Plaintiffs, as well as any expenses associated with the Class Notices and Settlement Administration. *Id.*, ¶¶ 7.8, 8.1, 8.2. Plaintiffs' Counsel will seek attorneys' fees of no more than $700,000 (one-third of the Settlement Amount) plus expenses (approximately $90,000, of which 86% percent is expert expenses and 7% percent is mediation fees). *Id.* ¶ 9.1.

Under the proposed Plan of Allocation, attached hereto as Exhibit 3 to the Settlement Agreement, Class Members will receive their *pro rata* share of the Net Proceeds. Before subtracting expenses and attorneys' fees, each of the approximately 309 Class members will receive approximately $6,976 on average. Porter Decl., ¶ 20. The Settlement Fund Account is structured to qualify as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code. Settlement Agmt., ¶ 7.1.

---

[3] Information confirming the number of vested participants added in 2021 is not yet available.

The Named Plaintiffs and the Class are responsible for paying all taxes and tax-related expenses incurred in connection with the taxation of the income of the Qualified Settlement Fund, and all such taxes and expenses shall be paid out of the Qualified Settlement Fund.

### C.     Notice and Administration

The proposed Settlement Administrator, KCC, LLC shall be responsible for (1) mailing the Class Notice to Class Members and (2) posting the Class Notice on a website for the Settlement Class, which shall constitute legal notice. Settlement Agmt., ¶ 2.2.3. Plaintiffs' Counsel may direct the Financial Institution in writing to disburse from the Settlement Fund (1) any taxes owed by the Settlement Fund Account and (2) reasonable expenses of administering the Settlement Fund Account. *Id.*, ¶ 8.1.

The Settlement Administrator will determine the amounts allocable to each Class Member. Settlement Agmt., ¶ 8.2.3. The net of disbursements called for in Sections 8.1, 8.2.1, and 8.2.2 of the Settlement Agreement ("Net Proceeds") will be distributed according to the Plan of Allocation. *Id*. The Settlement Administrator will also process distribution and payment elections by Class members and implement the Plan of Allocation.

Within 14 days of the entry of a Preliminary Approval Order, the Settling Parties will cause to be deposited $100,000 into the Settlement Fund Account. Settlement Agmt., ¶ 7.2 Thirty days after the Final Order is entered (the "Effective Date of Settlement"), the Settling Parties will cause to be deposited an additional $2,000,000 into the Settlement Fund Account, at which point, the total amount will collectively comprise the "Settlement Amount." *Id.*, ¶ 7.3. Plaintiffs' Counsel will direct the Financial Institution to disburse money from the Settlement Fund Account. *Id.*, ¶ 8.2.3. Additionally, the Settlement Administrator shall determine how much

should be allocated to each Class Member pursuant to the Plan of Allocation and the Settlement Administrator shall distribute such amounts to the Class Members directly. *Id.*

### D.       Service Awards to the Class Representatives and Attorneys' Fees and Costs

Subject to Court approval, Plaintiffs' Counsel's fees, costs and expenses, and any Service Award to the Class Representatives shall be paid from the Settlement Fund Account. Settlement Agmt., ¶¶ 8.2.1, 8.2.2. Plaintiffs shall petition the Court for a Service Award not to exceed $10,000 for the Class Representatives in recognition of their service to the Class. *Id.* ¶ 8.2.2.[4] Plaintiffs' Counsel will also petition the Court for an award of attorneys' fees in an amount not to exceed $700,000 and for reimbursement of litigation expenses, including the cost and expense of the consulting experts retained by Plaintiffs' counsel, in an amount not to exceed $100,000. *Id.* ¶ 9.1.  As provided for in the Settlement Agreement, the consideration of and approval of the requested attorneys' fees, expenses, and Service Awards are separate from the consideration and approval of the Settlement Agreement, and the Settlement Agreement is not contingent on whether the Court awards any attorneys' fees, expenses, or Service Awards.

### E.       Release of Claims

In exchange for payment of the Settlement Amount by Defendants, the reduction in debt related to the ESOP Transaction, and satisfaction of the conditions required by the Settlement Agreement, Plaintiffs and the Class will release any claims that were or could have been asserted in the Lawsuit or that in any way arise out of the ESOP Transaction (including the refinancing of the ESOP Transaction), the Complaint or Horizon's services as Trustee. Settlement Agmt., ¶ 3.1. The Released Claims are set forth in full in the Settlement Agreement. *Id.* ¶ 3.2. The Released

---

[4] Plaintiffs acknowledge the opinion in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020) and intend to address that opinion in their motion for attorneys' fees, expenses, and Service Awards, if the Court grants this motion for preliminary approval of the Settlement.

