FILED

2022 May-17  PM 08:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DANIELLE THREADFORD and WILLIAM HOLMES, on behalf of the McKinney Communications Corporation Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,** | |
| **Plaintiffs,** | **Case No. 2:20-cv-00750-RDP** |
| **v.** | |
| **HORIZON TRUST AND INVESTMENT MANAGEMENT, N.A., RODDY McKINNEY, and JANICE McKINNEY,** | |
| **Defendants.** | |

## <u>DECLARATION OF GREGORY Y. PORTER</u>

I, Gregory Y. Porter, declare as follows:

1.  I am a member in good standing of the Bar of the Commonwealth of Virginia and the Bar of the District of Columbia. I am admitted to practice before this Court *pro hac vice*.

2.  All the facts stated herein are true and correct within my personal knowledge, and if called as a witness, I could and would testify competently to the facts stated herein

3.  I am more than 18 years of age, am capable of making this declaration, and have personal knowledge of the following.

4.  I make this declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement and Certification of Settlement Class.

5.  I am a partner of the law firm of Bailey & Glasser LLP, counsel to Plaintiffs in this

lawsuit.

6.   I have been actively involved in this lawsuit from the beginning of the investigation to the present and have personally supervised the work performed by Bailey & Glasser employees.

7.   Bailey & Glasser attorneys have been actively involved in all stages of this lawsuit, including but not limited to investigating and preparing the Complaint, meeting and conferring with defense counsel regarding case management, reviewing Defendants' document productions, representing Plaintiffs at hearings and case conferences, and attending mediation.

8.   I have been working on ERISA class actions since 1998. I have served as lead or co-lead counsel for plaintiffs in many important ERISA cases, as described below.

9.   I have direct experience in lawsuits under ERISA challenging Employee Stock Ownership Plan (ESOP) transactions. *See Brundle v. Wilmington Trust Ret. & Int'l Servs. Co.*, 241 F. Supp. 3d 610 (E.D. Va. 2017) ($29.7 million trial judgment); *Allen v. GreatBanc Trust Co.*, 835 F.3d 670 (7th Cir. 2016) (reversing trial court ruling on motion to dismiss in an ESOP class action; lawsuit settled for $2.3 million); *Jessop v. Larsen*, No. 14-cv-00916 (D. Utah) ($19.8 million settlement secured for ESOP plan participants in 2017); *Swain v. Wilmington Trust, N.A.*, No. 17-071-RGA-MPT (D. Del.) ($5 million settlement); *Casey v. Reliance Trust Co.*, 18-cv-00424-ALM-CMC (E.D. Tex.) ($6.25 million settlement for ESOP plan participants); *Choate v. Wilmington Trust, N.A.*, 17-cv-250-RGA (D. Del.) ($19.5 million settlement); *Blackwell v. Bankers Trust Co. of South Dakot*a, No. 18-cv-141-KHJ-FKB (S.D. Miss.) ($5 million settlement; Fink v. Wilmington Trust, N.A., No. 19-cv-1193-CFC (D. Del.) ($5.5 million settlement); and *Nistra v. Reliance Trust Co.*, No. 16 C 4773 (N.D. Ill.) ($13.36 million settlement). In December of 2016, I led a team of lawyers in an ERISA case that resulted in a $30 million judgment. *Brundle*, 241 F. Supp. 3d 610. The Fourth Circuit affirmed the judgment

in all respects. *See Brundle v. Wilmington Trust, N.A.*, 919 F.3d 763 (4th Cir. 2019). I argued the appeal for Plaintiffs-Appellees. Bailey & Glasser currently represents plaintiffs in several other ESOP lawsuits. A summary of Bailey & Glasser's ERISA practice experience is attached as Exhibit A.

10. I have direct experience in lawsuits under ERISA involving complex financial products and services, and fiduciary decision making about investments, including the following which are directly relevant to this case. *Diebold v. Northern Trust*, No. 09-1934 (N.D. Ill.) ($34 million cash settlement in 2015); *Anderson v. Principal Life Ins. Co.*, No. 15-0119 (S.D. Iowa) ($3 million cash and $8.5 million in prospective relief in 2015); *Glass Dimensions, Inc. v. State Street Bank &Trust Co.*, No. 10-10588 (D. Mass.) ($10 million cash settlement in 2014); *In re CMS Energy ERISA Litig.*, No. 02-CV-72834 (E.D. Mich.) ($28 million recovered); *Sherrill v. Federal-Mogul Corp. Retirement Programs Committee*, No. 04-CV-72949 (E.D. Mich.) ($14 million recovered *Bilewicz v. FMR LLC*, No. 13-10636 (D. Mass.) ($12 million cash and substantial prospective relief in 2014); *Figas v. Wells Fargo*, No. 08-04546 (D. Minn.) ($17.5 million settlement in 2011). All of the cases listed above were about retirement plan fiduciaries making imprudent investment decisions. The *Northern Trust* and *Glass Dimensions* cases involved complex securities lending transactions involving hundreds of retirement plans. In those cases, I was the chief architect of the complaints, led the expert discovery for the plaintiffs, and successfully argued several key motions. The *Principal, Wells Fargo* and *FMR* cases involved very similar allegations, namely that conflicted fiduciaries selected proprietary investment offerings for employee benefit plans to benefit the employer, not the employees. I developed the key concepts, supervised the investigation and preparation of the complaints, directed the experts and consultants, and drafted the key motions filings.

11. I also have represented defendants in complex ERISA cases. I was part of the defense trial team in an ERISA class action against Prudential Life Insurance Company, which resulted in a verdict for the defendants. *See Dupree v. The Prudential Ins. Co. of Am.*, 2007 WL2263892 (S.D. Fla. Aug. 7, 2007). In addition, I represented defendants in several of the earliest cases involving imprudent investments in employer stock, including *Koch v. Dwyer*, No. 98-5519 (S.D.N.Y.); *Tittle v. Enron*, No. 01-3913 (S.D. Tex.); and *Rankin v. Rots*, No. 02-CV-71045 (E.D. Mich.).

12. Ryan T. Jenny is a partner at Bailey & Glasser who joined the firm in 2015 after more than fifteen years representing ERISA defendants while at large corporate firms in the District of Columbia and New York. Mr. Jenny has represented plaintiffs in many fiduciary duty actions involving employee benefit plan investments in employer stock, such as *Brundle v. Wilmington Trust Ret. & Int'l Servs. Co.*, 241 F. Supp. 3d 610 (E.D. Va. 2017) ($29.7 million trial judgment); *Allen v. GreatBanc Trust Co.*, 835 F.3d 670 (7th Cir. 2016) (reversing trial court ruling on motion to dismiss in an ESOP class action; lawsuit settled for $2.3 million); *Jessop v. Larsen*, No. 14-cv-00916 (D. Utah) ($19.8 million settlement secured for ESOP plan participants in 2017); *Swain v. Wilmington Trust, N.A.*, No. 17-071-RGA-MPT (D. Del.) ($5 million settlement); *Casey v. Reliance Trust Co.*, 18-cv-00424-ALM-CMC (E.D. Tex.) ($6.25 million settlement for ESOP plan participants); *Choate v. Wilmington Trust, N.A.*, 17-cv-250-RGA (D. Del.) ($19.5 million settlement); *Blackwell v. Bankers Trust Co. of South Dakot*a, No. 18-cv-141-KHJ-FKB (S.D. Miss.) ($5 million settlement; Fink v. Wilmington Trust, N.A., No. 19-cv-1193-CFC (D. Del.) ($5,5 million settlement); *Nistra v. Reliance Trust Co.*, No. 16 C 4773 (N.D. Ill.) ($13.36 million settlement); *Crowley v. Corning, Inc.*, 02- CV-6172 (W.D.N.Y.); *Holtzscher v. Dynegy, Inc.*, No. H-05-3293 (S.D. Tex.); *Crocker v. KV Pharm. Co.*, No. 09-cv-198 (E.D.

Mo.); *In re BP p.l.c. ERISA Litig.*, MDL No. 10-md-2185 (S.D. Tex.); and *Knight v. Lavine*, 12-CV-611 (E.D. Va.), as well as in actions involving various other ERISA fee, funding and fiduciary issues, such as *Alexander- Jones v. Wal-Mart Stores, Inc.*, No. C 10-03005 (N.D. Cal.); *In re Honda of Am. Mfg.*, No. 08- cv-1059 (S.D. Ohio); and *Sara Lee Corp. v. American Bakers Ass'n Ret. Plan*, No. 106CV00819 (D.D.C.). Mr. Jenny is a member of the firm's ERISA team and works on all of our ESOP cases.

13. Patrick Muench is a partner with Bailey & Glasser LLP who has specialized in complex litigation since 2009. Mr. Muench has served as counsel on ERISA cases involving breach of fiduciary claims, including *Brundle v. Wilmington Trust Ret. & Int'l Servs. Co.*, 241 F. Supp. 3d 610 (E.D. Va. 2017) ($29.7 million trial judgment); *Allen v. GreatBanc Trust Co.*, 835 F.3d 670 (7th Cir. 2016) (reversing trial court ruling on motion to dismiss in an ESOP class action; lawsuit settled for $2.3 million); *Jessop v. Larsen*, No. 14-cv-00916 (D. Utah) ($19.8 million settlement secured for ESOP plan participants in 2017); *Swain v. Wilmington Trust, N.A.*, No. 17-071-RGA-MPT (D. Del.) ($5 million settlement); *Casey v. Reliance Trust Co.*, 18-cv-00424-ALM-CMC (E.D. Tex.) ($6.25 million settlement for ESOP plan participants); *Choate v. Wilmington Trust, N.A.*, 17-cv-250-RGA (D. Del.) ($19.5 million settlement); *Blackwell v. Bankers Trust Co. of South Dakot*a, No. 18-cv-141-KHJ-FKB (S.D. Miss.) ($5 million settlement; Fink v. Wilmington Trust, N.A., No. 19-cv-1193-CFC (D. Del.) ($5,5 million settlement); and *Nistra v. Reliance Trust Co.*, No. 16 C 4773 (N.D. Ill.) ($13.36 million settlement). Mr. Muench is a member of the firm's ERISA team and works on all of our ESOP cases.

14. I believe that the Settlement Agreement between the parties is fair and reasonable and in the best interests of the Settlement Class. The reasons for this belief are set forth in the Motion for Preliminary Approval.

15. Plaintiffs filed the Complaint on February 28, 2020. My firm and co-counsel Izard Kindall & Raabe, LLP have vigorously litigated this case since the lawsuit began.

16. Co-counsel and Bailey & Glasser have been responsible for, among other things: investigating the case; drafting and filing the complaint; opposing Defendants' motions to dismiss or, in the alternative, proceed on the administrative record; meeting and conferring with defense counsel regarding case management; reviewing the documents produced in the claims exhaustion process; analyzing valuation issues and the ESOP's potential recovery; consulting with a valuation expert and due diligence expert who prepared preliminary reports and analysis regarding the ESOP Transaction valuation and processes, including an estimate that the Plan overpaid by approximately $12.5 million; consulting with Plaintiffs; and attending a full-day mediation and negotiating the terms contained in the Settlement Agreement.

17. Before commencing the mediation process, Class Counsel conducted an extensive investigation and the litigation was sufficiently advanced, such that counsel had sufficient information about the nature and extent of the challenged practices, and the merits of the legal claims and factual allegations. Through the claims exhaustion process, Class Counsel received and reviewed the Plan and Trust Documents; typed notes from an onsite due diligence meeting attended by Horizon; financial statements; iterations of the transaction term sheet that was negotiated between the parties to the ESOP Transaction; a memorandum prepared by Horizon's legal advisor; a draft valuation report from Horizon's financial advisor; Horizon's draft committee minutes approving the ESOP Transaction; final transaction documents; and position papers and reports prepared by Defendants' counsel and experts retained by Defendants.

18. The Parties conducted extensive arm's-length negotiations with the assistance of a highly experienced and well-respected neutral mediator, Robert A. Meyer, Esq. of JAMS. The Parties

held a full-day remote mediation with Mr. Meyer on March 21, 2022 and provided comprehensive mediation reports and made presentations to him that focused all sides on the key issues. At the end of day, the Parties agreed to the terms contained in the Settlement Agreement, attached hereto as Exhibit B.

19. Bailey & Glasser LLP and Izard Kindall & Raabe, LLP have represented several other plaintiffs in lawsuits against institutional ESOP trustees in the past, and therefore are very familiar with their work-product and record-keeping. This was helpful in analyzing potential recoveries. Likewise, Defendants' counsel is also very experienced in ESOP litigation and therefore counsel on both sides were familiar with the key issues and categories of documents necessary to evaluate Plaintiffs' claims and the defenses. Bailey & Glasser and Horizon Trust's Counsel have litigated at least eight other ESOP actions against each other in the last five years presenting similar ERISA issues.

20. McKinney's Counsel informed Plaintiffs that there are approximately 309 participants in the Plan who vested at some point between the formation of the Plan and December 31, 2020 and 245 vested participants with accounts in the Plan. Using that number, on average, each Class Member's benefit before the deduction of Court approved fees, costs, and Service Awards, will be approximately $6,796.

21. Class Counsel's depth of experience with ESOP and ERISA claims and class action litigation allowed Class Counsel to pursue the case and negotiate a settlement that capitalized on the claims' strengths while taking into account the risks of continued litigation.

22. A true and correct copy of the proposed Settlement Administrator's, KCC, summary of experience is attached as Exhibit C.

23. A true and correct copy of the Declaration of Danielle Threadford is attached as Exhibit D.

24. A true and correct copy of the Declaration of William Holmes is attached as Exhibit E.

I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed at Washington, D.C. this 17th day of May 2022.


By: */s/ Gregory Y. Porter*

GREGORY Y. PORTER

# EXHIBIT A

**BAILEY GLASSER LLP**

## ERISA, Employee Benefits & Trust Litigation

**Bailey Glasser handles class actions and high stakes individual actions involving employee pension benefits—including employee stock ownership plans (ESOPs), 401(k) plans and other defined contribution or individual account plans, and traditional defined benefit pension plans—and trust litigation involving family and other private trusts. We litigate these actions throughout the United States under the federal employee benefits law known as the Employee Retirement Income Security Act (ERISA) and under state trust law.**

Our clients include employees, former employees, retirees, and trust beneficiaries, as well as businesses and other professionals victimized by fraud, investment mismanagement, hidden and undisclosed fees, and illegal benefit cutbacks. We have recovered hundreds of millions of dollars for our clients in litigation claiming breaches of fiduciary duty, prohibited transactions, and other violations of the law. Our fiduciary duty practice also includes claims in the growing area of ERISA welfare benefit plan litigation, such as claims challenging systematic denials of treatments under medical plans under policies that violate ERISA.

## ESOPs

Bailey Glasser focuses on ESOPs that invest in private companies. Federal pension law provides generous tax subsidies to shareholders and companies that sell their stock to an ESOP. In exchange for these tax benefits, federal law requires that an independent trustee decides whether the stock transaction should happen. Independent trustees are supposed to act like a hypothetical prudent buyer in the market for a private company. Unfortunately, in our experience, these trustees do not conduct adequate due diligence, do not have a sophisticated understanding of corporate transactions, and are more interested in collecting trustee fees paid by the employer than doing their job.

The US Department of Labor has long identified ESOPs as an enforcement priority due to rampant abuses by plan service providers, and the firm has worked closely with the DOL on lawsuits. Bailey Glasser's ESOP practice strives to obtain real money for our clients and create real changes in the industry.

## Multi-Trust Class Actions

Bailey Glasser's ERISA team has deep experience with complex, multi-plan class actions involving esoteric trading practices and opaque financial products. We represented hundreds of retirement plans in class actions against major financial institutions engaged in conflicted and imprudent securities lending practices that cost the plans millions. In one such case, against Northern Trust Company in Chicago federal court, we recovered $36 million for our clients. We also successfully prosecuted a

**BAILEY GLASSER** LLP

complex, unlawful tax-fee against BNY Mellon on behalf of thousands of family trusts, ultimately recovering millions for our clients. Currently, we are prosecuting an ERISA class action against Intel Corp. involving poor performing hedge funds and private equity investments.

