FILED

2022 Dec-05  PM 05:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |
|---|---|
| **DANIELLE THREADFORD and WILLIAM HOLMES, on behalf of the McKinney Communications Corporation Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**HORIZON TRUST AND INVESTMENT MANAGEMENT, N.A., RODDY McKINNEY, and JANICE McKINNEY,**<br><br>**Defendants.** | **Case No. 2:20-cv-00750-RDP** |

## PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR FINAL APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

        A.      Background and Motion Practice........................................................... 2

        B.      Discovery ............................................................................................... 4

        C.      The Parties' Settlement Efforts ............................................................. 4

III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS ........................... 5

        A.      Benefits to the Class............................................................................... 5

        B.      Notice and Administration ..................................................................... 6

        C.      Attorneys' Fees and Expenses ............................................................... 8

        D.      Release of Claims .................................................................................. 8

IV.     ARGUMENT .................................................................................................... 9

        A.      The Class is Appropriately Certified for Settlement Purposes. ............. 9

        B.      The Court Should Grant Preliminary Approval of the Settlement Because It Is Fair, Reasonable and Adequate .......................................................... 10

                1.      The Standards for Final Approval............................................. 10

                2.      The Class is Adequately Represented........................................ 11

                3.      The Settlement Was Negotiated at Arm's Length and There Was No Fraud or Collusion................................................................. 12

                4.      The Relief Provided to the Class is Adequate Considering the Complexity, Expense, Likely Duration of the Litigation and Likelihood of Success at trial. ......................................................................... 13

                5.      The Stage of Proceedings and Development of the Factual Record......... 15
                6.      The Benefits Provided by the Settlement are Fair, Adequate and Reasonable When Compared to the Range of Possible Recovery .............................. 16

                7.      The Effectiveness of the Proposed Method of Distributing Relief.......... 17

i

8.    The terms of the proposed award of attorneys' fees ................................. 18

9.    The proposal treats class members equitably relative to each other ......... 18

10.   The Substance and Amount of Opposition to the Settlement Agreement  19

V.    CONCLUSION ............................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                **Page(s)**

*Ault v. Walt Disney World Co.*,
  692 F.3d 1212 (11th Cir. 2012) .........................................................................10

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984): (1)............................................................ *passim*

*In re Blue Cross Blue Shield Antitrust Litig.*,
  2020 WL 8256366 (N.D. Ala. Nov 30, 2020) ........................................................11

*In re Blue Cross Blue Shield Antitrust Litig.*,
  2022 WL 4587618 (N.D. Ala. Aug. 9, 2022) ..........................................15, 16, 17

*Camp v. City of Pelham*,
  2014 WL 1764919 (N.D. Ala. May 1, 2014).........................................................16

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...............................................................17

*Cifuentes v. Regions Bank*,
  No. 11-cv-23455, 2014 WL 1153772 (S.D. Fla. Mar. 20, 2014) ...........................19

*Leverso v. SouthTrust Bank of AL., Nat. Assoc.*,
  18 F.3d 1527 (11th Cir. 1994) ..........................................................................12

*McWhorter v. Ocwen Loan Servicing, LLC*,
  No. 2:15-CV-01831-MHH, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) .................... *passim*

*Parsons v. Brighthouse Networks, LLC*,
  2015 WL 13629647 (N.D. Ala. Feb. 5, 2015) .......................................................11

*Swaney v. Regions Bank*,
  2020 WL 3064945 (N.D. Ala. June 9, 2020)................................................. *passim*

**Statutes**

Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ................................ *passim*

ERISA Section 502(a)(1)(B)...............................................................................8

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) .........................................................2

**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................................... *passim*

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Danielle Threadford and William Holmes request that the Court grant final approval of the class action settlement reached among Plaintiffs and Defendants Horizon Bank, d/b/a Horizon Trust & Investment Management ("Horizon"), Roddy McKinney and Janice McKinney (the "McKinney Defendants"[1] and together with Horizon, the "Defendants"), and McKinney Communications Corporation ("MCC" or the "Company," and together with Defendants, the "Settling Parties").[2] While they may not agree with all averments of this Memorandum, Defendants do not oppose the relief sought in this motion.