Claims do not include any individual participant's or beneficiary's claim for benefits under

Section 502(a)(1)(B) of ERISA based only on errors unrelated to the allegations in the Complaint

regarding that participant's salary, age, or years of service. *Id*. The covenant not to sue is set

forth in the Settlement Agreement. *Id*. ¶ 4.1. The Parties request that, upon entry of the

Preliminary Approval Order, the Court enjoin any Class Member from instituting, asserting or

prosecuting against any Defendant or MCC, in any pending or future action in any federal or

state court or any other forum, any Released Claim that the member currently has or may have in

the future. *Id*. ¶ 11.1.  The Settlement is subject to a written determination by the Independent

Fiduciary that the terms in the Settlement Agreement are fair and reasonable to the Plan and its

participants. *Id*. ¶ 2.3

  **F.**  **Notice and Proposed Schedule of Events**

  The Settlement Agreement provides that the Parties will request that the Company

provide the names and last known addresses of Settlement Class Members at least 15 days prior

to the deadline for mailing notice. Settlement Agmt., ¶ 2.2.3. The proposed Class Notice, Exhibit

1-A to the Settlement Agreement, provides all the information necessary to inform Class

Members about the nature of the Action, the terms of the Settlement, and the procedures for

entering an appearance to be heard or to object to the Settlement. The Class Notice will be

mailed by first class mail. *Id*. ¶ 2.2.3. For returned mail, the Settlement Administrator will

engage in standardized processes to identify and locate Class Members. *Id*. In addition, key court

documents, including the operative Complaint, the Settlement Agreement, preliminary approval

papers, Plaintiffs' Motion for Award of Attorneys' Fees, and Plaintiffs' Motion for Final

Approval will be posted on the settlement website. *Id*. The Settlement Agreement provides that

the Settlement Administrator shall cause the Class Notice to be disseminated to the Class

Members by first class mail and shall post the Class Notice on a website (along with the other key court documents) for the Settlement Class within thirty (30) days after the Preliminary Approval Order or by July 15, 2022, whichever is later.

The Parties agree to the following schedule of events subject to the Court's approval:

| Event | Timing |
|---|---|
| CAFA Notice | Within 10 days after the Settlement Agreement is filed with this Motion for Preliminary Approval |
| Settlement Administrator to receive Class list and Class contact information | At least 15 days prior to the deadline for mailing notice |
| Mail Settlement Notice | Within thirty (30) days after the Preliminary Approval Order or by July 15, 2022, whichever is later[5] |
| Motion for final approval of settlement | No later than 45 days before the Fairness Hearing |
| Motion for of attorneys' fees and expenses, and Service Awards for Named Plaintiffs | No later than 45 days before the Fairness Hearing |
| Independent Fiduciary provides written notification of its determination | No later than 30 days before the Fairness Hearing |
| Objections to the Settlement, notice of intention to appear at Fairness Hearing | Must be received by the Court on or before 21 days before the Fairness Hearing and received by Plaintiffs' Counsel and Defendants' Counsel no later than 15 days before the Fairness Hearing |
| Response to Objections and Settlement Administrator's Notice Declaration | No later than 7 days before the Fairness Hearing |
| Fairness Hearing | At least 90 days after mailing of Class Notice[6] |

---

[5] As noted above, information confirming the number of vested participants added in 2021 is not yet available. The Parties have agreed that the Class Notice should be mailed no earlier than July 15, 2022, to allow time for that information to be confirmed by the Plan's recordkeeper.

[6] Based on the schedule for mailing the Class Notice as noted above, the Parties respectfully request that the Court schedule the Fairness Hearing no earlier than October 14, 2022.  Additionally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), the Fairness Hearing must be held at least 90 days after the mailing of the CAFA Notice, which shall be mailed on May 20, 2022.  Accordingly, CAFA should present no timing issues for the schedule the Parties have proposed.

## IV.        ARGUMENT

### A.        The Court Should Certify the Settlement Class

As part of the Settlement, the Parties request that the Court certify the proposed

Settlement Class, defined in Section III.A above, for purposes of settlement only. Certification of

a class is required where the plaintiff demonstrates the four prerequisites of Rule 23(a) and at

least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. As in numerous other ERISA

class actions, those requirements are easily met here.