## 401(k) Plans

Bailey Glasser has a long history of representing employees and retirees harmed by hidden or excessive fees, or imprudent investments, in their 401(k) plans. Our experienced team understands the various ways financial-services companies can profit from workers' hard-earned retirement savings. We have successfully litigated at all levels, including the United States Supreme Court, recovered over $100 million on behalf of our clients, and provided meaningful improvements to retirement plans across the country.

## Pension Plans

Our team represents plan participants and beneficiaries in claiming the benefits that they were promised, and earned, under the written terms of their pension plans. In addition, plan sponsors are prohibited by law from amending qualified plans to decrease participants' "accrued benefits" and from eliminating or reducing certain "protected benefits." We have attorneys experienced in "anti-cutback rule" litigation. Bailey Glasser has recently been spearheading litigation alleging that actuarial assumptions used to determine optional forms of benefits or early retirement benefits are outdated. We are seeking losses to participants caused by use of outdated actuarial assumptions that cause benefits to be paid that are not actuarially equivalent to the annual monthly benefit (typically expressed as a single life annuity) payable at normal retirement age.

## Trust Litigation

We understand how trustees, money managers, and investment advisors operate, and know how to spot hidden fees and mismanagement. Bailey Glasser recently finalized a nationwide class action on behalf of private family trusts who were being charged hidden fees by a large bank.

## Health and Medical Plans

Our team members collectively have decades of experience in ERISA fiduciary duty litigation. We represent participants and beneficiaries in health care and medical plans to challenge systematic denials of treatments under policies that violate ERISA, and violations of mental health parity law.

**BAILEY GLASSER LLP**

## Experience Includes

### Making the Law

- Won a unanimous decision in the United States Supreme Court in *Sulyma v. Intel Corp*, a case brought on behalf of participants in Intel's 401(k) plan concerning alleged imprudent investments in several of the Plan's investment options. The Supreme Court decision set new standards for ERISA's statute of limitations.
- Won a $30 million trial judgment in *Brundle v. Wilmington Trust*, a case involving multiple breaches of duty by the trustee and complex valuation issues in an ESOP transaction; won a complete affirmance by the US Court of Appeals for the Fourth Circuit, establishing new law on ESOPs that has been cited nationwide.
- Obtained a precedent-setting decision by the US Court of Appeals for the Seventh Circuit in *Allen v. GreatBanc Trust Co.*, which established important pleading standards in ESOP cases.
- Obtained a groundbreaking order that ESOP-owned company's indemnification of ESOP trustee violated ERISA in *McMaken v. Chemonics*.

### ESOPs

- Won a $30 million trial judgment in *Brundle v. Wilmington Trust*, a case involving multiple breaches of duty by the trustee and complex valuation issues in an ESOP transaction; won a complete affirmance by the US Court of Appeals for the Fourth Circuit, establishing new law on ESOPs that has been cited nationwide.
- Settled an ESOP lawsuit for $19.5 million, in *Jessop v. Larsen*, working closely with the US Department of Labor; yielded an average class member recovery of over $30,000
- Recovered $19.5 million for ESOP participants just before trial. *Choate v. Wilmington Trust*
- Recovered $12 million for ESOP participants after one-week trial. *Nistra v. Reliance Trust*
- Recovered $6.25 million for ESOP participants. *Casey v. Reliance Trust*
- Recovered $5 million for ESOP participants even though plaintiffs had signed releases. *Fiorito v. Wilmington Trust*

### 401(k) Plans

- Recovered $17 million for plan participants from Neuberger Berman in case alleging imprudent investment in proprietary fund. *Bekker v. Neuberger*

**BAILEY GLASSER LLP**

- Settled a lawsuit against Franklin Templeton for $26 million where the plaintiffs alleged that Franklin Templeton stuffed its own employee 401(k) plan with Franklin Templeton mutual funds despite a conflict of interest. *Cryer v. Franklin*
- Settled a lawsuit against Fidelity Investments for $12 million where the plaintiffs alleged that Fidelity stuffed its own employee 401(k) plan with Fidelity mutual funds. *Bilewicz v. Fidelity*

**Multi-Trust Financial Class Actions**

- Settled a complex securities lending action for $36 million against Northern Trust on behalf of hundreds of retirement plans across the country. *Diebold v. Northern Trust*
- Obtained class certification of hundreds of retirement plans in complex securities lending that settled for $10 million. *Glass Dimensions v. State Street*
- Settled a multi-state class action against BNY Mellon for $10 million on behalf of hundreds of private family trusts who had been charged hidden fees. *Henderson v. BNY Mellon*
- Prosecuting multi-plan class action alleging imprudent investments in hedge funds and private equity that cost plans billions of dollars. Won groundbreaking case in Supreme Court that allowed case to proceed. *Sulyma v. Intel Corp.*

**BAILEY GLASSER** LLP



Partner
**Gregory Y. Porter**

Washington, DC
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
T: 202.548.7790 F: 202.463.2103
gporter@baileyglasser.com

---

**"This is a wonderful result for your clients and for everyone, and I appreciate it. It is really wonderful when a judge has such fine lawyers in front of her. Throughout this case …the quality of the work for all the parties has really been extraordinarily good…Congratulations to all of you for the fine work."**

*Diebold v. Northern Trust Investments (recovered $36 million)*

Greg Porter has extensive trial and class action experience in complex pension, 401(k) plan, and employee stock ownership plan (ESOPs) lawsuits in federal court. Greg has led the firm's ERISA and trust practice to major trial and appellate victories, including seminal decisions in the Seventh and Fourth Circuit Courts of Appeal and a $30 million trial judgment that broke new ground for ESOPs. With co-counsel, the firm's ERISA practice won a 9-0 decision in the Supreme Court, Intel Corp v. Sulyma, that established key statute of limitations rights for employees in ERISA cases.

Greg has recovered hundreds of millions of dollars on behalf of employees who lost retirement savings in 401(k) plans and ESOPs. He understands complex financial transactions, investments, and instruments.

Greg has also developed techniques for successfully investigating and prosecuting complex lawsuits involving business valuation, securities lending, hedge funds, and private equity. He is a skilled appellate advocate who has argued appeals in the Second, Fourth, Sixth and Eighth US Circuit Courts of Appeal.

## Government Service / Previous Employment

United States Army, Infantry Branch

Executive Director, National Organization for the Reform of Marijuana Laws (NORML)

**BAILEY GLASSER** LLP

**Practice Areas**

Appellate and Supreme Court Practice

Business Valuation

Cannabis Law

Class Actions

Commercial Litigation

COVID-19 Long-Term Disability

ERISA, Employee Benefits & Trust Litigation

Labor & Employment

**Education**

J.D., University of Southern California Gould *School of Law*, 1996, Order of the Coif, Articles Editor, *Southern California Law Review*, Paralyzed Veterans of America Scholarship - Teaching and Research Assistant

B.A., University of Massachusetts Amherst, 1989, Winning History Department Essay (1988)

**Admissions**

District of Columbia

New York

Virginia

US Supreme Court

US Court of Appeals for the First Circuit

US Court of Appeals for the Second Circuit

US Court of Appeals for the Third Circuit

US Court of Appeals for the Fourth Circuit

US Court of Appeals for the Fifth Circuit

US Court of Appeals for the Sixth Circuit

US Court of Appeals for the Seventh Circuit

US Court of Appeals for the Eighth Circuit

US Court of Appeals for the Ninth Circuit

US District Court, District of Columbia

US District Court, Central District of Illinois

US District Court, Northern District of Ohio

US District Court, Eastern District of Virginia

**BAILEY GLASSER** LLP

## Representative Matters

- Won a $30 million trial judgment in *Brundle v. Wilmington Trust*, a case involving multiple breaches of duty by the trustee and complex valuation issues in an ESOP transaction; won a complete affirmance by the US Court of Appeals for the Fourth Circuit, establishing new law on ESOPs that has been cited nationwide
- Represented Intel employees in *Sulyma v. Intel Corp*, a case claiming that retirement plan trustees lost substantial retirement savings by investing in hedge funds and private equity. In February 2020, the Supreme Court issued a unanimous decision in favor of our clients, the employees, on a key statute of limitations defense
- Obtained a precedent-setting decision by the US Court of Appeals for the Seventh Circuit in *Allen v. GreatBanc Trust Co.*, which established important pleading standards in ESOP cases
- Settled an ESOP lawsuit for $19.5 million, in *Jessop v. Larsen*, working closely with the US Department of Labor; yielded an average class member recovery of over $30,000
- Settled a complex securities lending action for $36 million against Northern Trust on behalf of hundreds of retirement plans across the country
- Settled a lawsuit against Franklin Templeton for $26 million where the plaintiffs alleged that Franklin Templeton stuffed its own employee 401(k) plan with Franklin Templeton mutual funds despite a conflict of interest
- Settled a lawsuit against Neuberger Berman for $17 million where the plaintiffs alleged that Neuberger pushed a low-performing and expensive proprietary mutual fund on its own employee 401(k) plan despite a conflict of interest
- Represents employees in multiple pension plan lawsuits claiming that employers used outdated mortality tables, some 50 years old, to improperly calculate pension benefits
- Represents employees in multiple ESOP lawsuits claiming that trustees caused employees to pay more than fair market value for employer stock
- Won a trial on behalf of the defendant in *Dupree v. Prudential Insurance Company*, where the plaintiffs alleged hundreds of millions of dollars in pension losses

## Community and Professional Activities

Employee Benefits Committee, American Bar Association's Labor and Employment Section, Member

# BAILEY GLASSER LLP



Partner
## Mark G. Boyko

Missouri
34 N. Gore Ave
Suite 102
Webster Groves, MO 63119
T: 314.863.5446 F: 304.342.1110
mboyko@baileyglasser.com

---

Mark Boyko practices primarily in the area of complex fiduciary breach and prohibited transaction litigation, representing clients in actions brought under the Employee Retirement Income Security Act of 1974 (ERISA). He has secured judgments and settlements in this area exceeding $500 million and handled successful appeals in federal circuit courts as well as the US Supreme Court.

Mark is a pioneer in ERISA class action litigation, representing workers and retirees in many of the earliest cases in his field. In these matters, Mark represents 401(k) plan participants alleging breach of fiduciary duties in order to hold employers and Wall Street accountable for the plans' investments and fees.

His practice also includes numerous private company ESOP cases in which he represents workers claiming that fiduciary trustees caused their employee stock ownership plans (ESOPs) to overpay corporate insiders for private company stock. Additionally, Mark represents pension plan participants in cases alleging that plans using decades-old mortality tables have unfairly reduced monthly benefits for married retirees.

Mark also handles matters related to the denial of long-term disability benefits for people impacted by COVID-19, including individuals who are immunocompromised or have other issues that impact their ability to be in-person at workplaces, or who have long-haul COVID.

Mark's practice additionally includes providing legal and strategic services to founders, startups, and small businesses from pre-conception through Series-A funding.

## Awards & Accolades

*Super Lawyers*, Missouri, "Rising Star," Class Action/Mass Torts, Employee Benefits, Business/Corporate, Personal Injury - General (2020)

**BAILEY GLASSER** LLP

**Practice Areas**

Appellate and Supreme Court Practice

Arbitration & Dispute Resolution

Business & Finance

COVID-19 Long-Term Disability

ERISA, Employee Benefits & Trust Litigation

Life Sciences

Private & Family Businesses

**Education**

LL.M., New York University School of Law, 2005

J.D., University of Missouri - School of Law, 2004

B.A., University of Illinois at Urbana–Champaign, 2001

**Admissions**

Missouri

Illinois

New York

**Representative Matters**

- Representing surgeon in federal case against Unum related to COVID-19 and the denial of long-term disability benefits under an ERISA long-term disability plan.
- Represents employees and 401(k) plan participants in litigation alleging employers used their own expensive proprietary investment products in the plans because of the benefit to the employer
- Represents retirees and defined benefit pension plan participants in litigation against employers such as American Airlines and Anheuser Busch concerning the actuarial calculations the plans use to calculate pension benefits
- Represents current and former employees in litigation alleging that the purchase or sale of privately held stock by an Employee Stock Ownership Plan (ESOP) was not at market prices and instead done to benefit the corporate founders or insiders
- Represents workers and retirees alleging their employer imprudently concentrated their 401(k) plan investments in single stocks or a small number of stocks
- Represents Embark Veterinary, Inc., a canine genetic testing company, on corporate matters from company origin

**BAILEY GLASSER LLP**

- Represents startups in diverse fields including medical monitoring and YouTube/entertainment

**Community and Professional Activities**

Director, Kirkwood R-VII School District

St. Louis County Economic Rescue Team

Board Member, Places for People (2009-2021)

Vice-Chair, Employee Benefits General Committee, American Bar Association's Torts, Trial, and Insurance Practice Section (2020-21)

Former professional soccer referee

**BAILEY GLASSER** `LLP`



Partner
**Patrick Muench**

Chicago, Illinois
318 W. Adams St.
Suite 1512
Chicago, IL 60606
T: 312.995.7143 F: 304.342.1110
pmuench@baileyglasser.com

---

Patrick Muench litigates complex commercial cases with emphasis on ERISA, antitrust, and oil and gas disputes. He handles all aspects of these matters from discovery through trial.

**Clerkships**

Law Clerk, Hon. Robert M. Dow Jr., US District Court for the Northern District of Illinois (2007 - 2009)

**Practice Areas**

Business Valuation
Commercial Litigation
Energy - Oil & Gas
ERISA, Employee Benefits & Trust Litigation

**Education**

J.D., University of Illinois College of Law, 2006*, cum laude,* Rickert Award for Excellence in Advocacy, Best Brief at 2006 National Environment Moot Court Competition
B.A., University of Texas at Austin, 2000

**Admissions**

Illinois
US Court of Appeals for the Fourth Circuit
US District Court, Northern District of Illinois

**BAILEY GLASSER** LLP

**Representative Matters**

- Won a $30 million trial judgment in *Brundle v. Wilmington Trust,* a case involving multiple breaches of duty by the trustee and complex valuation issues in an ESOP transaction; won a complete affirmance by the US Court of Appeals for the Fourth Circuit, establishing new law on ESOPs that has been cited nationwide
- Represented the FDIC in its capacity as receiver of Colonial Bank; case resolved favorably to the FDIC as part of a multi-case, multi-agency settlement for $16.65 billion, the largest single-company settlement in US history

**Community and Professional Activities**

Illinois State Bar Association

# BAILEY GLASSER LLP



Partner
**Ryan T. Jenny**

Washington, DC
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
T: 202.548.7785 F: 202.463.2103
rjenny@baileyglasser.com

---

Ryan T. Jenny practices primarily in the area of complex employee benefits litigation, representing clients in actions brought under the Employee Retirement Income Security Act of 1974 (ERISA). He has litigated a broad range of ERISA individual and class actions at both the trial and appellate levels, with a focus on fiduciary duties and prohibited transactions.

Ryan's litigation practice includes numerous private company ESOP cases in which he represents workers claiming that fiduciary trustees caused their employee stock ownership plans (ESOPs) to overpay for private company stock. Other representative ERISA cases have focused on claims involving excessive fees, publicly traded company employer stock investment options, medical plan coverage, misrepresentation and nondisclosure, discrimination and unlawful termination intended to interfere with benefits, and the termination of retiree health benefits. Ryan has also represented multiemployer plan trustees in actions arising under the Labor Management Relations Act (LMRA).

For 20 years in the District of Columbia and New York, Ryan has litigated and counseled in the areas of ERISA, the Affordable Care Act (ACA), the Health Insurance Portability and Accountability Act (HIPAA), the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), and other employment statutes and regulations. Ryan maintains a national litigation practice, and recently litigated cases in federal courts in Illinois, Texas, Delaware, Ohio, Mississippi, Virginia, and other states.

## Pro Bono Service

For seven years Ryan managed a team that provided pro bono representation to Holocaust survivors claiming benefits under Germany's Social Security Pension Program and German Ghetto Work Payment Program.