## I.    INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, ("ERISA") class action (the "Action") for a payment of $2,100,000 in cash (representing an average recovery of approximately $5,769 per Class member before any fees and expenses), a $2,000,000 reduction of the current balance of the debt incurred by the McKinney Communications Corporation Employee Stock Ownership Plan (the "Plan" or "MCC ESOP") in the transaction at issue in this action, and a commensurate $2,000,000 reduction of the current balance of the debt owed by MCC to the selling shareholders.[3] Should the Court grant final approval, every eligible Class Member will receive their portion of the Net Proceeds according to a Plan of Allocation. The proposed Settlement

---

[1] The term "McKinney Defendants" also includes, R. Lee McKinney, II, Daniel L. McKinney, the Roddy Lee McKinney, II Trust, dated December 26, 2012, and the Daniel Lee McKinney Trust dated December 26, 2012.

[2] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

[3] According to the 2021 Form 5500, the fair value of the note payable to MCC as of December 31, 2021 was $40,465,403.

Agreement ("Settlement Agreement") satisfies all of the criteria for final approval, providing an excellent result for the Class.

The Court granted Plaintiffs' motion for preliminary approval, certified a settlement class, and approved class notice on September 1, 2022 ("Preliminary Approval Order"). (Dkt. 120). The Parties have fulfilled all their obligations under that Order, and Plaintiffs now ask the Court to: (1) grant final approval of the Settlement; (2) find that the Notice Plan satisfies the requirements of due process and Rule 23(e)(1); (3) find the Settlement to be fair, reasonable, and adequate; (4) dismiss on the merits and with prejudice all claims asserted against Defendants; (5) retain jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement Agreement; (6) award Plaintiffs' Counsel attorneys' fees in the amount of $700,000.00 and expenses in the amount of $77,240.81 as requested in their separately filed application for attorneys' fees.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Background and Motion Practice

This class action is brought on behalf of participants and beneficiaries of the MCC ESOP. The Complaint alleges that Horizon, in its capacity as Trustee, and the McKinney Defendants violated ERISA in connection with the purchase of shares of Company common stock by the Plan on October 31, 2016 (the "ESOP Transaction"). Complaint, Dkt. 1 ¶ 5. In Counts I and II of the Complaint, Plaintiffs asserted that Horizon violated ERISA in connection with the ESOP Transaction by, *inter alia*, causing the ESOP to pay more than fair market value for MCC stock. *Id*. at ¶¶ 71-91. In Count III, Plaintiffs alleged that agreements by the Company to indemnify Horizon violated ERISA. *Id*. at ¶¶ 92-99. In Count IV, Plaintiffs asserted, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), that the McKinney Defendants engaged in prohibited

transactions. *Id*. at ¶¶ 100-108. Defendants deny these allegations, deny any wrongdoing or liability, and have defended themselves in this Action. Defendants do not admit wrongdoing of any kind regarding the ESOP Transaction or this Action.

Plaintiffs filed the Complaint in the Northern District of Indiana on February 28, 2020. (Dkt. 1). On May 13, 2020, the McKinney Defendants filed a motion to transfer the case to the Northern District of Alabama. (Dkt. 22). The Court granted that motion on May 28, 2020, and the case was transferred to this Court. (Dkt. 28). Defendants then filed motions to dismiss the Complaint on July 24, 2020, to which Plaintiffs responded on August 24, 2020. (Dkt. 56, 57, 64, 65). The Court heard oral arguments on Defendants' motions to dismiss and issued an order on October 7, 2020, administratively staying the case until Plaintiffs exhausted their administrative remedies with the McKinney Communications Corporation ESOP Committee (the "Committee"). (Dkt. 68, 70).

On October 20, 2020, Plaintiffs submitted their claims to the Committee and requested documents from the Committee. The Committee denied Plaintiffs' claim on January 18, 2021, and produced documents it considered in making that determination. Plaintiffs appealed the Committee's decision, and the Committee upheld its denial on July 16, 2021. (Dkt. 76).

On August 13, 2021, Defendants filed renewed motions to dismiss and to set a schedule for filing the administrative record considered during the claims exhaustion process and summary judgment. (Dkt. 79-82). Plaintiffs responded to those motions on August 27, 2021, and Defendants filed their replies on September 3, 2021. (Dkt. 83-88). The Court denied Defendants' motions on October 29, 2021. (Dkt. 91, 92). Defendants answered the Complaint on December 10, 2021. (Dkt. 104, 105). Shortly thereafter, the Parties agreed to mediation and the Court stayed all pending deadlines on January 25, 2022. (Dkt. 113).