#### 1.        The Class Satisfies the Requirements of Rule 23(a)

Rule 23(a) requires Plaintiffs to demonstrate (1) the class is so numerous that joinder of

all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative party is typical of the claims or defenses of the class; and

(4) the representative party will fairly and adequately protect the interests of the class.

##### a)        *The Class is sufficiently numerous*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable." "The Eleventh Circuit has held that the numerosity requirement is 'a generally

low hurdle' and 'less than twenty-one is inadequate [and] more than forty [is] adequate . . .'" *In*

*re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2020 WL 8256366, at *8

(N.D. Ala. Nov. 30, 2020) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir.

2009)). The proposed Class has approximately 309 members as of December 31, 2020. Porter

Decl., ¶ 20. The numerosity requirement is met.

##### b)        *There are common questions of law and fact*

Rule 23(a) requires a showing of the existence of "questions of law or fact common to the

class." For commonality to be found, the action "must involve issues that are susceptible to

class-wide proof." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (citation omitted). A plaintiff must "demonstrate that the class members have suffered the same injury." *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). However, Rule 23(a)(2) "demands only that there be questions of law or fact common to the class. This part of the rule does not require that all the questions of law and fact raised by the dispute be common." *Vega*, 564 F.3d at 1268; *see also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) ("even a single common question will" satisfy the commonality requirement); *In re Blue Cross*, 2020 WL 8256366, at *9. Claims that a stock was improperly valued or sold at an incorrect price, such as those at issue here, satisfy the commonality requirement. *See Gamache v. Hogue*, 338 F.R.D. 275, 286-87 (N.D. Ga. 2021) (noting common questions included whether the ESOP suffered any losses, how to calculate those losses and that resolution of claims would resolve issues for all claimants in "one stroke"); *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (common issues exist where plaintiff alleged ESOP stock sold for less than fair market value).

Here, commonality is satisfied because Defendants' alleged violations of ERISA are the same for all Class Members. Defendants either did or did not engage in prohibited transactions under ERISA. Thus, Defendants' actions and inaction with respect to the ESOP Transaction either resulted in, or did not result in, ERISA violations toward the entire Class. Common issues in this case include: whether Horizon engaged in prohibited transactions under ERISA by permitting the Plan to purchase MCC stock and take a loan from MCC; whether Horizon took sufficient steps to determine the value of the MCC stock in connection with the ESOP Transaction; whether Horizon caused the Plan to pay more than fair market value for MCC

stock; whether the McKinney Defendants received more than fair market value for their MCC stock; and other questions contained in the Complaint.

c)        *The typicality requirement of Rule 23(a) is met*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "[T]he typicality requirement is permissive; representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft*, 275 F.R.D. 666, 674 (S.D. Fla. 2011) (citation omitted). "Whereas commonality looks at whether class members' claims are common to each other (a horizontal comparison between members of the class), typicality is satisfied where the named plaintiffs' claims 'arise from the same event or pattern or practice and are based on the same legal theory' as the claims of the class (a vertical comparison between class members and class representatives)." *In re Blue Cross*, 2020 WL 8256366, at *9 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985)).

By definition, a prohibited transaction claim brought under ERISA Sections 409(a), 502(a)(2) is brought on behalf of the plan and any recovery must be paid "to such plan." 29 U.S.C. §§ 1109(a), 1132(a)(2). Thus, courts generally find that ERISA cases arising under § 502(a)(2) meet the typicality requirement because the "action is brought on behalf of the Plan," and Plaintiffs' claims, "of necessity, are typical of the claims" of class members. *Lively v. Dynegy, Inc.*, No. 05-00063, 2007 WL 685861, at *10 (S.D. Ill. Mar. 2, 2007).

Here, the Named Plaintiffs were participants in the ESOP during the relevant time period. *See* Declaration of Danielle Threadford ("Threadford Decl."), attached to the Porter Decl. at Exhibit D, ¶ 3; Declaration of William Holmes ("Holmes Decl."), attached to the Porter Decl., as

Exhibit E, ¶ 3. The Plan's primary asset was the MCC stock it purchased during the relevant time period. In *Neil v. Zell*, an ERISA case arising from ESOP transactions, the court held that the named plaintiffs satisfied the typicality requirement because they "held the same investment as did all other members of the . . . ESOP" — employer stock. 275 F.R.D. 256, 261 (N.D. Ill. 2011); *see also Nistra v. Reliance Trust Co.*, No. 16 C 4773, 2018 WL 835341, at *3 (N.D. Ill. Feb. 13, 2018); *Pfeifer v. Wawa, Inc.*, No. 16-497, 2018 WL 2057466, at *4 (E.D. Pa. May 1, 2018). In addition, the damages sought here are losses and other relief on behalf of the Plan as a whole. Thus, typicality is met.