## Government Service / Previous Employment

Law Clerk, American Psychological Association, Legal and Regulatory Affairs Department

**BAILEY GLASSER** LLP

**Practice Areas**

Appellate and Supreme Court Practice

ERISA, Employee Benefits & Trust Litigation

**Education**

J.D., The George Washington University Law School, 1999

B.A., The University of Chicago, 1995

**Admissions**

District of Columbia

New York

US Court of Appeals for the Fourth Circuit

US Court of Appeals for the Fifth Circuit

US Court of Appeals for the Seventh Circuit

US Court of Appeals for the Eighth Circuit

US District Court, District of Columbia

US District Court, Western District of New York

US District Court, Southern District of New York

US District Court, Northern District of Illinois

US District Court, Central District of Illinois

US District Court, District of Colorado

**Representative Matters**

- Achieved a $30 million trial judgment in *Brundle v. Wilmington Trust*, a case involving breaches of ERISA duties by an ESOP trustee in a stock purchase transaction; affirmed on appeal by the US Court of Appeals for the Fourth Circuit, establishing new law on ESOPs

- Established important complaint pleading standards in ESOP cases in decision by the US Court of Appeals for the Seventh Circuit, in *Allen v. GreatBanc Trust Co.*

- Precedent-setting decision in *Crowley v. Corning*, one of the foundational decisions in the area of ERISA employer stock litigation

**BAILEY GLASSER** LLP



Attorney
**Laura Babiak**

Charleston, WV
209 Capitol Street
Charleston, WV 25301
T: 304.345.6555 F: 304.342.1110
lbabiak@baileyglasser.com

---

Laura Babiak represents clients in complex pension, 401(k) plan, and employee stock ownership plan matters. Before joining Bailey Glasser, Laura worked as a student clinician in West Virginia University College of Law's United States Supreme Court Clinic, representing clients on appeals before the US Court of Appeals for the Fourth Circuit and the US Supreme Court.

Laura also handles matters related to the denial of long-term disability benefits for people impacted by COVID-19, including individuals who are immunocompromised or have other issues that impact their ability to be in-person at workplaces, or who have long-haul COVID.

**Clerkships**

Law Clerk, Honorable John T. Copenhaver, Jr., US District Court for the Southern District of West Virginia (2019-2020)

**Practice Areas**

COVID-19 Long-Term Disability
ERISA, Employee Benefits & Trust Litigation

**Education**

J.D., West Virginia University College of Law, 2019, Order of the Coif
B.S., West Virginia University, 2016, summa cum laude

**Admissions**

West Virginia
US District Court, Southern District of West Virginia

**BAILEY GLASSER LLP**

**Representative Matters**

- Representing surgeon in federal case against Unum related to COVID-19 and the denial of long-term disability benefits under an ERISA long-term disability plan

**BAILEY GLASSER** LLP

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **DANIELLE THREADFORD and WILLIAM HOLMES, on behalf of the McKinney Communications Corporation Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,** | |
| **Plaintiffs,** | **Case No. 2:20-cv-750-RDP** |
| **v.** | |
| **HORIZON TRUST AND INVESTMENT MANAGEMENT, N.A., RODDY McKINNEY, and JANICE McKINNEY,** | |
| **Defendants.** | |

**CLASS ACTION SETTLEMENT AGREEMENT**

This Class Action Settlement Agreement ("Settlement Agreement") is entered into between Plaintiffs Danielle Threadford and William Holmes ("Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), Defendant Horizon Trust ("Horizon Trust"),[1] Defendants Roddy Lee McKinney, Sr. and Janice E. McKinney ("McKinney Defendants"[2] and, together with Horizon Trust, "Defendants"), and McKinney Communications Corporation ("McKinney"). Plaintiffs, Defendants, and McKinney are collectively are referred to as the "Parties." Defendants and McKinney are collectively referred to as the "Settling Parties."

---

[1]  "Horizon Trust" is used here as shorthand for Horizon Bank, d/b/a Horizon Trust & Investment Management.  Plaintiffs named as a defendant "Horizon Trust and Investment Management, N.A.," which does not exist.

[2]  The term "McKinney Defendants" also includes, R. Lee McKinney, II, Daniel L. McKinney, the Roddy Lee McKinney, II Trust, dated December 26, 2012, and the Daniel Lee McKinney Trust dated December 26, 2012.

## RECITALS

WHEREAS, prior to October 31, 2016, McKinney was a privately held company whose shareholders included the McKinney Defendants;

WHEREAS, on or about September 2, 2016, McKinney engaged Horizon Trust to serve as the independent trustee of the McKinney Communications Corporation Employee Stock Ownership Plan ("ESOP") for the purpose of determining whether the ESOP should purchase 100 percent of McKinney's stock;

WHEREAS, Horizon Trust approved the purchase by the ESOP of 100 percent of McKinney's common stock for $65,483,225, with the purchase financed by a $20,169,775 internal loan, with a 25-year term and bearing interest at the rate of 1.95 percent, from McKinney to the ESOP, and a $45,313,450 external loan, with a 25-year term and bearing interest at the rate of 12.5 percent from the McKinney Defendants and the other holders of McKinney stock to the ESOP (the "Initial Transaction");

WHEREAS, the Initial Transaction closed on October 31, 2016 (the "Closing Date");

WHEREAS, following the Initial Transaction and on the Closing Date, McKinney agreed to assume the obligations of the ESOP through a $65,483,225 refinanced internal loan, with a 25-year term and bearing interest at the rate of 1.95%, and a $45,313,450 refinanced external loan, with a 10-year term and bearing interest at the rate of 12.5% (the "Refinancing Transaction," and, collectively, with the Initial Transaction, the "ESOP Transaction");

WHEREAS, after the Closing Date, shares of McKinney's stock that had been purchased by the ESOP were periodically allocated to ESOP participants' accounts following the payment by McKinney of contributions to the ESOP and the ESOP's corresponding payments back to McKinney to satisfy the debt payment obligations under the internal loan;

WHEREAS, on February 28, 2020, Plaintiffs, on behalf of a putative class of participants and beneficiaries in the McKinney ESOP, filed a complaint against Horizon Trust and the McKinney Defendants in the United States District Court for the Northern District of Indiana, Case No. 3:20-cv-00188141;

WHEREAS, on May 29, 2020, the case was transferred to the United States District Court for the Northern District of Alabama, Case No. 2:20-cv-00750 (the "Lawsuit").

WHEREAS, Plaintiffs claimed that Horizon Trust breached its fiduciary duties and engaged in "prohibited transactions" under the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with the ESOP Transaction by causing the ESOP to pay more than fair market value for McKinney's stock;

WHEREAS, Plaintiffs claimed that the McKinney Defendants violated ERISA by knowingly participating in alleged prohibited transactions referenced above;

WHEREAS, on October 7, 2020, the Court dismissed the Lawsuit without prejudice subject to any party's right to reinstate the Lawsuit following exhaustion of Plaintiffs' administrative remedies under the ESOP;

WHEREAS, on October 20, 2020, Plaintiffs submitted their claims to the McKinney Communications Corporation ESOP Committee ("Committee") in accordance with the ESOP's administrative claims procedures;

WHEREAS, the Committee denied Plaintiffs' claims on January 18, 2021 and upheld its denial of Plaintiffs' claims in response to Plaintiffs' appeal on July 16, 2021;

WHEREAS, after the Lawsuit was reinstated, on October 29, 2021, the Court denied Defendants' motions to dismiss Plaintiffs' complaint and Defendants' motion to set a schedule for filing the administrative record and motions for summary judgment;

WHEREAS, Defendants filed answers to Plaintiffs' complaint on December 10, 2021, denying all liability and asserting affirmative defenses;

WHEREAS, Defendants continue to deny all material allegations in the complaint and, more generally, deny any wrongdoing or liability with respect to the ESOP or the ESOP Transaction.  Horizon Trust maintains that, at all relevant times, it acted prudently and in the best interests of the ESOP participants with respect to the ESOP, and Horizon Trust denies that it violated any laws with respect to the ESOP and the ESOP Transaction.  The McKinney Defendants maintain that as selling shareholders their shares were sold to the ESOP for fair market value and deny that they violated any laws with respect to the ESOP and the ESOP transaction.  Further, all Defendants maintain that their actions have complied at all times with all applicable laws; and

WHEREAS, on March 21, 2022, the Parties, through their counsel, participated in arm's length and good faith settlement discussions with the assistance of JAMS Mediator Robert A. Meyer, Esq.  As a result of the mediation, the Parties, under the guidance of Mr. Meyer, reached an agreement in principle regarding a settlement of the Lawsuit.

NOW, THEREFORE, it is agreed by the Parties, in consideration of the promises, covenants, and agreements herein stated, and for other good and valuable consideration, that the Lawsuit and Released Claims (as defined herein) shall be settled and dismissed on the merits and with prejudice in accordance with the following terms and conditions, all subject to the approval by the Court.

1.     **Additional Definitions.**

1.1     "Class Member" shall mean a member of the Settlement Class.

1.2     "Class Notice" shall mean notice of the Settlement to the Settlement Class in a form and substance substantially similar to Exhibit A to the form of Preliminary Approval Order

attached hereto as Exhibit 1-A, to be provided pursuant to the Preliminary Approval Order in the manner and form approved by the Court and in compliance with Rule 23 of the Federal Rules of Civil Procedure.

1.3.   "Court" shall mean the United States District Court for the Northern District of Alabama.

1.4   "ESOP Loan Reduction" shall mean a reduction by $2 million of the current principal amount owed by the ESOP to McKinney under the October 31, 2016 Refinanced (Internal) ESOP Loan and Pledge Agreement.  The ESOP Loan Reduction will not result in the release of any shares of McKinney stock to the ESOP participants and will not require McKinney to make any contributions to the ESOP trust.

1.5   "Fairness Hearing" shall mean the hearing at which the Court will consider whether the Settlement should be approved pursuant to Rule 23 of the Federal Rules of Civil Procedure.

1.6   "Final" shall have the same meaning ascribed to "final" under 28 U.S.C. § 1291, and: (i) the time expired to file an appeal, motion for re-argument, motion for rehearing, petition for a writ of certiorari or other writ ("Appeal Proceeding") with respect to a judicial ruling or order with no such Appeal Proceeding having been filed; or (ii) if an Appeal Proceeding has been filed with respect to such judicial ruling or order, (a) the judicial ruling or order has been affirmed without material modification and with no further right of review, or (b) such Appeal Proceeding has been denied or dismissed with no further right of review.

1.7   "Final Order" shall mean a final judgment and order of dismissal substantially similar to Exhibit 2 attached hereto which is to be entered by the Court finally approving the terms of this Settlement Agreement and dismissing the Lawsuit with prejudice.

1.8   "Independent Fiduciary" shall mean Jim Carroll of Carroll Services LLC.

1.9     "Plaintiffs' Counsel" shall mean Bailey & Glasser, LLP and Izard, Kindall & Raabe, LLP.

1.10     "Preliminary Approval Order" shall mean the order preliminarily approving the Settlement substantially in the form annexed as Exhibit 1 hereto.

1.11     "Seller Notes" shall mean that certain Refinanced (External) Company Note issued to Janice L. McKinney, dated October 31, 2016, and that certain Amended and Restated Refinanced (External) Company Note (D Note) issued to Roddy Lee McKinney, Sr., dated December 31, 2020.

1.12     "Seller Note Reduction" shall mean a reduction of the Seller Notes of Roddy and Janice McKinney in the total amount of $2 million to be apportioned as follows: that certain Refinanced (External) Company Note issued to Janice L. McKinney, dated October 31, 2016, in the current principal amount of $2,486,377 to be reduced by $961,279 to $1,525,098; and that certain Amended and Restated Refinanced (External) Company Note (D Note) issued to Roddy Lee McKinney, Sr., dated December 31, 2020, in the current principal amount of $1,038,721 to be reduced to $0.

1.13     "Settlement" shall mean the settlement to be consummated under this Settlement Agreement.

1.14     "Settlement Administrator" shall mean KCC, LLC.

1.15     "Settlement Amount" shall mean $2,100,000.

1.16     "Settlement Class" shall mean all persons who, at any time, were vested participants in the ESOP prior to January 1, 2022 and the beneficiaries of such participants. Excluded from the Settlement Class are the McKinney Defendants and their immediate families, the directors of McKinney, and legal representatives, successors, and assigns of any such excluded persons.

1.17    "Service Awards" shall mean the $10,000 to be requested for each of Danielle Threadford and William Holmes in recognition of their service as class representatives.

**2.    Conditions to Finality of Settlement.**

The Settlement shall be unconditional when each of the following conditions in Sections 2.1 through 2.8 has been satisfied.  The Parties will use reasonable good faith efforts to cause each of the conditions to occur within the times indicated.

2.1.  Condition #1:  Class Certification for Purposes of Settlement.

The Court shall certify the Settlement Class as a non-opt-out class for settlement purposes pursuant to Rule 23(a)(l)-(4), 23(b)(1) and/or (2), and 23(e) of the Federal Rules of Civil Procedure, with Plaintiffs as the named class representatives and Plaintiffs' Counsel as counsel for Plaintiffs and the Settlement Class.  The Parties agree to certification of the Settlement Class for settlement purposes only, and Defendants agree not to challenge certification of the Settlement Class for settlement purposes.  The Parties further agree that, if the Settlement does not become unconditional, then no Settlement Class will be deemed to have been certified by, or as a result of, this Settlement Agreement, and the Lawsuit and the claims asserted therein will revert to their status as of the day immediately before March 21, 2022.  In such event, Defendants will not be deemed to have consented to the certification of any class, and the agreements and stipulations in this Settlement Agreement and its Exhibits concerning class definition, class period, and class certification shall not be used in any way to support any class definition, any class period, any class certification, or for any other purpose, and Defendants will retain all rights to oppose class certification.

2.2.  Condition #2: Court Approval.

The Settlement shall have been approved by the Court in accordance with the following steps:

7

2.2.1.  Motion for Preliminary Approval of Settlement and of Notices.

On or before May 10, 2022, Plaintiffs will file a motion ("Preliminary Approval Motion") with the Court for entry of the Preliminary Approval Order in the form annexed as Exhibit 1 hereto.  Plaintiffs shall give Defendants at least five (5) business days to review the Preliminary Approval Motion before filing.  Defendants may, but shall not be required to, submit papers in connection with the Preliminary Approval Motion.

2.2.2.  Service of Notice under the Class Action Fairness Act.

Defendants shall prepare and serve the notices required by the Class Action Fairness Act of 2005, PL 109-2 (2005) ("CAFA"), as specified by 28 U.S.C. § 1715, within ten (10) days after the Settlement Agreement is filed with the Court.

2.2.3.  Preliminary Approval Order; Issuance of Class Notice.

The Court shall issue the Preliminary Approval Order, substantially in the form annexed as Exhibit 1 hereto.  Subject to the requirements of the Preliminary Approval Order, the Settlement Administrator shall cause the Class Notice to be disseminated to the Class Members by first-class mail and shall post the Class Notice on a website (along with other key court documents) for the Settlement Class within thirty (30) days after the Preliminary Approval Order or by July 15, 2022, whichever is later.  For returned mail, the Settlement Administrator will engage in standardized processes to identify and locate Class Members.  Plaintiffs and Defendants will seek to set the Fairness Hearing for a date at least ninety (90) days after the mailing of the Class Notice to the Settlement Class and at least ninety (90) days after the date of mailing of notice under CAFA.  McKinney shall provide, or cause to be provided, the names and last known addresses of the Class Members, and (1) the total number of vested shares of McKinney stock allocated at any time to the Class Member's ESOP account prior to January 1, 2022, and (2) the total number of shares distributed to the Class Member prior to January 1,

2022.  The information in the preceding sentence shall be provided to the Settlement Administrator to the extent available with reasonable effort in electronic format, at least fifteen (15) days prior to the deadline for mailing the Class Notice.[3]  Any additional, reasonable costs associated with the Class Notice and Settlement that are incurred by McKinney from third parties (such as the ESOP's third-party administrator) associated with the identification of Class Members, the determination of the number of vested shares or the dissemination of the Class Notice shall be paid from the Settlement Fund, but in no event shall such expenses include any ESOP trustee fees or legal fees incurred by McKinney.