### B.    Discovery

The Parties completed substantial document discovery through the claims exhaustion process. Among other documents, Plaintiffs received Plan and Trust documents; typed notes from an onsite due diligence meeting attended by Horizon; financial statements; iterations of the transaction term sheet that was negotiated between the parties to the ESOP Transaction; a memorandum prepared by Horizon's legal advisor; a draft valuation report from Horizon's financial advisor; Horizon's draft committee minutes approving the ESOP Transaction; final transaction documents; and position papers and reports prepared by Defendants' counsel and experts retained by Defendants, as well as reports prepared by an expert retained by the Committee. *See* Declaration of Gregory Porter, attached hereto as Exhibit 1, ("Porter Decl."), ¶ 18. Plaintiffs' Counsel is experienced in litigating ESOP cases and therefore understands the key information needed to evaluate Plaintiffs' claims, which was included in the documents produced during administrative exhaustion. *Id*. ¶ 22. Plaintiffs' Counsel also retained and consulted valuation and due diligence experts who prepared preliminary analyses regarding the ESOP Transaction and the process engaged in by Horizon before the parties engaged in settlement discussions. *Id*. ¶ 17.

### C.    The Parties' Settlement Efforts

On March 21, 2022, the Parties and MCC, through their counsel, participated in arm's length and good faith mediation with Robert A. Meyer, Esq. of JAMS, a mediator with substantial experience with ERISA cases. Porter Decl., ¶ 19. The Parties drafted and submitted comprehensive mediation statements to Mr. Meyer that focused all sides on the key issues. *Id*. The Parties vigorously engaged in the mediation process, during which all counsel made presentations to Mr. Meyer. *Id*. After a full day of mediation, the Parties agreed to the terms

contained in the Settlement Agreement currently before the Court for preliminary approval. *Id.*

## III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement (Dkt. 118-1, Exhibit B) are summarized below. The proposed Settlement Class consists of all persons who, at any time, were vested participants in the ESOP prior to January 1, 2022 and the beneficiaries of such participants. Settlement Agmt, ¶ 1.16. Excluded from the Settlement Class are the McKinney Defendants and their immediate families, the directors of McKinney, and legal representatives, successors, and assigns of any such excluded persons. *Id.* According to MCC's counsel, there are approximately 364 participants who vested at some point between the formation of the plan and December 31, 2021. Porter Decl., ¶ 20.

### A.    Benefits to the Class

The debt the Plan incurred to the Company to finance the ESOP Transaction will be reduced by $2,000,000, with an accompanying $2,000,000 reduction in the debt owed by the Company to Janice McKinney and Roddy Lee McKinney, Sr. Settlement Agmt., ¶¶ 1.12, 2.5, 7.5.  The Settling Parties will also cause $2,100,000 ("Settlement Amount") to be deposited into a Settlement Fund Account established by the Settlement Administrator at a federally chartered financial institution (the "Financial Institution"), which shall be considered a common fund created as a result of the Action. *Id.*, ¶¶ 7.1-7.3. The Settlement Amount covers any and all claims for expenses and attorneys' fees by Plaintiffs individually or on behalf of the Class, as well as any expenses associated with the Class Notices and Settlement Administration. *Id.*, ¶¶ 7.8, 8.1, 8.2.

Under the proposed Plan of Allocation, attached as Exhibit 3 to the Settlement Agreement (Dkt. 118-1), Class Members will receive their *pro rata* share of the Net Proceeds.

Before subtracting expenses and attorneys' fees, each of the approximately 364 Class members will receive approximately $5,769 on average. Porter Decl., ¶ 21. The Settlement Fund Account is structured to qualify as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code. Settlement Agmt., ¶ 7.1.

The Named Plaintiffs and the Class are responsible for paying all taxes and tax-related expenses incurred in connection with the taxation of the income of the Qualified Settlement Fund, and all such taxes and expenses shall be paid out of the Qualified Settlement Fund.

### B.    Notice and Administration

The Notice Plan approved by the Court was implemented by the Parties. In accordance with the terms of the Settlement Agreement, the Settlement Administrator, KCC, LLC ("KCC"), mailed the Class Notice to Class Members in accordance with the schedule contained in Plaintiffs' Motion for Preliminary Approval (Dkt. 118) and the Preliminary Approval Order (Dkt. 120). On October 3, 2022, KCC mailed 364 Class Notices and election forms to Class Members. *See* Declaration of Bernella Osterlund ("Osterland Decl.") ¶¶ 2-3, attached as Exhibit A to the Porter Declaration. As of December 2, 2022, KCC has received zero Notice Packets returned by the USPS with undeliverable addresses. Osterland Decl., ¶ 4. The Class Notice, attached to the Osterland Declaration as Exhibit A, is clear and straightforward, providing Class Members with enough information to inform them about the nature of the action, the terms of the Settlement Agreement, and the procedures for entering an appearance to be heard or to object to the Settlement.