       *d)*      *The proposed Class Representatives and their counsel will fairly and adequately protect the interests of the Class.*

Rule 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "The adequacy-of-representation requirement is satisfied when (i) the class representatives have no interests conflicting with the class; and (ii) the representatives and their attorneys will properly prosecute the case." *In re Blue Cross,* 2020 WL 8256366, at *10 (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)).

Proposed Class Representatives Danielle Threadford and William Holmes have been actively engaged in the litigation and provided documents to counsel used to draft the Complaint. Threadford Decl., ¶¶ 4-5; Holmes Decl. ¶¶ 4-5. Second, they have no conflicts with the Class. They assert claims on the Plan's behalf and request no separate individual relief. The adequacy requirement of Rule 23(a)(4) is met.

Plaintiffs' Counsel in this case is well-qualified as described in detail in the Declaration of Gregory Porter and Robert Izard. *See* Porter Decl., ¶¶ 8-13 and Exhibit A to the Porter

Declaration; Declaration of Robert Izard ("Izard Decl.") and Exhibit A to the Izard Declaration, attached hereto as Exhibit 2. Not only do these attorneys have extensive experience litigating class actions, including numerous ESOP class actions, they have worked diligently to litigate the claims here. Porter Decl., ¶¶ 15-18; Izard Decl., ¶¶ 11-14. There should be no question that counsel have brought sufficient skill and resources to litigate this case. Plaintiffs' Counsel satisfy Rule 23(a)(4) and 23(g).

> ## 2.    The claims meet the requirements of certification under Rule 23(b)(1)

In addition to meeting the requirements of Rule 23(a), the action must meet at least one of the three provisions of Rule 23(b). The claims asserted here meet the requirements of Rule 23(b)(1). "Most ERISA class actions are certified under Rule 23(b)(1)." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008); *see also Gamache*, 338 F.R.D. at 291 ("Recently, Courts in [the 11th] Circuit have certified classes in ERISA breach of fiduciary duty actions [ ] under either section of Rule 23(b)(1)"). "[T]he unique and representative nature of an ERISA § 502(a)(2) suit" makes such claims particularly appropriate. *Stanford v. Foamex L.P.*, 263 F.R.D. 156 (E.D. Pa. 2009). ERISA actions meet the requirements of Rule 23(b)(1) because "defendants often provide 'unitary treatment to all members of [a] putative class' and "the rights of absent 'class member[s] [are often] . . . implicated by litigation brought by other class members.'" *Feret v. Corestates Fin. Corp.*, C.A. No. 97–6759, 1998 WL 512933, at *13 (E.D. Pa. Aug. 18, 1998).

> ### a)    Class certification under Rule 23(b)(1)(A) is appropriate

Rule 23(b)(1)(A) provides that a class may be certified if prosecuting separate actions would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for the party opposing the class. "ERISA requires plan administrators to treat all

14

similarly situated participants in a consistent manner." *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (certifying a class of "employees, spouses of employees, and dependents of employees" who were eligible for certain benefits). For this reason, courts have certified cases involving violations of ERISA under Rule 23(b)(1)(A). *See Gamahe*, 338 F.R.D. 291 (finding certification under Rule 23(b)(1)(A) proper where "[a]s participants in the ESOP, the alleged breach affects all class members. And, as the Eleventh Circuit has recognized, adjudicating these claims among 327 participants individually runs the risk of inconsistent results that could place 'incompatible standards of conduct' on Defendants"); *Neil*, 275 F.R.D. at 267-68; *Loc. 1522 of Council 4 v. Bridgeport Health Care Ctr., Inc.*, No. 15-CV-1019 (JCH), 2018 WL 1419792, at *10 (D. Conn. Mar. 21, 2018) ("ERISA generally establishes fiduciary obligations on a plan-wide basis, which is the very reason that courts often certify ERISA classes under 23(b)(1)").