Subject to modification by the Court, the Preliminary Approval Order shall provide that any objections to any aspect of the Settlement Agreement shall be heard, and any papers and documents submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been timely filed with the Court and sent to Plaintiffs' Counsel and Defendants' Counsel.  To be timely, the objection and any supporting papers or documents must be filed with the Court at least twenty-one (21) days prior to the Fairness Hearing (or by such other deadline as determined by the Court), and must be sent to Plaintiffs' Counsel and Defendants' Counsel so that they are received at least fifteen (15) days before the Fairness Hearing (or by such other deadline as determined by the Court).  Any person wishing to speak at the Fairness Hearing shall file with the Court, and serve on Plaintiffs' Counsel and Defendants' Counsel, a notice of intent to appear at least twenty-one (21) days prior to the Fairness Hearing (or by such other deadline as determined by the Court).

2.2.4.  Motion for Final Approval of Settlement.

---

[3] The Parties acknowledge that any information provided by McKinney for this purpose shall be treated as "Confidential Information" under the Court's Protective Order (Dkt. 108).  Plaintiffs expressly acknowledge that the information may be used solely to deliver the Class Notice.

Plaintiffs will file a motion seeking final approval of the Settlement (the "Final Approval Motion") with the Court no later than forty-five (45) days before the Fairness Hearing.  The language of the Final Approval Motion shall be subject to the review and input of Defendants, and Plaintiffs shall give Defendants at least five (5) business days to review the Final Approval Motion before filing.  Defendants may, but shall not be required to, submit papers in connection with the Final Approval Motion.

2.2.5. The Fairness Hearing.

At or after the Fairness Hearing, the Court will determine: (i) whether to enter the Final Order approving the Settlement and dismissing the Lawsuit; (ii) what attorneys' fees and expenses should be granted to Plaintiffs' Counsel; and (iii) what, if any, Service Awards should be awarded to the Plaintiffs.

2.2.6.  Entry of Final Order.

The Court shall have entered the Final Order.

2.3.  Condition #3: Independent Fiduciary Approval.

The Independent Fiduciary shall have the following responsibilities, including whether to approve and authorize the settlement of Released Claims on behalf of the ESOP:

2.3.1 The Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39") in making its determination.

2.3.2 The Independent Fiduciary shall notify McKinney and Defendants of its determination in writing, which notification shall be delivered no later than thirty (30) calendar days before the Fairness Hearing.

2.3.3 Fees and expenses up to $25,000 that are associated with the Independent Fiduciary's determination shall be paid by McKinney.  Fees and expenses in excess of $25,000 shall be paid from the Settlement Amount.

2.3.4. Counsel for Defendants, Counsel for McKinney, and Plaintiffs' Counsel shall respond to reasonable requests by the Independent Fiduciary for information so that the Independent Fiduciary can review and evaluate the Settlement.

2.3.5 Within ten (10) calendar days of receipt of the written determination by the Independent Fiduciary, Defendants shall notify Plaintiffs' Counsel in writing of the Independent Fiduciary's determination.

2.4.  Condition #4: Funding of Settlement Amount.

The Settlement Amount shall have been deposited into the Settlement Fund Account in accordance with Sections 7.2 and 7.3.

2.5.  Condition #5: Seller Note Reduction.

The McKinney Defendants shall have effectuated the Seller Note Reduction in accordance with Sections 1.12 and 7.5.

2.6.  Condition #6: ESOP Loan Reduction.

McKinney shall have effectuated the ESOP Loan Reduction in accordance with Sections 1.4 and 7.6.

2.7.  Condition #7: Finality of Final Order.

The Final Order has become Final.

2.8.  Condition #8: No Other Actions Are Filed.

Prior to the Court's Fairness Hearing, the United States Department of Labor or a private party plaintiff does not file a class or individual action that raises comparable claims against the Releasees to the claims asserted in the Lawsuit.

11

2.9.  If Plaintiffs and Defendants disagree as to whether each and every condition set forth in Section 2 herein has been satisfied or waived, they shall promptly confer in good faith and, if unable to promptly resolve their differences, shall seek assistance resolving their disputes from the Mediator, Robert Meyer.

**3.**    **Releases.**

3.1     Releases by Plaintiffs and the Settlement Class.

Effective upon the entry of the Final Order, Plaintiffs and the Settlement Class on behalf of themselves, their beneficiaries, heirs, executors, representatives, and assigns, absolutely and unconditionally release and forever discharge Horizon Trust, McKinney, the McKinney Defendants, R. Lee McKinney, II, Daniel L. McKinney, the Roddy Lee McKinney, II Trust, dated December 26, 2012, and the Daniel Lee McKinney Trust dated December 26, 2012, any other selling shareholders to the ESOP, any successor trustee to the ESOP (including GreatBanc Trust Company), the named and functional fiduciaries of the McKinney ESOP, the McKinney Communications Corporation ESOP Committee (including its present and former members), current or former shareholders, officers, members, managers, directors, and trustees of Horizon Trust, McKinney, and/or the McKinney ESOP and each of their respective parent companies, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, relations, representatives, assigns, insurers and reinsurers (collectively, "Releasees"), from all Released Claims, as defined in Section 3.2.  Notwithstanding any other provision hereof, the Releases set forth in Section 3 will remain in effect during the pendency of any Appeal Proceeding of the Final Order.  Only if any Appeal Proceeding results in a reversal or vacation of the Final Order will the Releases become void and lose their effect, at which time the provisions of Section 10 will become effective.

3.2     Released Claims.

The Released Claims shall include any and all claims of any nature whatsoever (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification, or any other type or nature of legal or equitable relief), whether against Releasees in their capacity as individuals, entities, or in their capacities as fiduciaries, whether known or unknown, in law or equity, which were or could have been asserted in the Lawsuit  that relate to or arise from the facts and claims alleged in the Lawsuit (the "Released Claims"). The Released Claims do not include any individual ESOP participant's or beneficiary's claim for benefits under Section 502(a)(1)(B) of ERISA based only on errors unrelated to the allegations in the Lawsuit regarding that participant's salary, age, or years of service. In the event that any court with original or appellate jurisdiction over the Lawsuit issues a final determination that any portion of Section 3 herein is not enforceable, the Parties will jointly modify Section 3 herein to conform with such determination, and in any event portions of Section 3 herein that are enforceable shall remain enforceable.

Plaintiffs hereby expressly waive, on their own behalf and on behalf of all members of the Settlement Class and the ESOP, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction. Section 1542 reads in pertinent part:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

3.3     Indemnification Releases.

3.3.1.     Horizon Trust.  Upon the payments of the amounts specified in Sections 7.2 and 7.3, Horizon Trust shall completely remise, release, and forever discharge McKinney, its past and current directors, officers, members, managers, employees, subsidiaries, affiliates, shareholders, predecessors, successors, assigns, beneficiaries, trustees, attorneys, agents, or advisors (for purposes of this Section 3.3.1, the "Indemnifying Party Releasees"), of and from any and all causes of action, claims, debts, demands, damages, and attorneys' fees and expenses, known or unknown, accrued or unaccrued, contingent or not contingent, of every nature and kind, both at law and equity, whether federal, state, or common law, that Horizon Trust had, has, or might have against the Indemnifying Party Releasees relating to the Lawsuit, except any claims arising out of the breach of this Settlement Agreement (for purposes of this Section 3.3.1, the "Indemnifying Party Release").  This Indemnifying Party Release shall include a release of McKinney's indemnification obligations with respect to the Lawsuit under the September 2, 2016 Trustee Engagement Agreement between McKinney and Horizon Trust, the McKinney Communications Corporation Employee Stock Ownership Trust dated January 1, 2016, and the ESOP's plan document, as well as any and all other indemnification obligations of McKinney with respect to the Lawsuit, including, but not limited to, any indemnification obligations based on any contract, statute, common law, or any other legal authority (collectively, for purposes of this Section 3.3.1, the "Indemnification Provisions"), and no further fees or costs shall be reimbursed to Horizon Trust, except as provided in this Section 3.3.1.  The Indemnifying Party Release does not release McKinney's indemnification obligations under the Indemnification Provisions with respect to claims related to the ESOP Transaction that are subsequently asserted against Horizon Trust or McKinney in an action or proceeding other than the Lawsuit.

14

McKinney hereby completely remises, releases, and forever discharges Horizon Trust, its past and current directors, officers, members, managers, employees, subsidiaries, affiliates, shareholders, predecessors, successors, assigns, beneficiaries, trustees, attorneys, agents, or advisors (for purposes of this Section 3.3.1, the "Horizon Trust Releasees"), of and from any and all causes of action, claims, debts, demands, damages, and attorneys' fees and expenses, known or unknown, accrued or unaccrued, contingent or not contingent, of every nature and kind, both at law and equity, whether federal, state, or common law, that McKinney had, has, or might have against the Horizon Trust Releasees relating to the Lawsuit, except any claims arising out of the breach of this Settlement Agreement (for purposes of this Section 3.3.1, the "Horizon Trust Release").  The Horizon Trust Release does not release any claims or defenses that McKinney may have related to the ESOP Transaction that are subsequently asserted against Horizon Trust or McKinney in an action or proceeding other than the Lawsuit.

If for any reason the Court enters an order (i) denying approval of the Settlement Agreement, or (ii) setting a new trial date (each a "Triggering Order"), McKinney's indemnification obligations under the Indemnification Provisions between McKinney and Horizon Trust shall resume.  The resumed indemnification obligations shall apply only to fees, expenses, and costs incurred after the occurrence of a Triggering Order, and shall continue until (1) a court issues an order finally approving a settlement of the claims against Horizon Trust in the Lawsuit, (2) there is a dismissal of all claims in the Lawsuit against Horizon Trust with prejudice, or (3) there is a judgment by a court following trial from which all rights of appeal have either lapsed or been exhausted.

    3.3.2.  McKinney Defendants.  Upon the payments of the amounts specified in Sections 7.2 and 7.3, the McKinney Defendants shall completely remise, release, and forever discharge McKinney, its past and current directors, officers, members, managers, employees,

subsidiaries, affiliates, shareholders, predecessors, successors, assigns, beneficiaries, trustees, attorneys, agents, or advisors (for purposes of this Section 3.3.2, the "Indemnifying Party Releasees"), of and from any and all causes of action, claims, debts, demands, damages, and attorneys' fees and expenses, known or unknown, accrued or unaccrued, contingent or not contingent, of every nature and kind, both at law and equity, whether federal, state, or common law, that any of the McKinney Defendants had, has, or might have against the Indemnifying Party Releasees relating to the Lawsuit, except any claims arising out of the breach of this Settlement Agreement (for purposes of this Section 3.3.2, the "Indemnifying Party Release"). This Indemnifying Party Release shall include a release of McKinney's indemnification obligations with respect to the Lawsuit under McKinney's Certificate of Incorporation, as amended, and the Director Service Agreements and Indemnification Agreements between McKinney and the McKinney Defendants, as well as any and all other indemnification obligations of McKinney with respect to the Lawsuit, including, but not limited to, any indemnification obligations based on any contract, statute, common law, or any other legal authority (collectively, the "Indemnification Provisions"), and no further fees or costs shall be reimbursed to the McKinney Defendants, except as provided in this Section 3.3.2.  The Indemnifying Party Release does not release McKinney's indemnification obligations under the Indemnification Provisions with respect to claims related to the ESOP Transaction that are subsequently asserted against the McKinney Defendants or McKinney in an action or proceeding other than the Lawsuit.

McKinney hereby completely remises, releases, and forever discharges the McKinney Defendants, their past and current directors, officers, members, managers, employees, subsidiaries, affiliates, shareholders, predecessors, successors, assigns, beneficiaries, trustees, attorneys, agents, or advisors (for purposes of this Section 3.3.2, the "McKinney Defendant

Releasees"), of and from any and all causes of action, claims, debts, demands, damages, and attorneys' fees and expenses, known or unknown, accrued or unaccrued, contingent or not contingent, of every nature and kind, both at law and equity, whether federal, state, or common law, that McKinney had, has, or might have against the McKinney Defendant Releasees relating to the Lawsuit, except any claims arising out of the breach of this Settlement Agreement (for purposes of this Section 3.3.2, the "McKinney Defendant Release"). The McKinney Defendant Release does not release any claims or defenses that McKinney may have related to the ESOP Transaction that are subsequently asserted against the McKinney Defendants or McKinney in an action or proceeding other than the Lawsuit.

If for any reason the Court enters a Triggering Order (as defined in Section 3.3.1), McKinney's indemnification obligations under the Indemnification Provisions between the McKinney Defendants and McKinney shall resume. The resumed indemnification obligations shall apply only to fees, expenses, and costs incurred after the occurrence of a Triggering Order, and shall continue until (1) a court issues an order finally approving a settlement of the claims against the McKinney Defendants in the Lawsuit, (2) there is a dismissal of all claims in the Lawsuit against the McKinney Defendants with prejudice, or (3) there is a judgment by a court following trial from which all rights of appeal have either lapsed or been exhausted.

**4.**      **Covenants.**

4.1      Covenants Not to Sue. Plaintiffs and all members of the Settlement Class, and Plaintiffs' Counsel covenant and agree, (i) not to file any claim or action against any Releasee based on a Released Claim; and (ii) that the foregoing covenant and agreement shall be a complete defense to any such lawsuit or claims against any of the Releasees. Defendants covenant and agree not to file any claim or action against Plaintiffs or Plaintiffs' Counsel relating to any claim, allegations, or conduct in the Lawsuit.

4.2     Taxation of Settlement Fund.  Plaintiffs acknowledge that Releasees have no responsibility for any taxes due on the Settlement Fund, on earnings on the Settlement Fund, or any amounts that Plaintiffs receive from the Settlement Fund.  Nothing herein shall constitute an admission or representation that any such taxes will or will not be due.

5.     **Representations and Warranties.**

5.1     Plaintiffs' Representations and Warranties.  Each Plaintiff represents and warrants on behalf of himself or herself and all members of the Settlement Class as follows:

5.1.1     That Plaintiffs and their counsel have conducted an appropriate investigation and discovery and have diligently litigated the Lawsuit.

5.1.2     That none of the Plaintiffs' claims or causes of action made in the Lawsuit or that could have been alleged in the Lawsuit against any of the Releasees have been or will be assigned, encumbered, or in any manner transferred in whole or in part.

5.1.3     That Plaintiffs shall have no surviving claim or cause of action against any of the Releasees with respect to the Released Claims.

5.2     Parties' Representations and Warranties.

The Parties, and each of them, represent and warrant:

5.2.1.  That they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among Plaintiffs' Counsel, counsel for Defendants, and counsel for McKinney, with the assistance and recommendation of the Mediator, Robert A. Meyer, Esq.; that in executing this Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights, obligations, and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any

18

extent whatsoever in executing this Settlement Agreement by any representation, statement, or omission pertaining to any of the foregoing matters by any Party or by any person representing any Party to this Settlement Agreement.  With respect to the Settlement, each of the Parties assumes the risk of mistake as to facts and/or law.

        5.2.2.  That they have carefully read the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each person executing this Settlement Agreement on behalf of such Party.  The Parties, and each of them, further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the Settlement, this Settlement Agreement, and all of the matters pertaining thereto, as he, she, or it deems necessary or appropriate.

5.3      Signatories' Representations and Warranties.

Each person executing this Settlement Agreement on behalf of themselves or in a representative capacity do hereby personally represent and warrant that, to the best of his or her information and knowledge formed after reasonable inquiry, he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal for whom such individual represents or purports to represent.

**6.      No Admission of Liability.**

6.1     This Settlement Agreement and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal, equitable, or factual, and are not admissions of any damages or losses.  The Settlement Agreement, whether or not consummated, and any discussions, negotiations, proceedings or agreements relating to the Settlement Agreement, and any matters arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be construed, offered, or received against or to the prejudice of the Parties for any purpose, and, in particular:

6.1.1    do not constitute and shall not be deemed to constitute any liability or wrongdoing by any of the Releasees, or give rise to any inference of wrongdoing or liability under ERISA;

6.1.2    do not constitute, and shall not be offered or received against or to the prejudice of Releasees as, evidence of any presumption, concession, or admission by Releasees with respect to the truth of any allegation by Plaintiffs or as alleged in the Lawsuit, or of any liability, damages, fault, omission, or wrongdoing of Releasees;

6.1.3    do not constitute, and shall not be offered by or received against or to the prejudice of Releasees as, evidence in any other civil, criminal, or administrative lawsuit or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement.