KCC also established a settlement website with detailed information about the Settlement. Osterland Decl., ¶ 5. The website address, http://www.threadfordesopsettlement.com, was printed on all notices. *Id*. The website provides links to key documents, including the

Complaint, Settlement Agreement, Plan of Allocation, and the Class Notice which lists important dates and deadlines and explains Class Members' rights and options. *Id*. The website also provides a phone number, e-mail address, and mailing address if Class Members have additional questions. *Id*. ¶ 6. Plaintiffs' Motion for Award of Attorneys' Fees and this Motion will be posted on the settlement website once filed. KCC will also process any objections by Class Members but as of December 5, 2022, no objections have been received. *Id*. ¶ 7.

If the Court approves the Settlement, KCC will determine the amounts allocable to each Class Member. Settlement Agmt., ¶ 8.2.3. The net of disbursements called for in Sections 8.1, 8.2.1, and 8.2.2 of the Settlement Agreement ("Net Proceeds") will be distributed according to the Plan of Allocation. *Id*. KCC will also process distribution and payment elections by Class members and implement the Plan of Allocation.

KCC's fees and expenses for serving as Settlement Administrator are expected to be approximately $26,816. Osterland Decl. ¶ 8.

The Settling Parties have deposited $100,000 into the Settlement Fund Account. Settlement Agmt., ¶ 7.2. Thirty days after the Final Order is entered (the "Effective Date of Settlement"), the Settling Parties will cause to be deposited an additional $2,000,000 into the Settlement Fund Account, at which point, the total amount will collectively comprise the "Settlement Amount." *Id*., ¶ 7.3. After the Effective Date of Settlement, Plaintiffs' Counsel will direct the Financial Institution to disburse money from the Settlement Fund Account. *Id*., ¶ 8.2.3. Additionally, the Settlement Administrator shall determine how much should be allocated to each Class Member pursuant to the Plan of Allocation and the Settlement Administrator shall distribute such amounts to the Class Members directly. *Id*.

### C.    Attorneys' Fees and Expenses

The Settlement Agreement provides that Plaintiffs' Counsel intends to request that this Court award attorneys' fees in an amount not to exceed $700,000, and for reimbursement of litigation expenses, including the cost and expense of the consulting experts retained by Plaintiffs' counsel, in an amount not to exceed $100,000. Settlement Agmt. ¶ 9.1. Contemporaneously with this motion, Plaintiffs filed their motion for approval of an award of attorneys' fees of $700,000; and litigation expenses of $77,240.81.

### D.    Release of Claims

In exchange for payment of the Settlement Amount by Defendants, the reduction in debt related to the ESOP Transaction, and satisfaction of the conditions required by the Settlement Agreement, Plaintiffs and the Class will release any claims that were or could have been asserted in the Lawsuit or that in any way arise out of the ESOP Transaction (including the refinancing of the ESOP Transaction), the Complaint or Horizon's services as Trustee. Settlement Agmt., ¶ 3.1. The Released Claims are set forth in full in the Settlement Agreement. *Id.* ¶ 3.2. The Released Claims do not include any individual participant's or beneficiary's claim for benefits under Section 502(a)(1)(B) of ERISA based only on errors unrelated to the allegations in the Complaint regarding that participant's salary, age, or years of service. *Id.* The covenant not to sue is set forth in the Settlement Agreement. *Id.* ¶ 4.1. The Parties request that, upon entry of the Final Approval Order, the Court enjoin any Class Member from instituting, asserting or prosecuting against any Defendant or MCC, in any pending or future action in any federal or state court or any other forum, any Released Claim that the member currently has or may have in the future. *Id.* ¶ 11.1.  The Settlement is subject to a written determination by the Independent Fiduciary that

the terms in the Settlement Agreement are fair and reasonable to the Plan and its participants. *Id.*

¶ 2.3

## IV.    ARGUMENT

### A.    The Class is Appropriately Certified for Settlement Purposes.

The Court preliminarily certified the Settlement Class for settlement purposes when it granted preliminary approval and approved the issuance of class notice. (Dkt. 120). For all the reasons contained in the brief in support of that approval (Dkt. 118 at 10-17), which have not changed, the Settlement Class meets all requirements of Rule 23(a) and 23(b)(1), and should be finally certified for settlement purposes.