The risk of inconsistent adjudications is apparent in this case. For example, the central issue in this case is whether the Plan acquired MCC stock at an appropriate value and the steps that Horizon and its advisors undertook to determine that value. Separate lawsuits over these issues could result in different outcomes. Inconsistent adjudications on the true fair market value of MCC stock at the time of the ESOP Transaction obtained by similarly situated participants would make it impossible for the Plan administrator to treat similarly situated participants alike. Accordingly, certification under Rule 23(b)(1)(A) is appropriate.

        *b)*      *Class certification under Rule 23(b)(1)(B) is appropriate*

Certification under Rule 23(b)(1)(B) is appropriate where "*any* individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (emphasis added). One example of an action

15

ideally suited for certification under Rule 23(b)(1) is "the adjudication of the rights of all participants in a fund in which the participants have common rights." *Id*. at 834 n.14. Rule 23(b)(1)(B) is designed for "an action which charges a breach of trust by a[ ] . . . trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendment. That precisely describes the claims here.

Claims involving a fiduciary's breach of ERISA's prohibited transaction rules must be brought in a representative capacity on behalf of the plan under § 502(a)(2) for relief under § 409. 29 U.S.C. §§ 1109, 1132(a)(2). "In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *Gamache*, 338 F.R.D. 275, 292 (M.D. Ga. 2021) (citation omitted); *see also Neil*, 275 F.R.D. at 267-68; *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006). This is particularly true for cases involving an ESOP. *See*, *e.g.*, *Eslava v. Gulf Tel. Co.*, No. CIVA 04-00297 KDB, 2007 WL 2298222, at *6 (S.D. Ala. Aug. 7, 2007).

The key issues in the case focus on Defendants' conduct — principally, whether and how they caused or participated in the complained of prohibited transactions, the adequacy of Horizon's investigation into the value of MCC stock, the information provided to Horizon and used in its advisor's valuations, and the conclusions drawn from that information. Thus, a judgment that Defendants violated ERISA would apply to the Plan as a whole and impact all class members equally. *See Gamache* (certifying class under Rule 23(b)(1)(B) "because the fiduciary claims are brought on behalf of the ESOP, individual adjudication would necessarily . .

16

be dispositive of the interest of [ ] plan participants absent from that individual action . . .").

Further, any money recovered would be paid to the Plan, meaning that resolution of these issues

will affect *all* participants in the Plan.

> **B.** **The Court Should Grant Preliminary Approval of the Settlement Because It Is Fair, Reasonable and Adequate**

> **1.** **The Standards for Preliminary Approval**

"Public policy strongly favors the pretrial settlement of class action lawsuits." *Swaney v.*

*Regions Bank*, 2020 WL 3064945, at *3 N.D. Ala. June 9, 2020) (citation omitted). Rule 23(e)

provides that a class action cannot be settled without court approval. Ultimately, to approve the

proposed settlement, the Court must determine that it is fair, reasonable and adequate. *Ault v.*

*Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). Review of a proposed class action

settlement for approval generally proceeds in two stages: (1) preliminary approval and notice to

class members of the proposed settlement; and (2) final approval following a fairness hearing in

which the Court determines whether the proposed settlement is "fair, reasonable, and adequate."

Fed. R. Civ. P. 23(e)(2); *Shaw v. Set Enters., Inc.*, No. 15-62152-CIV, 2017 WL 2954675, at *1

(S.D. Fla. June 30, 2017).

Before a court approves a proposed settlement, notice must be provided to the class. Fed.

R. Civ. P. 23(e)(1). The parties must provide the court with information sufficient to enable the

court to determine whether to give such notice of the proposal to the class. *Id.* The court

examines the information provided by the parties against a number of factors to determine

whether notice should be given. *Id.* At the preliminary approval stage, "[t]he [c]ourt may not

resolve contested issues of fact or law[ ] but instead is concerned with the overall fairness,

reasonableness, and adequacy of the proposed settlement as compared to the alternative of

litigation." *Swaney*, 2020 WL 3064945, at *3. The question is "whether [the proposed

17

settlement] is within the range of fair, reasonable and adequate." *Exum v. Nat'l Tire & Battery*, 2020 WL 1670997, at *7 (S.D. Fla. Apr. 6, 2020) (citing Manual for Complex Litig. § 30.41). "Where [ ] the proposed settlement is the result of serious, arms-length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval, achieves favorable outcomes for plaintiffs and the class, and does not grant preferential treatment to plaintiffs or other segments of the class, courts generally grant approval." *Id.*