6.1.4    do not constitute, and shall not be offered or received against or to the prejudice of Plaintiffs as, evidence of any presumption, concession, or admission by Plaintiffs with respect to the truth of any allegation or affirmative defense by Defendants or as alleged in the Answer, or to limit any claim of damages or remedy requested by Plaintiffs;

6.2    Releasees may file this Settlement Agreement and/or the Final Order in any action that may be brought against them in order to support a defense or counterclaim based in principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate the liability protection granted them under any applicable insurance policies.  A Party may file this Settlement Agreement and/or the Final Order in any action that the Party brings against another Party to enforce the terms of this Settlement Agreement and/or the Final Order.

20

7.    **The Settlement Fund Account.**

7.1        Plaintiffs' Counsel or the Settlement Administrator shall establish at a federally chartered financial institution reasonably acceptable to Defendants (the "Financial Institution") an interest-bearing account (the "Settlement Fund Account").  The Parties agree that the Settlement Fund Account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1.  Plaintiffs' Counsel shall provide to Defendants and McKinney: (i) written notification of the date of establishment of the Settlement Fund Account; (ii) written notification of the following information regarding the Financial Institution and the Settlement Fund Account: bank name, bank address, ABA number, account number, account name, and IRS Form W-9 and taxpayer identification number; and (iii) any additional information needed to deposit the Settlement Amount into the Settlement Fund Account.  Plaintiffs' Counsel shall direct the Financial Institution to make distributions by wire transfer or check from the Settlement Fund only in strict accordance with the Settlement Agreement and Court Orders.  No other disbursements may be authorized by Plaintiffs' Counsel.

7.2       Not later than Fourteen (14) calendar days after the entry of the Preliminary Approval Order, the Settling Parties shall cause $100,000 to be deposited into the Settlement Fund Account; provided however, that if Plaintiffs' Counsel has not yet provided McKinney and Defendants with the notifications and information required in (i)-(iii) in the preceding paragraph, then the deadline shall be extended to fourteen (14) calendar days after the date on which Plaintiffs' Counsel provides the requisite notifications and information.

7.3       Not later than thirty (30) calendar days after the entry of the Final Order by the Court, the Settling Parties shall cause $2,000,000 to be deposited into the Settlement Fund Account.

7.4       OMITTED INTENTIONALLY.

21

7.5     Not later than thirty (30) calendar days after the entry of the Final Order by the Court, the McKinney Defendants shall effectuate the Seller Note Reduction.

7.6     Not later than thirty (30) calendar days after the entry of the Final Order by the Court, McKinney and the ESOP shall effectuate the ESOP Loan Reduction.

7.7     The Settlement Amount deposited into the Settlement Fund Account will be considered to be in the legal custody of the Court until such time as such funds may be distributed pursuant to further order of the Court or pursuant to the terms of this Settlement Agreement.  The Parties acknowledge and agree that Releasees shall have no authority, control or liability in connection with the design, management, administration, investment, maintenance, or control of the Settlement Fund Account, or for any expenses the Settlement Fund Account may incur or any taxes that may be payable by the Settlement Fund.

7.8     The Settlement Amount shall be the full and sole monetary contribution made by or on behalf of Releasees in connection with the Settlement.  The Settlement Amount specifically covers any claims for attorneys' fees and litigation expenses by Plaintiffs.  Except as otherwise specified in this Settlement Agreement, the Parties shall bear their own costs and expenses (including attorneys' fees) in connection with the Lawsuit and effectuating this Settlement Agreement and securing necessary Court orders and approvals with respect to the same.

8.      **Payments from the Settlement Fund Account.**

8.1     Administration Expenses.  Plaintiffs' Counsel may direct the Settlement Administrator in writing, without notice to Defendants or McKinney or further order of the Court, to disburse from the Settlement Fund Account (i) the amount required for payment of any taxes owed on the Settlement Fund Account, and (ii) amounts for the reasonable expenses of administering the Settlement Fund Account, including (a) reasonable expenses associated with

the preparation and filing of all tax reports and tax returns required to be filed; (b) expenses associated with the preparation and issuance of any required Forms 1099 associated with payments from the Settlement Fund Account; (c) fees charged and expenses incurred by the Financial Institution associated with the administration of the Settlement Fund Account; (d) fees, charges and expenses incurred by the Settlement Administrator, including reasonable costs incurred in preparing and mailing the Class Notice and any supplemental notice to the Settlement Class, in implementing the Plan of Allocation (as defined below) and in disbursing funds from the Settlement Fund Account; and (e) the fees charged by the Independent Fiduciary in excess of $25,000.

If the Settlement Agreement is terminated or does not become final for any reason after the expenditure of funds to pay for the reasonable costs associated with the Class Notice, Plaintiffs' Counsel shall be obligated to instruct the Settlement Administrator (or an escrow agent, successor trustee, or other person with authority to disburse the funds) to return the funds remaining in the Settlement Fund to Defendants and McKinney.

8.2     Disbursements from Settlement Fund.  Plaintiffs' Counsel shall be entitled to seek from the Court approval of disbursement of money from the Settlement Fund Account once the Final Order becomes Final as follows:

8.2.1    For Attorneys' Fees and Litigation Expenses.  As provided in Section 9.1 herein.

8.2.2    For payment of any Service Awards approved by the Court.  In recognition of their service as class representatives, Plaintiffs shall request a Service Award for each class representative not to exceed $10,000 individually or $20,000 in the aggregate, in the sole discretion of the Court.

8.2.3    For Payment to the Settlement Class.  Upon the Final Order becoming Final, and after the amounts payable pursuant to Sections 8.1 and 8.2.1 and 8.2.2 have been determined and disbursed, the net amount remaining in the Settlement Fund Account (the "Net Proceeds") shall be calculated by the Settlement Administrator.  The Settlement Administrator shall implement the Plan of Allocation (attached hereto as Exhibit 3) and, thereby, determine how much of the Net Proceeds should be allocated to each Class Member, using the records available to it, and considering documents, if any, submitted by Class Members.  The allocable portion of the Net Proceeds for each Class Member shall be distributed to those Class Members directly by the Settlement Administrator, either by receiving a check directly or, if elected by the Class Member, as a deposit into an individual retirement account or other eligible retirement plan.

Nothing herein shall constitute approval or disapproval of the Plan of Allocation by Defendants or McKinney, and Defendants and McKinney shall take no position for or against the Plan of Allocation.  Plaintiffs, Plaintiffs' Counsel, Defendants, Defendants' counsel, McKinney, and McKinney's counsel shall have no responsibility or liability for or in connection with the calculations and distributions of the Net Proceeds among and to the members of the Settlement Class.  Any third party administrator shall have no responsibility or liability for or in connection with the calculation, allocation within the ESOP, or distribution of the Net Proceeds as among or to the members of the Settlement Class, except that, in the event of an error by a third party administrator in the distribution from the ESOP following payment to it of the Net Proceeds allocable among the members of the Settlement Class, the error shall be corrected within a reasonable amount of time.

9.    **Attorneys' Fees and Litigation Expenses; Service Awards**

9.1     Payment of Plaintiffs' Attorneys' Fees, Litigation Expenses, and Service Awards.

Plaintiffs' Counsel may apply to the Court for an award of attorneys' fees in an amount not

exceeding one-third of the Settlement Amount, and for reimbursement of litigation expenses,

including the cost and expense of any service company, expert, or consultant retained by

Plaintiffs' Counsel, which litigation expenses shall not exceed $100,000.  The aggregate amount

of the attorneys' fees and litigation expenses shall not exceed 50% of the Settlement Amount,

and shall be paid out of, and not in addition to, the Settlement Amount.  Plaintiffs may also apply

to the Court for Service Awards to the class representatives, which shall be paid out of, and not

in addition to, the Settlement Amount.  Plaintiffs' Counsel shall file their application for

attorneys' fee and litigation expenses and for Service Awards no later than forty-five (45) days

before the Fairness Hearing, to allow twenty-four (24) days for Class Members to review and

submit objections to the Settlement Agreement, the application for attorneys' fees and expenses,

and the proposed Service Awards.  Thereafter, Plaintiffs' Counsel shall be entitled to receive

attorneys' fees and litigation expenses, and the class representatives shall be entitled to Service

Awards from the Settlement Fund Account, to the extent awarded by the Court.  Defendants

shall take no position with respect to Plaintiffs' Counsel's application for attorneys' fees and

litigation expenses or with respect to the Service Awards.  Defendants do not agree or concede

that the amount of attorneys' fees and/or any expenses that may be sought by Plaintiffs' Counsel,

or the amount of the Service Awards sought for the class representatives, are appropriate or

reasonable, but simply take no position.

9.2     Separate Consideration.  The procedure for and allowance or disallowance by the

Court of Plaintiffs' application for attorneys' fees and litigation expenses and for Service Awards

are a separate part of the Settlement set forth in this Settlement Agreement, and are separate from

the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set

forth in this Settlement Agreement.  Any order or proceeding relating to any application for attorneys' fees and litigation expenses or Service Awards that results in a denial of the application or an award in an amount less than the amount requested by Plaintiffs' Counsel for attorneys' fees and litigation expenses or for Service Awards, or any appeal from any order relating thereto or reversal or modification, thereof, shall not operate to terminate or cancel the Settlement Agreement, or affect or delay the finality of the Final Order approving the Settlement Agreement and the Settlement set forth herein.  Accordingly, the Court's ruling on any application for attorneys' fees and litigation expenses or Service Awards is independent of the releases contained in this Settlement Agreement, and those releases shall become effective according to their terms as provided in this Settlement Agreement even if the Court denies such application or awards an amount less than the amount requested by Plaintiffs' Counsel.  If at the time of any disbursement from the Settlement Fund Account there shall be a pending application for attorneys' fees or expenses or Service Awards, there shall be reserved in the Settlement Fund Account an amount equal to the amount of the pending application, until such time as the Court shall rule upon such application and such ruling shall become Final.

**10.** **Termination of the Settlement Agreement.**

10.1    Termination.  This Settlement Agreement may be terminated by any Party if (i) the Court declines to approve the Settlement by entering the Final Order, or (ii) the Final Order entered by the Court is reversed or modified in any material respect by any Appeal Proceeding, provided that the terminating party, within fourteen (14) calendar days from the date of such event, furnishes written notice to Plaintiffs' Counsel or Defendants' Counsel, as the case may be, of the termination of this Settlement, specifying the terms modified or not approved that give rise to the right to terminate.

10.2    Consequences of Termination of the Settlement Agreement.  If the Settlement Agreement is terminated, the following shall occur:

10.2.1    Plaintiffs' Counsel or Defendants' Counsel shall promptly after the date of termination of the Settlement Agreement notify the Court and cause the return of any Settlement Amount to the Defendants and McKinney, except for amounts disbursed or incurred pursuant to Section 8.1.

10.2.2    The Lawsuit shall for all purposes revert to its status as of the day immediately before March 21, 2022, and Plaintiffs and Defendants shall request a scheduling conference with the Court.  In any subsequent proceeding, the terms of this Settlement Agreement shall not constitute nor be construed as an admission by any Party, nor be used against any Party, in any manner, whether as evidence or argument.

10.2.3    The Settlement shall be deemed void and of no further force and effect.

**11.    <u>Miscellaneous Provisions.</u>**

11.1    Continuing Jurisdiction of the Court.  The Court shall retain jurisdiction over this Lawsuit to resolve any dispute that may arise regarding the Settlement Agreement, the Class Notice, the Final Order, or any other matters relating thereto, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement. The Parties agree to request that, upon entry of the Preliminary Approval Order, the Court enjoin any Class Member from instituting, asserting or prosecuting against any Defendant or McKinney, in any pending or future action in any federal or state court, any Released Claim that the member currently has or may have in the future.

11.2    Required Disclosures.  The Parties acknowledge and agree that (i) they shall be authorized to disclose the fact of the Settlement and the Settlement Amount; and (ii) they may

27

make such public filings and accompanying public statements as required to be made under applicable law concerning the Settlement upon execution of this Settlement Agreement and the filing of this Settlement Agreement with the Court for preliminary approval.   Plaintiffs and their counsel shall not make any statements, or take any other actions, to disparage, defame, sully, or compromise the goodwill, name, brand, or reputation of Horizon Trust, McKinney, or the McKinney Defendants.  Nothing in this paragraph is intended to limit or restrict Plaintiffs' Counsel's ability to communicate with Class Members.

11.3    Complete Resolution.  The Parties intend the Settlement of the Lawsuit to be the full, final, and complete resolution of the Released Claims and the Lawsuit.  The Parties and their counsel agree that they shall not make any applications for sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure or other court rule or statute, with respect to any claim or defense in this Lawsuit.

11.4    Governing Law.  The construction, interpretation, operation, effect, and validity of this Settlement Agreement and all documents necessary to effectuate it, shall be governed by the laws of the State of Alabama, without giving effect of laws or choice of law provisions thereof, except to the extent the laws of the United States, including federal common law and ERISA, governs any matter set forth herein, in which case federal law shall govern.

11.5    Severability.  The provisions of this Settlement Agreement are not severable.

11.6    Destruction or Return of Protected Materials.  Within sixty (60) calendar days after the Final Order become Final, the Parties shall fully comply with the applicable provisions of the Protective Order (Dkt. 108) concerning the destruction or return of Confidential Information or other protected materials.

11.7    Amendment of Settlement Agreement.  Before the entry of the Final Order, the Settlement Agreement may be modified or amended only by written agreement signed by or on

28

behalf of all Parties.  Following entry of the Final Order, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties and approved by the Court.  Amendments or modifications may be made without notice to the Class Members unless notice is required by law or the Court.

11.8    Waiver.  The provisions of this Settlement Agreement may be waived only in writing executed by the waiving party.  The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

11.9    Retention of Privilege.  Nothing in this Settlement Agreement, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

11.10   Construction.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

11.11   Principles of Interpretation.  The following principles of interpretation apply to this Settlement Agreement.

11.11.1    Headings.  The headings of this Settlement Agreement are for purposes of reference only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

11.11.2    Terms of Inclusion.  Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather be deemed to be followed by the words "without limitation."  The connectives "and," "or," and

29

"and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a sentence or clause all subject matters that might otherwise be construed to be outside of its scope. The terms "herein," "hereof," and the like shall be deemed to refer to this Settlement Agreement as a whole. The use of the term "will" instead of "shall" will not limit the obligations of a Party.

11.12   Further Assurances.  Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver to each other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement, so long as such documents and actions are consistent with the terms of this Settlement Agreement and do not effectively result in a material modification of the terms of this Settlement Agreement.

11.13   Survival.  All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Settlement.

11.14   Entire Agreement.

11.14.1     All of the recitals and exhibits to the Settlement Agreement are material and integral parts hereof and are, except as set forth, fully incorporated herein by this reference.

11.14.2     The Parties acknowledge that this Settlement Agreement specifically supersedes any settlement terms or settlement agreements that were previously agreed upon orally or in writing by any of the Parties regarding the issues of the Settlement.

11.15   Counterparts.  This Settlement Agreement may be executed in two (2) or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.  Signatures sent by facsimile or by e-mail "PDF" shall be deemed originals.

11.16   Successors and Assigns.  This Settlement Agreement shall be binding upon, and insure to the benefit of, the successors and assigns of the Parties.

11.17   Binding Effect.  This Settlement Agreement shall be binding when signed, but the Settlement shall be effective only on the condition that the Court approves the Settlement Agreement and satisfaction of Section 2 herein.