The Settlement Class is sufficiently numerous because it encompasses approximately 364 Settlement Class Members. It satisfies commonality because questions about whether Horizon engaged in prohibited transactions under ERISA by permitting the Plan to purchase MCC stock and take a loan from MCC; whether Horizon took sufficient steps to determine the value of the MCC stock in connection with the ESOP Transaction; whether Horizon caused the Plan to pay more than fair market value for MCC stock; whether the McKinney Defendants received more than fair market value for their MCC stock; are substantially identical among Settlement Class Members. The Settlement Class satisfies typicality because Plaintiffs' claims arise from the same facts as other Settlement Class Members. The Settlement Class satisfies the adequacy requirement because Plaintiffs have no conflict with the Settlement Class and have been actively engaged in the litigation. In addition, class certification is appropriate under Rule 23(b)(1) because prosecuting separation actions by individual class members would create a risk of inconsistent adjudications and that an individual adjudication by one of the class members would dispose of the interests of absent class members.

**B.    The Court Should Grant Preliminary Approval of the Settlement Because It Is Fair, Reasonable and Adequate**

**1.    The Standards for Final Approval**

"Public policy strongly favors the pretrial settlement of class action lawsuits." *Swaney v. Regions Bank*, 2020 WL 3064945, at *3 (N.D. Ala. June 9, 2020) (citation omitted). Rule 23(e) provides that a class action cannot be settled without court approval. To be approved, a class action settlement must be fair, reasonable and adequate. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). The 2018 amendments to Rule 23 give direction to federal courts considering whether to approve such a settlement. Rule 23(e)(2) provides that the Court should look to the following factors:

(A)    the class representatives and counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH, 2019 WL 9171207, at *9 (N.D. Ala. Aug. 1, 2019).

In tandem with Rule 23(e), courts within the Eleventh Circuit evaluate class action settlements under six factors outlined in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.

10

1984): (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which the settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *Parsons v. Brighthouse Networks, LLC*, 2015 WL 13629647, *2 (N.D. Ala. Feb. 5, 2015). Plaintiffs will address each of these factors to the extent they are applicable,[4] many of which overlap. *See In re Blue Cross Blue Shield Antitrust Litig.*, 2020 WL 8256366, at *15 (N.D. Ala. Nov 30, 2020) (citation omitted).

## 2.    The Class is Adequately Represented.

Rule 23(e)(2)(A), requiring adequate representation by Plaintiffs and their counsel was addressed in Plaintiffs' Preliminary Approval Motion (Dkt. 118 at 13-14, 19), and in the concurrently-filed Memorandum in Support of Motion for Attorneys' Fees. In sum, Plaintiffs and Plaintiffs' Counsel have effectively and diligently served the Class. The Class was well-represented by the Named Plaintiffs. They have loyally and competently represented the Class since the Complaint was filed almost three years ago. The Named Plaintiffs provided factual information and documents about the claims stated in the Complaint; reviewed filings made with the court; and had no interests that were antagonistic or in conflict with the Class. If they had not pursued this case, there would be no settlement benefits at all for the Class.

In addition, Plaintiffs' Counsel are well-qualified and have vigorously prosecuted this class action. They have engaged in discovery, defeated motions to dismiss, negotiated the settlement before the Court, and were prepared to go to trial. *See* Preliminary Approval Motion (Dkt. 118 at 2-4). Plaintiffs' Counsel are active class action practitioners with extensive

---

[4] There is no agreement required to be produced under Rule 23(e)(2)(C)(iv), and there have been no objections to the settlement as of the date this motion was filed *(Bennett* factor #5).

11

experience in ERISA litigation. Porter Decl., ¶¶ 8-14 and Exhibit A to the Declaration of

Gregory Porter in support of Plaintiffs' Preliminary Approval of Class Action Settlement (Dkt.

118-1, p.11-27); Declaration of Robert Izard ("Izard Decl.") attached hereto as Exhibit 2;

Declaration of Robert Izard filed in Support of Plaintiffs' Preliminary Approval of Class Action

Settlement and Exhibit A thereto (Dkt. 118-2, ¶ 7 and p.7-24).

### 3. The Settlement Was Negotiated at Arm's Length and There Was No Fraud or Collusion.

Rule 23(e)(2)(B) requires the court to determine whether a proposed settlement "was

negotiated at arm's length." Relatedly, the *Bennett* factors require the court to rule out the

possibility of fraud or collusion behind the settlement. *Leverso v. SouthTrust Bank of AL., Nat.*

*Assoc.*, 18 F.3d 1527, 1530 (11th Cir. 1994).