Rule 23, as amended in 2018, provides direction to federal courts considering whether to grant preliminary approval of a class action settlement. Fed. R. Civ. P. 23(e), Committee Notes (when weighing preliminary approval, court should decide whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."). Rule 23(e)(2) provides that the Court should look to the following factors:

    (A)    the class representatives and counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    *the costs, risks, and delay of trial and appeal*;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH,

2019 WL 9171207, at *9 (N.D. Ala. Aug. 1, 2019).

In tandem with Rule 23(e), courts within the Eleventh Circuit evaluate class action settlements under six factors outlined in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984): (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which the settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *Parsons v. Brighthouse Networks, LLC*, 2015 WL 13629647, *2 (N.D. Ala. Feb. 5, 2015). Plaintiffs will address each of these factors to the extent they are applicable,[7] although many of them overlap with those of Rule 23(e)(2), and therefore Plaintiffs will address them together. *See In re Blue Cross*, 2020 WL 8256366, at *15 (citation omitted).

### 2. The Class Representatives and Class Counsel Adequately Represented the Class

For the same reasons that the proposed Class Representatives and Plaintiffs' Counsel satisfy the adequacy of representation requirements under Rule 23(a)(4), they have also adequately represented the proposed Class under Rule 23(e)(2)(A). The Proposed Class Representatives have been actively engaged in the litigation, have no conflicts with the Class, and seek no individual relief. *See* Section IV(A)(1)(d), above. And as detailed above, Plaintiffs' Counsel is well-qualified, have extensive experience litigating class actions including numerous ESOP class actions, and they have worked diligently to litigate the claims here including defeating motions to dismiss the action. *See* Section IV(A)(1)(d), above.

---

[7] There is no agreement required to be produced under Rule 23(e)(2)(C)(iv), and since Notice has not yet been sent, there has been no opposition to the settlement *(Bennett* factor #5).

### 3. There Was No Fraud or Collusion and the Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires the court to determine whether a proposed settlement "was negotiated at arm's length." Relatedly, the *Bennett* factors require the court to rule out the possibility of fraud or collusion behind the settlement. *Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1530 (11th Cir. 1994).

Here, Plaintiffs were given access to information about the ESOP Transaction and Defendants' knowledge and process through the claims exhaustion process. Plaintiffs' Counsel retained a valuation expert and due diligence expert to review valuation reports and other transaction documents. Porter Decl., ¶ 16. The Parties thus entered the mediation process with Robert Meyer having an understanding of where the strengths and weaknesses of their arguments lay and both sides engaged in hard bargaining during the full-day mediation. Mr. Meyer, a professional, experienced class action mediator, probed at those weaknesses in assisting the Parties in arriving at the settlement terms. *See* Section II(D) above; Porter Decl., ¶ 18.

There is no suggestion of fraud or collusion in this case, where the settlement "is the result of non-collusive, arm's length negotiations among experienced counsel informed of and familiar with the legal and factual issues of the action." *McWhorter*, 2019 WL 9171207, at *9. The lack of collusion is further supported by the participation of Mr. Meyer. *See id.* (noting involvement of neutral mediator may bear on whether negotiations were conducted in a manner that would protect and further the class interest). The proposed Settlement is the result of good faith, arm's-length negotiations by well-informed and experienced counsel. Rule 23(e)(2)(B), and the related *Bennett* factor are met.

### 4. The Relief Obtained Considering the Complexity, Expense and Likely Duration of the Litigation.

Rule 23(e)(2)(C)(i), and the first and fourth *Bennett* factors, require the court to consider the adequacy of the relief obtained, in light of the risk, complexity, cost, and likely duration of the litigation.

The Parties had different views about Defendants' actions, their potential liability and the likely outcome of the litigation. Plaintiffs' core allegations regarding the ESOP Transaction rested on facts that were strongly contested by Defendants, including the accuracy of MCC's projections, whether the valuation methods employed by Horizon's advisors were proper, and whether there were negative facts that were ignored by or not sufficiently investigated by Horizon during the due diligence and negotiation process, and the fair market value of MCC stock as of the transaction date.