11.18   Notices.  Any notice, demand, or other communication under this Settlement Agreement (other than the Class Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), or delivered by reputable express overnight courier:

IF TO PLAINTIFFS:

Gregory Y. Porter
Bailey & Glasser, LLP
1055 Thomas Jefferson Street, NW, Suite 540
Washington, D.C. 20007

Robert A. Izard
Izard, Kindall & Raabe, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107

IF TO DEFENDANT HORIZON TRUST:

Lars C. Golumbic
Groom Law Group, Chartered
1701 Pennsylvania Ave NW, Suite 1200
Washington, D.C. 20006

IF TO THE McKINNEY DEFENDANTS:

Howard Shapiro
Jackson Lewis, P.C.
650 Poydras Street, Suite 1900
New Orleans, LA 70130

IF TO McKINNEY:

George H. Cate III
Bradley Arant Boult Cummings LLP
Roundabout Plaza
1600 Division Street, Suite 700
Nashville, TN 37203


[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement

effective May 17, 2022.

_____
David L. Selby II
Bailey & Glasser, LLP
3000 Riverchase Galleria
Suite 905
Birmingham, AL 35244
Telephone: (205) 988-9253
Facsimile: (205) 733-4896
dselby@baileyglasser.com

Gregory Y. Porter (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
Bailey & Glasser, LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

Robert A. Izard
Izard, Kindall & Raabe, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6295
rizard@ikrlaw.com


*Attorneys For Plaintiffs*

_____
Lars C. Golumbic (*pro hac vice*)
Sean C. Abouchedid (*pro hac vice*)
Andrew Salek-Raham (*pro hac vice*)
Groom Law Group, Chartered
1701 Pennsylvania Ave NW, Suite 1200
Washington, D.C. 20006
Telephone: (202) 857-0620
Facsimile: (202) 659-4503
lgolumbic@groom.com
sabouchedid@groom.com
asalek-raham@groom.com

William B. Wahlheim, Jr.
Maynard Cooper & Gale
2400 Regions/Harbert Plaza
1901 6th Avenue North
Birmingham, Alabama 35203
Tel: 205.254.1000
Fax: 205.254.1988
wwalheim@maynardcooper.com


*Attorneys for Defendant*
*Horizon Bank, d/b/a Horizon Trust &*
*Investment Management*

Horizon Bank, d/b/a Horizon Trust &
Investment Management


By: _____


Its: _____

34

Lars C. Golumbic (*pro hac vice*)
Sean C. Abouchedid (*pro hac vice*)
Andrew Salek-Raham (*pro hac vice*)
Groom Law Group, Chartered
1701 Pennsylvania Ave NW, Suite 1200
Washington, D.C. 20006
Telephone: (202) 857-0620
Facsimile: (202) 659-4503
lgolumbic@groom.com
sabouchedid@groom.com
asalek-raham@groom.com

William B. Wahlheim, Jr.
Maynard Cooper & Gale
2400 Regions/Harbert Plaza
1901 6th Avenue North
Birmingham, Alabama 35203
Tel: 205.254.1000
Fax: 205.254.1988
wwalheim@maynardcooper.com

*Attorneys for Defendant*
*Horizon Bank, d/b/a Horizon Trust &*
*Investment Management*

Horizon Bank, d/b/a Horizon Trust &
Investment Management

By: _____
    Todd A. Etzler

Its: _____
    EVP & GC

Thomas A. Davis
Jackson Lewis, P.C.
Synovus Center
800 Shades Creek Parkway, Suite 870
Birmingham, Alabama 35209
Tel: (205) 332-3101
Fax: (205) 332-3131
Thomas.Davis@jacksonlewis.com

Howard Shapiro (*pro hac vice*)
Jackson Lewis, P.C.
650 Poydras Street, Suite 1900
New Orleans, LA 70130
Tel: (504) 208-1755
Fax: (504) 208-1759
Howard.Shapiro@jacksonlewis.com

Roddy Lee McKinney, Sr.

Janice E. McKinney

*Attorneys for Defendants*
*Roddy McKinney and Janice McKinney*

35

_____

J. Thomas Richie
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Tel: 205-521-8348
Fax: 205-488-6348
trichie@bradley.com

*Attorney for McKinney Communications*
*Corporation*

McKinney Communications Corporation

By: _____

Its: _____ CEO

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DANIELLE THREADFORD and WILLIAM HOLMES, on behalf of the McKinney Communications Corporation Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>           **Plaintiffs,**<br><br>**v.**<br><br>**HORIZON TRUST AND INVESTMENT MANAGEMENT, N.A., RODDY McKINNEY, and JANICE McKINNEY,**<br><br>           **Defendants.** | **Case No. 2:20-cv-00750-RDP** |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF
SETTLEMENT CLASS**

Plaintiffs Danielle Threadford and William Holmes, individually and as Class Representatives ("Plaintiffs" or "Class Representatives"), have moved, pursuant to Federal Rule of Civil Procedure 23, for an order preliminarily approving the settlement of this Action and for certification of a settlement class, in accordance with the Class Action Settlement Agreement dated May 17, 2022 (the "Settlement Agreement"), which, together with the exhibits thereto, sets forth the terms and conditions for a proposed settlement of this action. The Court having read and considered the Settlement Agreement, the Motion and the exhibits thereto, IT IS HEREBY ORDERED that:

1.      **Settlement.** Plaintiffs, on behalf of themselves and all members of the Class, and Defendants Horizon Bank, d/b/a Horizon Trust & Investment Management ("Horizon Trust"),

Roddy McKinney and Janice McKinney ("McKinney Defendants"[1]), and McKinney Communications Corporation ("MCC"), have negotiated a potential settlement to this action to avoid the expense, uncertainties, and burden of protracted litigation, and to resolve the Released Claims (as defined in the Settlement Agreement) against Horizon Trust, the McKinney Defendants and the other Releasees (as defined in the Settlement Agreement).

2.     **Definitions**. This Order incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used, but not defined herein, shall have the same meanings as in the Settlement Agreement.

3.     **Jurisdiction**. This Court has jurisdiction over the subject matter of this action and over all parties to this action, including all Class Members, and venue in this Court is proper.

4.     **Preliminary Approval**. The Court hereby preliminarily approves the Settlement Agreement as fair, reasonable, and adequate, subject to further consideration at the Fairness Hearing described below. The Court finds on a preliminary basis that the Settlement Agreement falls within the range of reasonableness and was the product of informed, good-faith, arm's-length negotiations between the Parties and their counsel, and therefore meets the requirements for preliminary approval.

5.     **Settlement Class**. The Court certifies the following Settlement Class as: "all persons who, at any time, were vested participants in the ESOP prior to January 1, 2022 and the beneficiaries of such participants. Excluded from the Settlement Class are the McKinney Defendants and their immediate families, the directors of McKinney, and legal representatives, successors, and assigns of any such excluded persons."

---

[1] The term "McKinney Defendants" also includes, R. Lee McKinney, II, Daniel L. McKinney, the Roddy Lee McKinney, II Trust, dated December 26, 2012, and the Daniel Lee McKinney Trust dated December 26, 2012.

6. **Class Representatives and Class Counsel.** The Court appoints Plaintiffs Danielle Threadford and William Holmes as Class Representatives, and the law firms Bailey & Glasser LLP and Izard, Kindall, & Raabe LLP as Class Counsel.

7. **Final Approval Hearing.** A hearing (the "Fairness Hearing") shall be held before this Court, on _____, 2022, at _____.m., at the United States District Court for the Northern District of Alabama, Southern Division, located at 1729 5th Avenue North, Birmingham, AL 35203, to determine, among other things: (i) whether the proposed Settlement of this action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate to the Class and should be approved by the Court; (ii) whether a Final Order as provided in Paragraph 1.7 of the Settlement Agreement should be entered; (iii) whether Class Members should be bound by the Releases set forth in Paragraph 3.1 and 3.2 of the Settlement Agreement; and (iv) any amount of fees and expenses that should be awarded to Class Counsel and any Service Award to the Class Representatives for their representation of the Class. The Parties shall include the date of the Fairness Hearing in the Class Notice to be mailed to the Class.

8. **Class Notice**. The Court approves the form, substance and requirements of the proposed Class Notice, attached to the Settlement Agreement as Exhibit 1-A. The Court further finds that the form, content and mailing of the Class Notice meet the requirements of Rule 23 and due process. The Court further finds that this is the best notice practicable under the circumstances and is reasonably calculated, under all the circumstances, to apprise potential Class Members of the pendency of this action, and to apprise Class Members of their right to object to the proposed Settlement and their right to appear at the Fairness Hearing. The Court further finds that the Class Notice constitutes valid, due and sufficient notice to all persons entitled to notice.

9. **Settlement Administrator**. The Court appoints KCC, LLC ("Settlement

Administrator") to supervise and administer the notice procedure as more fully set forth below:

a. Within thirty (30) days after this Order or by July 15, 2022, whichever is later (the "Notice Date"), Plaintiffs shall cause the Class Notice to be disseminated to the Class Members and shall post the Class Notice, and the operative Complaint in this action, as well as contact information for the Settlement Administrator and Class Counsel, on a website for the Class;

b. the Class Notice shall be substantially in the form of Exhibit 1-A to the Settlement Agreement (though the Settlement Administrator shall have discretion to format the Class Notice in a reasonable manner to minimize mailing or administration costs), by first class U.S. mail to each individual Class Member;

c. Following the issuance of the Class Notice, the Settlement Administrator shall provide counsel with written confirmation of the mailing; and

d. The Settlement Administrator shall otherwise carry out its duties as set forth in the Settlement Agreement.

**10.    Objections**. Any Class Member may object to the proposed Settlement, or any aspect of it, and may object to attorneys' fees, expenses, and Service Awards, by filing a written objection with the Clerk for the Northern District of Alabama, Hugo L. Black United States Courthouse, 1729 5th Avenue North, Birmingham, AL 35203, on or before twenty-one (21) calendar days before the Fairness Hearing. A copy of the objection must also be mailed to Class Counsel and Defendants' Counsel, so that it is received on or before fifteen (15) calendar days before the Fairness Hearing. To be valid, the objection must set forth, in clear and concise terms: (a) the case name and number (*Threadford v. Horizon Trust and Investment Management, N.A.*, Case No. 2:20-cv-00750-RDP); (b) the name, address, and telephone number of the objector

objecting and, if represented by counsel, of his or her counsel; (c) the complete basis for objection; (d) a statement of whether the objector intends to appear at the Fairness Hearing, either with or without counsel; (e) a statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class, and (f) copies of all supporting documents. Any Class Member who does not make his or her objection in the manner provided shall be deemed to have waived such objection, shall not be permitted to object to any terms or approval of the Settlement at the Fairness Hearing, and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement as incorporated in the Settlement Agreement, and to the award of attorneys' fees and expenses to Class Counsel and the payment of a Service Award to the Class Representatives for their representation of the Class, unless otherwise ordered by the Court. Responses to objections shall be filed seven (7) days before the Fairness Hearing.

  **11.** **Appearance of Objectors at Fairness Hearing**. Any Class Member who files and serves a written objection in accordance with Paragraph 10 of this Order may appear, in person or by counsel, at the Fairness Hearing, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objector: (a) files with the Clerk of the Court a notice of intention to appear at the Fairness Hearing by the objection deadline ("Notice of Intention to Appear"); and (b) serves the Notice of Intention to Appear on Class Counsel and Defense Counsel by the objection deadline.

  The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objector will present to the Court in connection with the Fairness Hearing. Any Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Settlement Agreement and Class Notice shall be deemed

to have waived his or her right to appear at the Fairness Hearing.

**12.     Service of Motion for Final Approval**. The motion in support of final approval of the Settlement shall be filed and served no later than forty-five (45) calendar days prior to the Fairness Hearing and any responsive papers shall be filed and served no later than twenty-one (21) calendar days prior to the Fairness Hearing.

**13.     Fees, Expenses, and Awards**. Class Counsel's application for attorneys' fees and expenses and Class Representative Service Awards shall be filed and served no later than forty-five (45) calendar days prior to the Fairness Hearing and any responsive papers shall be filed and served no later than twenty-one (21) calendar days prior to the Fairness Hearing. Neither Horizon Trust, the McKinney Defendants, nor the Releasees shall have any responsibility for any application for attorneys' fees and expenses or Service Awards request submitted by Class Counsel, and such matters will be considered separately from the fairness, reasonableness, and adequacy of the Settlement. The Court's approval or disapproval of the Settlement, and the effectiveness of the Settlement Agreement, shall not be contingent on the Court's approval or disapproval of the requested attorneys' fees, expenses, or Service Awards. At or after the Fairness Hearing, the Court shall determine whether any application for attorneys' fees and expenses, and any Service Awards to the Class Representatives for their representation of the Class, should be approved.

**14.     Releases**. If the Settlement is finally approved, the Plaintiffs and the Class shall release the Releasees from all Released Claims and all Class Members will be bound by the Final Approval Order.

**15.     Injunction**. Pending the Fairness Hearing, the Court hereby enjoins any Class Member from instituting, asserting or prosecuting against any Defendant or MCC, in any pending

or future action in any federal or state court or any other forum, any Released Claim that the member currently has or may have in the future.

16.    **Use of Order**. Neither this Order, the fact that a settlement was reached and filed, the Settlement Agreement, nor any related negotiations, statements, or proceedings shall be construed as, offered as, admitted as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of Horizon Trust or the McKinney Defendants. This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in this action. In no event shall this Order, the fact that a settlement was reached, the Settlement Agreement, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way be used, offered, admitted, or referred to in this action, in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding, by any person or entity, except by the Parties and only the Parties in a proceeding to enforce the Settlement Agreement.

17.    **Continuance of Fairness Hearing**. The Court reserves the right to continue the date of the Fairness Hearing without further notice to the Class Members and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Class.

18.    **Stay of Proceedings**. All proceedings in this action are stayed until further Order of this Court, except as may be necessary to implement the Settlement or comply with the terms of the Settlement Agreement.

19.    **No Merits Determination**. By entering this Order, the Court does not make any determination as to the merits of this case.

20.    **Jurisdiction**. This Court retains jurisdiction over this action to consider all further matters arising out of or connected with the Settlement Agreement and the Settlement.

**IT IS SO ORDERED**


Dated: _____              _____
                                            THE HONORABLE R. DAVID PROCTOR
                                            U.S. DISTRICT COURT JUDGE

# EXHIBIT 1-A

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**PLEASE READ THIS NOTICE CAREFULLY.
A FEDERAL COURT AUTHORIZED THIS NOTICE.
THIS IS NOT A SOLICITATION.**

You are receiving this notice because the records of the McKinney Communications Corporation Employee Stock Ownership Plan (the "Plan" or "ESOP") indicate that you were a participant in the Plan at some time during the period January 1, 2016 through December 31, 2021 ("Class Period") who vested under the terms of the Plan. Your rights may be affected by a proposed class action settlement of this lawsuit.

**Please read the following information carefully to find out what the lawsuit is about, what the terms of the proposed settlement are, what rights you have to object to the proposed settlement if you disagree with its terms, and what deadlines apply to the right to object to the proposed settlement.**

## WHAT THIS LAWSUIT IS ABOUT

Plaintiffs Danielle Threadford and William Holmes ("Plaintiffs"), participants in the Plan sponsored by McKinney Communications Corporation ("MCC"), filed this lawsuit against Horizon Trust and Investment Management, N.A. ("Horizon Trust") and Roddy McKinney and Janice McKinney (the "McKinney Defendants" and, together with Horizon Trust, the "Defendants") in the U.S. District Court for the Northern District of Indiana, and it was subsequently transferred to the U.S. District Court for the Northern District of Alabama (the "Lawsuit"). The Lawsuit claims that Horizon Trust and the McKinney Defendants violated a federal statute, the Employee Retirement Income Security Act of 1974 ("ERISA"), in connection with the Plan's acquisition of MCC stock in 2016, for total payments of approximately $65.5 million (the "ESOP Transaction"). Specifically, Plaintiffs allege that Horizon Trust violated its duties under ERISA § 404, 29 U.S.C. §1104, and ERISA § 406, 29 U.S.C. § 1106, when it, among things, approved a purchase price for MCC stock that exceeded fair market value, and the McKinney Defendants participated in a prohibited transaction in violation of ERISA § 406, 29 U.S.C. § 1106, by selling their MCC stock to the Plan.