Here, Plaintiffs were given access to information about the ESOP Transaction and

Defendants' knowledge and process through the claims exhaustion process. Plaintiffs' Counsel

retained a valuation expert and due diligence expert to review valuation reports and other

transaction documents. Porter Decl., ¶ 17. The Parties thus entered the mediation process with

Robert Meyer having an understanding of where the strengths and weaknesses of their arguments

lay and both sides engaged in hard bargaining during the full-day mediation. Mr. Meyer, a

professional, experienced class action mediator, probed at those weaknesses in assisting the

Parties in arriving at the settlement terms. *See* Section II.C above; Porter Decl., ¶ 19.

There is no suggestion of fraud or collusion in this case, where the settlement "is the

result of non-collusive, arm's length negotiations among experienced counsel informed of and

familiar with the legal and factual issues of the action." *McWhorter*, 2019 WL 9171207, at *9.

The lack of collusion is further supported by the participation of Mr. Meyer. *See id.* (noting

involvement of neutral mediator may bear on whether negotiations were conducted in a manner

that would protect and further the class interest). The proposed Settlement is the result of good faith, arm's-length negotiations by well-informed and experienced counsel. Rule 23(e)(2)(B), and the related *Bennett* factor are met.

4.       **The Relief Provided to the Class is Adequate Considering the Complexity, Expense, Likely Duration of the Litigation and Likelihood of Success at trial.**

Rule 23(e)(2)(C)(i), and the first and fourth *Bennett* factors, require the court to consider the adequacy of the relief obtained, in light of the risk, complexity, cost, and likely duration of the litigation and likelihood of success at trial. The "relevant inquiry is whether the proposed settlement affords relief that falls within the range of reasonableness, and not whether it is the most favorable possible result of litigation." *McWhorter*, 2019 WL 9171207, at *10 (citations omitted). "A settlement that will alleviate the need for judicial exploration of . . . complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing merits approval." *Swaney*, 2020 WL 3064945, at *4.

"The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Swaney* at *3 (citation omitted). "[T]his factor weighs in favor of approval where there was no guarantee that the plaintiffs would prevail at trial on their [ ] claims." *Id.* (citation omitted). In this case, given that the Court had not weighed in on the merits of the case, there was no guarantee Plaintiffs would prevail. The Parties had different views about Defendants' actions, their potential liability and the likely outcome of the litigation. Plaintiffs' core allegations regarding the ESOP Transaction rested on facts that were strongly contested by Defendants, including the accuracy of MCC's projections, whether the valuation methods employed by Horizon's advisors were proper, and whether there were negative facts

13

that were ignored by or not sufficiently investigated by Horizon during the due diligence and negotiation process, and the fair market value of MCC stock as of the transaction date.

Defendants denied the allegations, asserted affirmative defenses and otherwise defended their actions with respect to the Transaction. In support of their defenses, Defendants pointed to evidence, such as Horizon's engagement of qualified advisors; multi-day on-site due diligence visit with MCC's management; use of conservative financial projections; and negotiations that resulted in a substantial reduction in purchase price, an increase in warrant strike price and a claw back provision if MCC did not reach its profit projections. If the Action were to proceed, Plaintiffs would have to overcome these and other defenses and arguments. These fact-intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day. *See Swaney*, 2020 WL 3064945, at *4 ("Because 'the outcome on class certification and the ultimate outcome on the merits was uncertain for both parties,' a settlement was reached and here that is appropriate.") (quoting *Parsons,* 2015 WL 13629647, at *2).

Trial would have required several attorneys from Plaintiffs' Counsel to conduct further discovery and prepare and argue motions for class certification, and summary judgment. Plaintiffs' Counsel would have to expend substantial time and effort to engage in additional discovery, review discovery responses and documents produced in response to requests for production, take depositions, and prepare witnesses, as well as engage in hours of briefing. And, regardless of the outcome, there likely would have been appeals that followed, further delaying resolution and causing more expense. Further, the estimated 364 Class Members with vested account balances will each receive on average approximately $5,769 before fees and expenses.

Thus, the proposed Settlement is an excellent result considering "there is simply no guarantee" that the Class would recover more relief than that secured in the Settlement and "[t]here is certainly a range on the spectrum of outcomes wherein they could do worse." *In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *16 (N.D. Ala. Aug. 9, 2022); *McWhorter*, 2019 WL 9171207, at *11 ("The prospect of a long, arduous [trial] requiring great expenditures of time and money on behalf of both parties and the [C]ourt, all in the hopes of achieving a result on par with the relief offered by the settlement, is not in the interests of any party or Settlement Class Member.")