Defendants denied the allegations, asserted affirmative defenses and otherwise defended their actions with respect to the Transaction. Defendants pointed to evidence, such as Horizon's engagement of qualified advisors; multi-day on-site due diligence visit with MCC's management; use of conservative financial projections; and negotiations that resulted in a substantial reduction in purchase price, an increase in warrant strike price and a clawback provision if MCC did not reach its profit projections. If the Action were to proceed, Plaintiffs would have to overcome these and other defenses and arguments. These fact-intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day. *See Swaney*, 2020 WL 3064945, at *4 ("Because 'the outcome on class certification and the ultimate outcome on the merits was

uncertain for both parties,' a settlement was reached and here that is appropriate.") (quoting *Parsons,* 2015 WL 13629647, at *2).

Trial would have required several attorneys from Plaintiffs' Counsel to conduct further discovery and prepare and argue motions for class certification, and summary judgment. Plaintiffs' Counsel would have to expend substantial time and effort to engage in additional discovery, review discovery responses and documents produced in response to requests for production, take depositions, and prepare witnesses, as well as engage in hours of briefing. And, regardless of the outcome, there likely would have been appeals that followed, further delaying resolution and causing more expense. Further, the estimated 309 Class Members with vested account balances will each receive on average approximately $6,976 before fees and expenses.

Thus, the proposed Settlement is an excellent result considering "there is simply no guarantee" that the Class would recover more relief than that secured in the Settlement. *See In re Blue Cross,* 2020 WL 8256366, at *16; *McWhorter,* 2019 WL 9171207, at *11 ("The prospect of a long, arduous [trial] requiring great expenditures of time and money on behalf of both parties and the [C]ourt, all in the hopes of achieving a result on par with the relief offered by the settlement, is not in the interests of any party or Settlement Class Member.")

### 5.     The Stage of Proceedings and Development of the Factual Record

The sixth *Bennett* factor requires a court to consider whether "the case settled at a stage of the proceedings where class counsel had sufficient knowledge of the law and facts to fairly weigh the benefits of the settlement against the potential risk of continued litigation." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *10 (N.D. Ga. Mar. 17, 2020).

As described in Section II(A), (B) above, the Parties have completed discovery through the claims exhaustion process and litigated motions to dismiss or proceed on the administrative record. Counsel for Plaintiff and Counsel for Horizon have also litigated at least eight other ESOP class actions in the last five years presenting similar ERISA issues. Porter Decl., ¶ 19. As such, Plaintiffs' Counsel is intimately familiar with ESOP trustees' recordkeeping and due diligence practices. Similarly, Horizon's counsel is familiar with the documents and information Plaintiffs' Counsel has repeatedly requested and which allowed the Parties to fully and fairly assess the allegations and strengths and weaknesses of their respective positions at an early stage, to the benefit of the Class. The documents obtained in the discovery process were provided to Plaintiffs' experts to assess the potential value of the Class's claims and Horizon's diligence process, and Plaintiff's experts provided written analyses to counsel and engaged in several conversations regarding the lawsuit. *Id*. ¶¶ 16-17. "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *In re Blue Cross*, 2020 WL 8256366, at *16 (citation omitted).

Having obtained the necessary information to assess the strengths and weaknesses of their respective positions and with best interests of the Plan in mind, the Parties reached a fair and equitable settlement agreement.

> **6.      The Benefits Provided by the Settlement are Fair, Adequate and Reasonable When Compared to the Range of Possible Recovery**

The second and third *Bennett* factors are "easily combined and normally considered in concert." *Camp v. City of Pelham*, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014). "The [c]ourt's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation[ ] but to evaluate the proposed settlement in its totality." *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).

Here, the Settlement provides significant relief to the Class Members. Not only will the Class Members receive, on average, approximately $6,796 in cash before fees and expenses, but the ESOP's debt will be reduced by $2 million and the Company's debt to the selling shareholders will be reduced by the same amount. Plaintiffs' expert estimated that the ESOP had overpaid by approximately $12.5 million in the ESOP Transaction. Porter Decl., ¶ 16. Experts retained by the other Parties disputed that there was any overpayment, but based on the estimate provided by Plaintiffs' expert, the cash recovery of $2.1 million alone represents 17% of that damage figure, and after considering the $2 million reduction in the ESOP's debt to the Company, the Settlement will result in 33% of the damage estimate. The Company will also receive $2 million in debt relief from the selling shareholders, which will have a positive impact on the Company's equity value, and the settlement will generate a sizeable aggregate cash distribution to the Class Members. The benefit to the Class Members falls within the range of reasonable recoveries. *See In re Blue Cross*, 2020 WL 8256366, at *17; *Bennett*, 737 F.2d at 986-87 & n.9 (approving a settlement representing 5.6% of claims with maximum potential recovery); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) ("[S]tanding alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims.").