Horizon Trust and the McKinney Defendants deny all of Plaintiffs' allegations in the Lawsuit, deny any wrongdoing regarding the ESOP Transaction, and have vigorously defended the Lawsuit.

## THE TERMS OF THE SETTLEMENT

To avoid the additional expense, delay, and uncertainty of the outcome of the Lawsuit, Plaintiffs and the Class defined below, and Horizon Trust, the McKinney Defendants and MCC, have agreed to a Settlement that provides payments to Class Members. These and other terms of the Settlement are set forth in the Class Action Settlement Agreement dated May 17, 2022

("Settlement Agreement") and are summarized below. The complete Settlement Agreement is available at website or from Class Counsel.[1]

1.      **The Class Covered by the Settlement**. On XX, 2022, the Court granted Plaintiffs' Motion for Preliminary Approval of Settlement and Certification of Settlement Class, and certified a Class for settlement purposes only. The Class is defined as: "all persons who, at any time, were vested participants in the ESOP prior to January 1, 2022 and the beneficiaries of such participants. Excluded from the Settlement Class are the McKinney Defendants and their immediate families, the directors of McKinney, and legal representatives, successors, and assigns of any such excluded persons." Whether or not a person meets this definition will be based on the Plan's records. You have received this Notice because, based upon those records, you are believed to be a member of the Class. You do not have the right to exclude yourself from the Class or the benefits of the Settlement. This Lawsuit was certified as a mandatory ("non-opt-out") class action.

2.      **The Payment and Allocation of the Settlement Fund**:

(a)    Under the Settlement, the Settling Parties, Defendants and MCC, will cause to be deposited a total payment of $2,100,000 (the "Settlement Amount") to the Settlement Fund.

(b)    The Settlement Amount, plus any accrued interest, shall be the "Gross Settlement Fund."

(c)    The "Net Proceeds" shall be the Gross Settlement Fund less:

(1)    Administrative Expenses, which include amounts required to pay taxes, administer the Settlement Fund Account, issue notice of the Settlement and communicate with Class Members, and make payments to the Class Members.

(2)    Class Counsel's attorneys' fees, which shall not exceed one-third of the Settlement Amount.

(3)    Class Counsel's expenses, which shall not exceed $100,000.

(4)    If approved by the Court, a Service Award to the Named Plaintiffs in an amount not to exceed $10,000 each.

The Net Proceeds will be distributed to Class Members in accordance with the Plan of Allocation approved by the Court, a copy of which is available on the website established by the Settlement Administrator as indicated below. The Plan of Allocation should be reviewed for a more detailed description of the method that will be used to determine the payment a Class Member will receive. In general, a Class Member's share of the Net Proceeds will be based on the proportion of the vested shares of MCC stock he or she held in the Plan during the Class Period divided by the total number of vested shares held by all Class Members in the Plan during

---

[1] Unless stated otherwise in this notice, capitalized terms have the meanings stated in the Settlement Agreement.

the Class Period.

In addition to the Settlement Amount, the debt incurred by the Plan to fund the ESOP Transaction will be reduced by $2 million, as will the debt incurred by MCC in connection with the ESOP Transaction.

Class Members will not need to submit a claim to receive their allocated portion of the Net Proceeds from the Settlement. Their allocated portion will be calculated based on the Plan's records. Class Members will receive a payment from the Settlement Administrator by check, with the option to deposit the funds in an individual retirement account or other eligible retirement plan. Class Members who wish to roll over their settlement allocation to an individual retirement account or other eligible retirement plan will need to make an election by returning the election form by **XX, 2022**. If a Class Member does not return the election form by that date, then his or her settlement allocation will be paid in cash less tax withholding.

**3.     Release of Claims**. In exchange for payment of the Settlement Amount, debt reduction, and satisfaction of the conditions contained in the Settlement Agreement, all Class Members (and their beneficiaries, heirs, executors, representatives, and assigns) and the Plan will release (or give up) any claims that in any way arise out of or are based on the ESOP Transaction, Horizon Trust's service as Trustee in connection with the Plan's investment in MCC stock, and the allegations, facts, matters, claims, causes of action, occurrences, or omissions that are set forth in the Complaint, which can be viewed online at website. Class Members and their beneficiaries, heirs, executors, representatives, and assigns and any successor trustee will be prohibited from filing or pursuing any other lawsuits or actions based on such claims against Horizon Trust, the McKinney Defendants, MCC, the shareholders of MCC, the MCC ESOP Committee members, and the named and functional fiduciaries of the MCC ESOP and each of their respective parent companies, subsidiaries, affiliates, directors, officers, employees, agents, attorneys, relations, representatives, assigns, insurers and reinsurers. The Releases and the Covenant Not to Sue are set forth in full in the Settlement Agreement, which can be viewed online at website, or requested from Class Counsel.

STATEMENT REGARDING THE POTENTIAL OUTCOME OF THE LAWSUIT

As with any lawsuit, the Plaintiffs, Horizon Trust and the McKinney Defendants would face an uncertain outcome if the Lawsuit were not settled. Continued litigation could result in a judgment greater or less than the amount obtained in the Settlement, or in no recovery at all. The Plaintiffs, Horizon Trust and the McKinney Defendants disagree about whether Horizon Trust or the McKinney Defendants did anything wrong, and they do not agree on the amount, if any, that would be recoverable even if Plaintiffs prevailed at trial. Horizon Trust and the McKinney Defendants have denied, and continue to deny, all claims and contentions of the Plaintiffs in the Lawsuit, have denied, and continue to deny, any wrongdoing or liability whatsoever, and are entering into the Settlement solely to avoid the cost, disruption and uncertainty of litigation. A settlement avoids the expense, further delay and uncertainty of a trial and gives money to Class Members more quickly. The Plaintiffs and the attorneys for the Class think the Settlement is best for all Class Members.

### THE SETTLEMENT APPROVAL PROCESS

The Court has granted preliminary approval of the proposed Settlement and has approved this Notice to the Class. The Settlement will not take effect, however, until it receives final approval from the Court after an opportunity for Class Members to object, as described below. Following the deadline for objecting to the Settlement, the Court will hold a Fairness Hearing at XX.m. on XX at the United States District Court for the Northern District of Alabama (Southern Division), in the courtroom of Judge R. David Proctor located at 1729 5th Avenue North, Birmingham, Alabama 35203. The date and location of the Fairness Hearing is subject to change by order of the Court, which will appear on the Court's docket for this Lawsuit. The Court may decide to conduct the hearing by videoconference.

### THE OPPORTUNITY TO OBJECT TO THE SETTLEMENT

If you are a Class Member, you can object to the Settlement if you do not like any part of it. To object, you must send your objection to the Clerk, U.S. District Court for the Northern District of Alabama, Hugo L. Black United States Courthouse, 1729 5th Avenue North, Birmingham, AL 35203, and to the Parties at the following addresses:

**To Class Counsel:**

Gregory Y. Porter
Bailey & Glasser, LLP
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007

Robert Izard
Izard, Kindall, & Raabe LLP
29 South Main Street
Suite 305
West Hartford, CT 06053

**To Horizon Trust's Counsel:**

Lars Golumbic
Groom Law Group, Chartered
1701 Pennsylvania Ave NW
Suite 1200
Washington, DC 20006

**To the McKinney Defendants' Counsel:**

Howard Shapiro
Jackson Lewis P.C.

650 Poydras Street
Suite 1900
New Orleans, LA 70130

**Settlement Administrator**

KCC, LLC
P.O. Box XXXX
City, State XXXXX-XXXX

Objections must be filed with the Court by XX, 2022 (21 days before the Fairness Hearing). Objections filed after that date will not be considered.  In addition, copies of any objections must be sent to the Parties at the addresses above so that they are received by XX, 2022 (15 days before the Fairness Hearing). To be valid, the objection must set forth, in clear and concise terms: (a) the case name and number (*Threadford v. Horizon Trust and Investment Management, N.A.*, Case No. 2:20-cv-00750-RDP); (b) the name, address, and telephone number of the objector objecting and, if represented by counsel, the name, address, and telephone number of his or her counsel; (c) the complete basis for objection; (d) a statement of whether the objector intends to appear at the Fairness Hearing, either with or without counsel; (e) a statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class, and (f) copies of all supporting documents.

Any Class Member who files and serves a written objection in accordance with the above paragraph may appear, in person or by counsel, at the Fairness Hearing, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objector: (a) files with the Clerk of the Court a notice of intention to appear at the Fairness Hearing by the objection deadline ("Notice of Intention to Appear"); and (b) serves the Notice of Intention to Appear on Class Counsel and Defense Counsel by the objection deadline.

The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objector will present to the Court in connection with the Fairness Hearing. Any Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Settlement Agreement and Class Notice shall be deemed to have waived his or her right to appear.

Any Class Member who does not make his or her objection in the manner provided shall be deemed to have waived such objection, shall not be permitted to object to any terms or approval of the Settlement at the Fairness Hearing, and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement as incorporated in the Settlement Agreement, and to the award of attorneys' fees and expenses to Class Counsel and the payment of a Service Award to the Class Representatives for their representation of the Class, unless otherwise ordered by the Court. Responses to objections shall be filed seven (7) days before the Fairness Hearing.

The Court will consider Class Member objections in deciding whether to grant final approval of the Settlement. Class Members who do not comply with these procedures, or who miss the deadline to file an objection, lose the opportunity to have their objection considered by the Court or to appeal from any order or judgment entered by the Court regarding the Settlement.

### ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD FOR NAMED PLAINTIFFS

The attorneys for the Plaintiffs and the Class ("Class Counsel") are:

> Gregory Y. Porter
> Ryan T. Jenny
> Patrick O. Muench
> Bailey & Glasser, LLP
> 1055 Thomas Jefferson Street, NW
> Suite 540
> Washington, DC 20007
>
> Robert Izard
> Izard, Kindall, & Raabe LLP
> 29 South Main Street
> Suite 305
> West Hartford, CT 06053
>
> David L. Selby, II
> Bailey & Glasser, LLP
> 3000 Riverchase Galleria
> Suite 905
> Birmingham, AL 35244

Class Counsel will seek an award of attorneys' fees of no more than one-third of the Settlement Amount, *i.e.*, $700,000, and reimbursement of their litigation expenses up to $100,000. Class Counsel's litigation expenses include the cost and expense of process servers, e-discovery fees, legal research costs, court fees, mediation fees and experts retained by Class Counsel. Class Counsel shall also seek Service Awards for the named Plaintiffs from the Settlement Amount of up to $10,000 each. The fee application and supporting papers will be filed on or before 45 days before the Fairness Hearing. After that date you may review the application and supporting papers at website. You may file an objection to the request for attorneys' fees and expenses and to the Service Awards under the same procedures for objecting to the Settlement. Any attorneys' fees, expenses and Service Awards approved by the Court, and the expenses incurred by the Settlement Administrator in sending this Notice and otherwise administering the Settlement, will be paid from the Gross Settlement Fund.

### GETTING MORE INFORMATION

You can visit the website at ==website==, where you will find the full Settlement Agreement, the Court's order granting Preliminary Approval of the Settlement, this Notice, and other relevant pleadings and documents. If you cannot find the information you need on the website, you may also contact Class Counsel for more information.

**WHAT IF MY ADDRESS OR OTHER INFORMATION HAS CHANGED OR CHANGES AFTER I RECEIVE MY NOTICE?**

It is your responsibility to inform the Settlement Administrator of your updated address or other information. You may do so by email to the following email address: ==email== or by U.S. Mail to the following mailing address: ==XXX==.

**Please do not contact the Court, Horizon Trust or its counsel, the McKinney Defendants or their counsel, or MCC or its counsel. They will not be able to give you additional information.**

Dated: _____, 2022          By Order of the United States District Court
                                     District Judge R. David Proctor

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **DANIELLE THREADFORD and WILLIAM HOLMES, on behalf of the McKinney Communications Corporation Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>          **Plaintiffs,**<br><br>**v.**<br><br>**HORIZON TRUST AND INVESTMENT MANAGEMENT, N.A., RODDY McKINNEY, and JANICE McKINNEY,**<br><br>          **Defendants.** | **Case No. 2:20-cv-750-RDP** |

**[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE**

Plaintiffs Danielle Threadford and William Holmes ("Plaintiffs" or "Class Representatives") submitted a Motion for Final Approval of the Settlement ("Final Approval Motion") set forth in the Class Action Settlement Agreement dated May 17, 2022 (the "Settlement Agreement"). Class Counsel also has submitted to the Court their Motion for an Order Awarding Attorneys' Fees and Costs and Expenses to Class Counsel, and Service Awards to Class Representatives ("Class Counsel Fees and Costs and Service Award Motion").

On _____, 2022, this Court granted preliminary approval to the proposed class action settlement set forth in the Settlement Agreement. The Court also approved the procedure for giving Class Notice to the members of the Class, and set a Final Approval Hearing to take place on _____, 2022. The Court finds that due and adequate notice was given to the Class as required by the Court's Order.

1

The Court has reviewed the papers filed in support of the Final Approval Motion, including the Settlement Agreement and exhibits thereto, memoranda and arguments submitted on behalf of the Class, and supporting affidavits.

On _____, 2022, this Court held a duly-noticed Final Approval Hearing to consider: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable and adequate; (2) whether a judgment should be entered dismissing the Class Members' Released Claims on the merits and with prejudice; and (3) whether and in what amount to award attorneys' fees and expenses to Class Counsel, and any award to the Class Representatives for their representation of the Class.

Based on the papers filed with the Court and the presentations made to the Court by the Parties and by other interested persons at the Final Approval Hearing, the Court has determined that the Settlement Agreement is fair, adequate, and reasonable, and in the best interests of the Class.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.   **Definitions.**  This Judgment incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used, but not defined herein, shall have the same meanings as in the Settlement Agreement.

2.   **Jurisdiction.**  This Court has jurisdiction over the subject matter of the Lawsuit and over all parties to the Lawsuit, including all Class Members, and venue in this Court is proper.

3.   **No Merits Determination.**  By entering this Order, the Court does not make any determination as to the merits of this Lawsuit.

4.   **Class.**  As the Court ordered previously, the Settlement Class is defined as follows: "All persons who, at any time, were vested participants in the McKinney

2

Communications Corporation Employee Stock Ownership Plan ("ESOP") prior to January 1, 2022 and the beneficiaries of such participants. Excluded from the Settlement Class are the McKinney Defendants and their immediate families, the directors of McKinney, and legal representatives, successors, and assigns of any such excluded persons."

5.  **Designation of Class Representatives and Class Counsel.** The Court confirms the prior appointment of the Plaintiffs Danielle Threadford and William Holmes as Class Representatives, and the law firms of Bailey & Glasser LLP and Izard, Kindall & Raabe, LLP as Class Counsel.

6.  **Settlement Approval.** Pursuant to Rule 23(e), the Court hereby approves the Settlement and finds that it is, in all respects, fair, reasonable and adequate to the Parties. The Court further finds that the Settlement is the result of good faith arm's-length negotiations between experienced counsel representing the interests of the Parties, with the assistance of an experienced mediator. Accordingly, the Settlement is hereby finally approved in all respects, there is no just reason for delay, and the Parties are hereby directed to perform its terms.

7.  **Dismissal with Prejudice.** Final Judgment is hereby entered with respect to the Released Claims of all Class Members, and the Released Claims are hereby dismissed in their entirety with prejudice and without costs, and the case shall be closed.

8.  **Releases.** The releases as set forth in Section 3 of the Settlement Agreement are expressly incorporated herein in all respects and made effective by operation of this Judgment. The Court hereby approves the release provisions as contained and incorporated in Section 3 of the Settlement Agreement, including but not limited to the definitions of Released Claims and Releasees. The Class Members and the ESOP shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged all Released Claims against the Releasees.

3

9.     **Bar Order.**  Plaintiffs and all Class Members are hereby barred and enjoined from filing any claim or action against any Releasee based on, relating to, or arising from any Released Claim. The foregoing provision shall be a complete defense to any such lawsuit or claims against any of the Releasees.