### 5.    The Stage of Proceedings and Development of the Factual Record

The sixth *Bennett* factor requires a court to consider whether "the case settled at a stage of the proceedings where class counsel had sufficient knowledge of the law and facts to fairly weigh the benefits of the settlement against the potential risk of continued litigation." *In re Blue Cross*, 2022 WL 4587618, at *20 (citation omitted).

As described in Section II(A), (B) above, the Parties have completed discovery through the claims exhaustion process and litigated motions to dismiss or proceed on the administrative record. Counsel for Plaintiffs and Counsel for Horizon have also litigated at least eight other ESOP class actions in the last five years presenting similar ERISA issues. Porter Decl., ¶ 22. As such, Plaintiffs' Counsel is intimately familiar with ESOP trustees' recordkeeping and due diligence practices. Similarly, Horizon's counsel is familiar with the documents and information Plaintiffs' Counsel has repeatedly requested and which allowed the Parties to fully and fairly assess the allegations and strengths and weaknesses of their respective positions at an early stage, to the benefit of the Class. The documents obtained in the discovery process were provided to Plaintiffs' experts to assess the potential value of the Class's claims and Horizon's diligence

process, and Plaintiff's experts provided written analyses to counsel and engaged in several conversations regarding the lawsuit. *Id*. ¶¶ 17-18. "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *In re Blue Cross*, 2022 WL 4587618, at *20 (citation omitted).

Having obtained the necessary information to assess the strengths and weaknesses of their respective positions and with best interests of the Plan in mind, Class Counsel were able to adequately evaluate the desirability of settlement as opposed to continuing with the litigation, and the Parties reached a fair and equitable settlement agreement.

### 6. The Benefits Provided by the Settlement are Fair, Adequate and Reasonable When Compared to the Range of Possible Recovery

The second and third *Bennett* factors are "easily combined and normally considered in concert." *Camp v. City of Pelham*, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014). "The [c]ourt's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation[ ] but to evaluate the proposed settlement in its totality." *Swaney*, 2020 WL 3064945, at *4 (quoting *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005)). "The range of outcomes extends from no liability to total victory and must be considered in light of the attendant risks." *Swaney*, at *4 (citation omitted).

Here, the Settlement provides significant relief to the Class Members. Not only will the Class Members receive, on average, approximately $5,769 in cash before fees and expenses, but the ESOP's debt will be reduced by $2 million and the Company's debt to the selling shareholders will be reduced by the same amount. Plaintiffs' expert estimated that the ESOP had overpaid by approximately $12.5 million in the ESOP Transaction. Porter Decl., ¶ 17. Experts retained by the other Parties disputed that there was any overpayment, but based on the estimate provided by Plaintiffs' expert, the cash recovery of $2.1 million alone represents 17% of

16

Plaintiffs' expert's damage figure. The ESOP will also receive an additional $2 million reduction in its debt to the Company (and the Company will receive a corresponding $2 million in debt relief from the selling shareholders) which will have a positive impact on the Company's equity value, and the settlement will generate a sizeable aggregate cash distribution to the Class Members. When the additional $2 million reduction in the ESOP's debt to the Company is taken into account, the Settlement represents a recovery of 33% of the damage estimate. The benefits to the Class falls within, or above, the range of recoveries approved in other cases. *See In re Blue Cross*, 2022 WL 4587618, at *17; *Bennett*, 737 F.2d at 986-87 & n.9 (approving a settlement representing 7.3% to 14.3% of claims with maximum potential recovery); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) ("[S]tanding alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims."); *Bennett*, 737 F.2d at 986-87 & n.9 (approving $675,000 settlement representing 5.6% of claims with maximum potential recovery of $12,000,000); *McWhorter*, 2019 WL 9171207, at *11 ("Since 1995, class action settlements have been approved despite having "recovered between 5.5% and 6.2%" of the class members' potential recovery.")

### 7.    The Effectiveness of the Proposed Method of Distributing Relief

Rule 23(e)(2)(C)(ii), examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. The proposed method for distributing relief to Class Members here is effective and equitable. The Settlement Agreement contemplates that MCC shall provide, or cause to be provided, the names and last known addresses of the Class Members, and (1) the total number of vested shares of MCC stock allocated at any time to the Class Member's ESOP account prior to January 1, 2022, and (2) the total number of shares distributed to the Class Member prior to January 1, 2022. Settlement

Agmt., ¶ 2.2.3. That information has already been provided. The Settlement Administrator,
KCC, will use that information and follow the Plan of Allocation. *Id*. ¶ 8.2.3. All Class Members
will receive a check directly from the Settlement Administrator or, if elected by the Class
Members, as a deposit into an individual retirement account or other eligible retirement plan. *Id*.
This method of distributing relief is highly efficient and weighs in favor of granting final
approval.