### 7.    The Effectiveness of the Proposed Method of Distributing Relief

Rule 23(e)(2)(C)(ii), examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. Here, the Settlement Agreement contemplates that MCC shall provide, or cause to be provided, the names and last known addresses of the Class Members, and (1) the total number of vested shares of MCC stock allocated at any time to the Class Member's ESOP account prior to January 1, 2022, and (2) the

total number of shares distributed to the Class Member prior to January 1, 2022. Settlement Agmt., ¶ 2.2.3. The Settlement Administrator will use that information and follow the Plan of Allocation. *Id*. ¶ 8.2.3. All Class Members will receive a check directly from the Settlement Administrator or, if elected by the Class Members, as a deposit into an individual retirement account or other eligible retirement plan. *Id*.

### 8. The terms of the proposed award of attorneys' fees

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. As described above in Section III.D, Plaintiffs' Counsel will file an application seeking an award of attorneys' fees in an amount not exceeding $700,000 (1/3 of the Settlement Amount), plus reimbursement of litigation expenses not exceeding $100,000. Settlement Agmt., ¶ 9.1

### 9. The proposal treats class members equitably relative to each other

Under Rule 23(e)(2)(D), the court must consider whether the proposal treats class members equitably relative to each other. Under the Plan of Allocation, distributions to the Class Members will be based on the number of vested shares he or she held in the Plan. Following that process, individual Class Members will not receive preferential treatment but instead all will receive *pro rata* distributions based on the number of vested shares in their account and as detailed in the Plan of Allocation. Similarly, the increase in Company stock value due to the debt reduction terms will impact the value of Class Member's Company stock in proportion to their vested shares. Courts in this Circuit have found such *pro rata* distributions appropriate. *McWhorter*, 2019 WL 9171207, at *12; *Cifuentes v. Regions Bank*, No. 11-cv-23455, 2014 WL 1153772, at *3 (S.D. Fla. Mar. 20, 2014).

### C.     The Court Should Approve the Notice Plan and Schedule a Fairness Hearing

As described in Section III.C above, the Parties have agreed, subject to Court approval, to a Notice Plan, which calls for individual mailed notice to the Settlement Class. This notice and the manner in which it will be disseminated satisfies Rule 23(e)(1) and constitutional due process concerns.

Plaintiffs request that the Court approve KCC as Settlement Administrator and Escrow Agent. As detailed in Exhibit C to the Porter Declaration, KCC has extensive experience in the administration of settlements of this type.

Finally, Plaintiffs request that the Court schedule a Fairness Hearing on Plaintiffs' motion for final approval of the Settlement and motion of an award of reasonable attorneys' fees and Service Award to the Named Plaintiffs, as set forth in the proposed Preliminary Approval Order. This will establish a reasonable and efficient process for disseminating notice, providing the opportunity for Settlement Class Members to object, and considering final approval of the Settlement.

## V.     CONCLUSION

The proposed Settlement meets the standard for preliminary approval. Accordingly, Plaintiffs respectfully request that the Court issue an Order: (a) certifying the Class for settlement purposes and granting preliminary approval of the Settlement Agreement, attached hereto as Exhibit B to the Porter Declaration; (b) approving the proposed Class Notice, Exhibit 1-A to the Settlement Agreement; (c) approving KCC as the Settlement Administrator; (d) approving the Plan of Allocation; (e) setting a date for a Fairness Hearing on or after October 14, 2022.

Dated:  May 17, 2022

Respectfully submitted,

**BAILEY & GLASSER LLP**

*/s/ David L. Selby II*
David L. Selby II
Bailey & Glasser LLP
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244
Telephone: (205) 988-9253
Facsimile: (205) 733-4896
dselby@baileyglasser.com

Gregory Y. Porter (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
Bailey & Glasser, LLP
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

Patrick O. Muench (*pro hac vice*)
Bailey & Glasser, LLP
333 S. Wabash Ave., Suite 2736
Chicago, IL 60604
Telephone: (312) 995-7143
Facsimile: (304) 342-1110
pmuench@baileyglasser.com

Robert A. Izard
Izard, Kindall & Raabe, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6295
rizard@ikrlaw.com

*Attorneys for Plaintiffs*

27

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 17th day of May, 2022, the foregoing was filed using the Court's CM/ECF system, which will serve notice upon all counsel of record.

/s/David L. Selby, II
David L. Selby, II