10.     **Approval of Class Notice.**  The form and means of disseminating the Class Notice as provided for in the Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and Certification of Settlement Class constituted the best notice practicable under the circumstances, including individual notice to all Class Members who could be identified through reasonable effort.  Said Notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution.

11.     **Attorneys' Fees and Expenses.**  Plaintiffs and Class Counsel have moved for an award of attorneys' fees in the amount of $_____, and costs and expenses of $_____. The Court has considered this application for fees and expenses separately and independently from this Judgment and the Court's approval of the Settlement.  The Court finds that an award of $_____ in attorneys' fees, and $_____ in costs and expenses is fair and reasonable, and the Court approves of Class Counsel attorneys' fees, costs and expenses in these amounts to be paid from the Settlement Amount.

12.     **Service Award.**  The Court further finds that Service Awards for Ms. Threadford and Mr. Holmes in the amount of $_____ each, are fair and reasonable, and the Court approves the Service Awards in this amount.  The Court has considered the application for Service Awards separately and independently from this Judgment and the Court's approval of the Settlement.  The Court directs the Settlement Administrator to disburse that amount to each

4

of Ms. Threadford and Mr. Holmes from the Settlement Amount as provided in the Settlement Agreement.

13.    **Use of Order.**  Neither this Order, the fact that a settlement was reached and filed, the Settlement Agreement, nor any related negotiations, statements or proceedings shall be construed as, offered as, admitted as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of any Defendant.  This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Lawsuit.  In no event shall this Order, the fact that a settlement was reached, the Settlement Agreement, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way be used, offered, admitted, or referred to in the Lawsuit, in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding, by any person or entity, except by the Parties and only the Parties in a proceeding to enforce the Settlement Agreement.

14.    **Continuing Jurisdiction.**  Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the Final Judgment, and for any other necessary purpose, including to ensure compliance with the Protective Order.

15.    **Termination of Settlement.**  This Settlement Agreement may be terminated by either Party if (i) the Court declines to approve the Settlement by entering the Final Order, or (ii) the Final Order entered by the Court is reversed or modified in any material respect by any Appeal Proceeding, provided that the terminating party, within fourteen (14) calendar days from the date of such event, furnishes written notice to Class Counsel or Defendants' Counsel, as the case may be, of the termination of this Settlement, specifying the terms modified or not approved

that give rise to the right to terminate.  If the Settlement Agreement is terminated, the following shall occur: (i) Class Counsel or Defendants' Counsel shall promptly after the date of termination of the Settlement Agreement notify the Court, and Class Counsel shall cause the return any Settlement Amount to the Settling Parties, except for amounts disbursed or incurred pursuant to Section 8.1 of the Settlement Agreement; (ii) the Lawsuit shall for all purposes revert to its status as of the day immediately before March 21, 2022, and the Parties shall request a scheduling conference with the Court; and (iii) the Settlement shall be deemed void and of no further force and effect.

16.     **Implementation of the Agreement.**  The Parties are hereby authorized to implement the terms of the Settlement Agreement.

17.     **Reasonable Extensions.**  Without further order of this Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

18.     **CAFA Notice.**  Defendants have provided notification to all appropriate federal and state officials regarding the Settlement as required by 28 U.S.C. § 1715.

19.     **Entry of Final Judgment.**  There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is hereby directed.

20.     **Action Closed.**  The Clerk of the Court is hereby directed to close the Action.

**IT IS SO ORDERED** this _____ day of _____, 20_____.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DANIELLE THREADFORD and WILLIAM HOLMES, on behalf of the McKinney Communications Corporation Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,** | |
| **Plaintiffs,** | **Case No. 2:20-cv-00750-RDP** |
| **v.** | |
| **HORIZON TRUST AND INVESTMENT MANAGEMENT, N.A., RODDY McKINNEY, and JANICE McKINNEY,** | |
| **Defendants.** | |

**PLAN OF ALLOCATION AND DISTRIBUTION OF
SETTLEMENT PROCEEDS TO CLASS MEMBERS**

1.      **The Settlement Fund**.[1] The Settlement Amount ($2,100,000.00), and the interest

and earnings thereon, shall be the "Gross Settlement Fund." The Gross Settlement Fund, less

certain amounts described in the Settlement Agreement, including (i) taxes (or reserves to pay

taxes), (ii) settlement administration fees, costs and expenses, (iii) Court-approved attorneys' fees

or expenses, and (iv) any Service Awards to the Class Representatives, shall constitute the "Net

Proceeds." The Net Proceeds shall be distributed to the Class Members in accordance with the

terms of the Settlement Agreement and this Plan of Allocation.

2.      **Calculation of Class Member Benefits**. Each Class Member's share of the Net

Proceeds will be calculated as follows:

---

[1] Unless otherwise defined in this Plan of Allocation capitalized terms have the meanings ascribed to them in the Settlement Agreement.

a. The total number of vested shares of McKinney stock allocated to the Class Member's ESOP account prior to January 1, 2022, divided by the total number of vested shares of McKinney stock allocated to the ESOP accounts of all Class Members prior to January 1, 2022, shall constitute that Class Member's "Entitlement Percentage"; and

b. The Class Member's benefit shall be calculated by multiplying the Net Proceeds by his or her Entitlement Percentage.

3. **Form of Distribution**. The allocable portion of the Net Proceeds of the Class Members shall be distributed to the Class Members directly by the Settlement Administrator, either by check or as a deposit into an individual retirement account or other eligible retirement plan, at the Class Member's election.

# EXHIBIT C



## KCC Class Action Services Resume

KCC is an industry leader in class action settlement administration. We administer claims processes and distribute funds in a vast array of varying matters, ranging from small and simple settlements to multi-year complex settlements involving millions of claimants.

KCC's parent company, Computershare, is a publicly traded company which, among its many business lines, provides global financial services centering on communications with customers on behalf of our corporate clients. Computershare employs over 12,000 people and does business with more than 25,000 clients in more than 21 countries. KCC's operations are regulated by federal agencies, including both the SEC and OCC. KCC has the largest infrastructure in the class action industry, and is backed by superior data security, call center support and technology. In addition to the immense resources and capabilities brought to bear through Computershare, KCC can execute all operations in-house with zero outsourcing; a capacity which allows for full quality control over each aspect of service.

KCC has administered over 7,200 class action matters and handled thousands of distribution engagements in other contexts as well. Our call centers handle 13.9 million calls each year. Our domestic infrastructure can open and scan 200,000 claims in a single day, and we have document production capabilities that print and mail millions of documents annually. Last year, our disbursement services team distributed more than $1.6 billion (USD) across four million class payments.

### Locations
KCC has an administrative office in El Segundo, CA, operation offices in San Rafael, CA, and Louisville, KY, and presence in the East Coast, South and Midwest. In addition to these offices, KCC has the global support of Computershare. In the United States Computershare has more than 20 offices.

### KCC Personnel
KCC's experienced team of experts knows first-hand the intricacies contained in every aspect of settlement administration, and approach each matter with careful analysis and procedural integrity. Each client is assigned a team of experienced consultants, specialists and technology experts who serve as knowledgeable, reliable and accessible partners that have earned a reputation for exceeding clients' expectations. KCC's executive team – Gerry Mullins, President; Bryan Butvick, Executive Vice President; and Daniel Burke, Executive Vice President – are experienced  industry leaders.

Our personnel have considerable experience which includes years of practice with KCC and related endeavors. KCC's professionals have extensive training, both on-the-job and formal, such as undergraduate and advanced business, information technology and law degrees, and they possess and/or have had licenses and certificates in disciplines that are relevant to class action administration.

### Recognition
Our settlement administration services have been recognized by *The National Law Journal*, *The New York Law Journal, The New Jersey Law Journal, The Recorder, Legal Intelligencer, Legal Times* and other leading publications. KCC has earned the trust and confidence of our clients with our track record as a highly-responsive partner.



| Settlement Value | |
|---|---|
| **Case** | **Value** |
| Fortis Settlement | $1,572,690,000 |
| Ramah Navajo Chapter v. Jewell | $940,000,000 |
| U.S.A. v. The Western Union Company | $586,000,000 |
| Vaccarino v. Midland National Life Ins. Co | $555,000,000 |
| In re Facebook Biometric Info. Privacy Litig. | $550,000,000 |
| Safeco v. AIG | $450,000,000 |
| Johnson v. Caremark Rx, LLC | $310,000,000 |
| In re Activision Blizzard, Inc. Stockholder Litigation | $275,000,000 |
| Harborview MBS | $275,000,000 |
| Dial Corp. v. News Corporation, et al. | $244,000,000 |
| In re Medical Capital Securities Litigation Settlement | $219,000,000 |
| In Re: NCAA Athletic Grant-In-Aid Antitrust Litigation | $208,664,445 |
| Gutierrez v. Wells Fargo Bank, N.A | $203,000,000 |
| Postmates Mass Arbitration Settlement | $179,000,000 |
| BlueCrest Capital Management Limited | $170,000,000 |
| Bell v. Farmers - Bell III | $170,000,000 |
| In Re Diamond Foods, Inc. Securities Litigation | $167,000,000 |
| In re JPMorgan Chase & Co. Securities Litigation | $150,000,000 |
| Haddock v. Nationwide Life Insurance Co. Settlement | $140,000,000 |
| In re Freeport-McMoran Copper & Gold Inc. Derivative Litigation Notice | $137,500,000 |
| Bank of America, et al. v. El Paso Natural Gas Company, et al. | $115,000,000 |
| In re Anthem, Inc. Data Breach Litigation | $115,000,000 |
| In re Medical Capital Securities Litigation Settlement | $114,000,000 |
| Drywall Acoustic Lathing v. SNC Lavalin | $110,000,000 |
| In re Automotive Parts Antitrust Litigation III | $103,000,000 |
| Rural/Metro Corporation Stockholders Litigation | $97,793,880 |
| J.C. Penney Securities Litigation | $97,500,000 |
| Smokeless Tobacco Cases | $96,000,000 |
| Oubre v. Louisiana Citizens | $92,865,000 |
| Ardon v. City of Los Angeles | $92,500,000 |
| Nishimura v. Gentry Homes, Ltd. II | $90,341,564 |
| In Re: Potash Antitrust Litigation (II) (Escrow) | $90,000,000 |
| Ormond, et al, v. Anthem, Inc. | $90,000,000 |
| In re DRAM Antitrust Litigation | $87,750,000 |
| In re: Morning Song Bird Food Litigation | $85,000,000 |
| Ideal v. Burlington Resources Oil & Gas Company LP | $85,000,000 |
| Willoughby v. DT Credit Corporation, et al. (Drivetime) | $78,000,000 |
| In Re Tesla Motors, Inc. Stockholder Litigation | $60,000,000 |



| Class Members | |
|---|---|
| **Case** | **Volume** |
| Edwards v. National Milk Producers Federation et al. | 90,000,000 |
| In re Anthem, Inc. Data Breach Litigation | 80,000,000 |
| Carrier IQ Inc. Consumer Privacy Litigation | 47,300,000 |
| The Home Depot, Inc. Customer Data Security Breach Litigation | 40,000,000 |
| In re Facebook Biometric Info. Privacy Litig. | 30,000,000 |
| In Re Midland Credit Management, Inc. TCPA Litigation | 30,000,000 |
| Golden v. ContextLogic Inc. d/b/a Wish.com | 29,222,936 |
| Cassese v. WashingtonMutual | 23,200,344 |
| In re Wawa, Inc. Data Security Litigation | 22,000,000 |
| Rael v. The Children's Place, Inc. | 22,000,000 |
| In Re Optical Disk Drive Antitrust Litigation | 20,000,000 |
| In re UltraMist Sunscreen Litigation | 20,000,000 |
| Torres v. Wendy's International, LLC | 18,000,000 |
| In Re Lithium Ion Batteries Antitrust Litigation | 16,000,000 |
| Gordon v. Verizon Communications, Inc. | 15,236,046 |
| Experian Data Breach Litigation | 15,000,000 |
| Opperman v. Kong Technologies, Inc. et al. | 13,279,377 |
| Lerma v Schiff Nutrition International, Inc. | 12,000,000 |
| Kolinek v. Walgreen Co. | 10,213,348 |
| Dunstan v. comScore, Inc. | 10,000,000 |
| Sprint Government Restitution Program | 9,500,000 |
| Steinfeld v. Discover Financial Services | 9,088,000 |
| Cohen, et al. v. FedEx Office and Print Services, Inc., et al. | 9,000,000 |
| Elvey v. TD Ameritrade, Inc. | 8,639,226 |
| In Re: Monitronics International, Inc. Telephone Consumer Protection Act Litigation | 7,789,972 |
| In re Portfolio Recovery Associates Telephone Consumer Protection Act Litigation | 7,395,511 |
| Morrow v. Ascena Retail Group, Inc. and Ann Inc. | 7,277,056 |
| Shames v. The Hertz Corporation | 7,271,238 |
| In Re Facebook Biometric Information Privacy Litigation | 7,000,000 |
| Roberts, et al. v. Electrolux Home Products, Inc. | 6,305,000 |
| Chambers v. Whirlpool Corporation, et al. | 5,788,410 |
| Martin v. Safeway Inc. | 5,610,739 |
| Morales v. Conopco Inc. dba Unilever (TRESemmé Naturals) | 5,000,000 |
| Murray v. Grocery Delivery E-Services USA Inc. bda Hello Fresh | 5,000,000 |

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **DANIELLE THREADFORD and WILLIAM HOLMES, on behalf of the McKinney Communications Corporation Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>         **Plaintiffs,**<br><br>v.<br><br>**HORIZON TRUST AND INVESTMENT MANAGEMENT, N.A.,**<br>**RODDY McKINNEY, and**<br>**JANICE McKINNEY,**<br><br>         **Defendants.** | **Case No. 2:20-cv-00750-RDP** |

## DECLARATION OF DANIELLE THREADFORD

I, Danielle Threadford, declare as follows:

   1.   I am a plaintiff in this matter, am more than 18 years of age, am capable of making this declaration, and have personal knowledge of the facts set forth in this declaration, and would testify competently under oath if call as a witness.

   2.   I worked for McKinney Communications Corporation as a customer service representative from on or about May 16, 2013 to on or about June 6, 2019.

   3.   I have been a participant in the McKinney Communications Corporation Employee Stock Ownership Plan ("ESOP" or "Plan") since the adoption of the Plan on January 1, 2016.

   4.   I have been actively involved in this litigation from the time that it was filed, including the decision to bring this case as a class action.

5.   Since the time that I authorized the suit to be filed, I have assisted attorneys at Bailey & Glasser LLP with this case including reviewing filings made with the court, providing factual information about the claims stated in the Complaint, and providing documents.

I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed at __Birmingham, Alabama__ this __6__ day of May 2022.

By: _____

DANIELLE THREADFORD

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DANIELLE THREADFORD and WILLIAM HOLMES, on behalf of the McKinney Communications Corporation Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>                    **Plaintiffs,**<br><br>**v.**<br><br>**HORIZON TRUST AND INVESTMENT MANAGEMENT, N.A., RODDY McKINNEY, and JANICE McKINNEY,**<br><br>                    **Defendants.** | **Case No. 2:20-cv-00750-RDP** |

<u>**DECLARATION OF WILLIAM HOLMES**</u>

I, William Holmes, declare as follows:

1.   I am a plaintiff in this matter, am more than 18 years of age, am capable of making this declaration, and have personal knowledge of the facts set forth in this declaration, and would testify competently under oath if call as a witness.

2.   I worked for McKinney Communications Corporation as a satellite technician from on or about January 2009 to on or about September 2019.

3.   I have been a participant in the McKinney Communications Corporation Employee Stock Ownership Plan ("ESOP" or "Plan") since the adoption of the Plan on January 1, 2016.

4.   I have been actively involved in this litigation from the time that it was filed, including the decision to bring this case as a class action.

5.   Since the time that I authorized the suit to be filed, I have assisted attorneys at Bailey & Glasser LLP with this case including reviewing filings made with the court, providing factual information about the claims stated in the Complaint, and providing documents.

I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed at ___Alabaster, AL 5:08 p.m.___ this __10__ day of May 2022.

By:_____

WILLIAM HOLMES