### 8.    The terms of the proposed award of attorneys' fees

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees,
including timing of payment. Contemporaneously with this motion, Plaintiffs filed a motion for
approval of an award of attorneys' fees of $700,000 and litigation expenses of $77,240.81. That
request is consistent with the Settlement Agreement's provision that Plaintiffs' Counsels'
petition for an award of attorneys' fees would not exceed $700,000 (1/3 of the cash component
of the Settlement Amount), plus reimbursement of litigation expenses not exceeding $100,000.
Settlement Agmt., ¶ 9.1. The attorneys' fees and expenses shall be paid from the Settlement
Amount. The requested fee is within the range of approved fee awards in this jurisdiction.

The Class Members have been notified of the maximum amount of fees and litigation
expenses that could be requested and have had and will have the opportunity to object to the fee
application. As of the date of this filing, no objections to the Settlement have been received. *See*
Osterland Decl. ¶ 7.

### 9.    The proposal treats class members equitably relative to each other

Under Rule 23(e)(2)(D), the court must consider whether the proposal treats class
members equitably relative to each other. Under the Plan of Allocation, distributions to the

Class Members will be based on the number of vested shares he or she held in the Plan compared to the total vested company shares held in the Plan by all Class Members. Following that process, individual Class Members will not receive preferential treatment but instead all will receive *pro rata* distributions based on the number of vested shares in their account and as detailed in the Plan of Allocation. Similarly, the increase in Company stock value due to the debt reduction terms will impact the value of Class Member's Company stock in proportion to their vested shares. Courts in this Circuit have found such *pro rata* distributions appropriate. *See McWhorter*, 2019 WL 9171207, at *12; *Cifuentes v. Regions Bank*, No. 11-cv-23455, 2014 WL 1153772, at *3 (S.D. Fla. Mar. 20, 2014).

> ### 10.    The Substance and Amount of Opposition to the Settlement Agreement

In assessing whether a proposed settlement is fair, adequate, and reasonable, the court must "examine the settlement in light of the objections raised." *Swaney*, at *5 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Here, in response to the Notice program detailed above, no Class Members have objected to the Settlement and no federal or state office has objected to the Settlement. Osterland Decl. ¶ 7; Porter Decl. ¶ 40. These facts weigh in favor of approving the Settlement.

## V.    CONCLUSION

For the foregoing reasons, the Settlement Agreement should be finally approved. A proposed Final Judgment and Order Approving Class Settlement and Dismissal with Prejudice has been filed with this Motion as Exhibit 3.

19

Dated:  December 5, 2022                    Respectfully submitted,


                                           **BAILEY & GLASSER LLP**

                                           */s/ David L. Selby II*
                                           David L. Selby II
                                           Bailey & Glasser LLP
                                           3000 Riverchase Galleria, Suite 905
                                           Birmingham, AL 35244
                                           Telephone: (205) 988-9253
                                           Facsimile: (205) 733-4896
                                           dselby@baileyglasser.com

                                           Gregory Y. Porter (*pro hac vice*)
                                           Ryan T. Jenny (*pro hac vice*)
                                           Bailey & Glasser, LLP
                                           1055 Thomas Jefferson Street, NW, Suite 540
                                           Washington, DC 20007
                                           Telephone: (202) 463-2101
                                           Facsimile: (202) 463-2103
                                           gporter@baileyglasser.com
                                           rjenny@baileyglasser.com

                                           Patrick O. Muench (*pro hac vice*)
                                           Bailey & Glasser, LLP
                                           333 S. Wabash Ave., Suite 2736
                                           Chicago, IL 60604
                                           Telephone: (312) 995-7143
                                           Facsimile: (304) 342-1110
                                           pmuench@baileyglasser.com

                                           Robert A. Izard
                                           Izard, Kindall & Raabe, LLP
                                           29 South Main Street, Suite 305
                                           West Hartford, CT 06107
                                           Telephone: (860) 493-6295
                                           rizard@ikrlaw.com

                                           *Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on the 5th day of December, 2022, the foregoing was

filed using the Court's CM/ECF system, which will serve notice upon all counsel of record.

> */s/David L. Selby, II*
> *David L. Selby, II*